# EXHIBIT 1.A

# CARTER BANK & TRUST
## LOAN AGREEMENT

---
Carter Bank & Trust Loan Number
---

This Loan Agreement (the "Agreement") is made this 12th day of January, 2017 by and between Carter Bank & Trust, a Virginia banking corporation ("Bank"), and:

Justice Low Seam Mining, Inc., a West Virginia corporation ("Borrower"), having its chief executive offices at 302 S. Jefferson St., Roanoke, VA 24011.

James C. Justice, II and Cathy Justice (individually "Guarantor" and collectively the "Guarantors")

The Borrower has applied to Bank for and Bank has agreed to make, subject to the terms of and upon the reliance of Borrower's representations, warranties and agreements made in this Agreement, the following loan and/or line of credit (hereinafter sometimes referred to, singularly or collectively, if more than one, as "Loan"):

**Term Loan** ("Term Loan") in the principal amount of $5,000,000.00 for the purpose of repairing mining equipment to expand MET coal production at the Bishop Mine which shall be evidenced by the Borrower's Promissory Note dated of even date herewith (the "Term Note") payable in 6 consecutive monthly installments and shall bear interest at the rate set forth in such note, the terms of which are incorporated herein by reference. The Term Loan shall mature on June 12, 2017, when the entire unpaid principal balance then outstanding plus accrued interest thereon shall be paid in full. The Term Loan shall be secured by a first and prior lien and security interest in the Borrower's or other owner's real property and improvements situated in McDowell County, West Virginia, and Tazewell County, Virginia and/or Borrower's or other owner's existing and hereafter acquired personal property pursuant to the terms of applicable security instruments listed below.

**Section 1 Conditions Precedent**

Bank shall not be obligated to make any disbursement of loan proceeds until all of the following conditions have been satisfied by proper evidence, execution, and/or delivery to Bank of the following documents and items in addition to this Agreement, all in form and substance satisfactory to Bank and Bank's counsel in their sole discretion:

**USA Patriot Act Verification Information:** Information or documentation, including but not limited to the legal name, address, tax identification number, driver's license, and date of birth (if the Borrower is an individual) of the Borrower sufficient for Bank to verify the identity of the Borrower in accordance with the USA Patriot Act. Borrower shall notify Bank promptly of any change in such information.
**Note:** The Note duly executed by the Borrower.
**Deed of Trust:** A Deed of Trust in which Borrower or other owner thereof shall grant and hypothecate to Bank a first priority lien on the specified real property, fixtures and improvements thereon ("Deed of Trust").
**Assignment of Leases and Rents:** The Assignment of Leases and Rents in which the Borrower or other owner thereof shall assign to Bank all existing and thereafter arising leases on the Mortgaged Property and the rents and profits therefrom.
**Title Insurance:** A Standard ALTA mortgage policy from a company or companies approved by Bank, providing coverage for the aggregate principal amount of the Note(s) and insuring the appropriate lien priority of the Mortgage(s) and which shall not contain any title exceptions or policy exclusions not approved by Bank and Bank's counsel.
**Title Opinion:** A favorable opinion of title from legal counsel acceptable to Bank certifying that the Borrower or other owner has good and marketable fee simple title to the Mortgaged Property and that the Mortgage(s) constitutes a first priority lien thereon without exceptions, except as are acceptable to Bank and Bank's counsel.
**Flood Hazard Certification:** Evidence satisfactory to Bank and Bank's counsel as to whether the Mortgaged Property is located within an area identified as having "special flood hazards" as such term is used in the Federal Flood Disaster Protection Act of 1973.
**Security Agreements:** Security Agreement in which Borrower and any other owner (a "Debtor") of personal property collateral shall grant to Bank a first priority security interest in the personal property specified therein. (If Bank has or will have a security interest in any collateral which is inferior to the security interest of another creditor, Borrower must fully disclose to Bank any and all prior security interests, and Bank must specifically approve any such security interest which will continue during the term of the Loan)
**UCC Financing Statements:** Copies of UCC Financing Statements duly filed in Borrower's or other owner's state of incorporation, organization or residence, and in all jurisdictions necessary, or in the opinion of Bank desirable, to perfect the security interests granted in the Security Agreement(s), and certified copies of Information Requests identifying all previous financing statements on record for Borrower or other debtor, as appropriate from all jurisdictions indicating that no security interest has previously been granted in any of the collateral described in the Security Agreement(s), unless prior approval has been given by Bank.
**Corporate Resolution:** A Certificate of Corporate Resolutions signed by the corporate secretary or certified officer containing resolutions duly adopted by the Board of Directors of Borrower authorizing the execution, delivery, and performance of the Loan Documents on or in a form provided by or acceptable to Bank.
**Articles of Incorporation:** A copy of the Articles of Incorporation and all other charter documents of Borrower, all filed with and certified by the Secretary of State of the state/commonwealth of Borrower's incorporation.
**By-Laws:** A copy of the By-Laws of Borrower, certified by the Secretary of Borrower as to their completeness and accuracy.
**Certificate of Incumbency:** A certificate of the Secretary of Borrower certifying the names and true signatures of the officers of Borrower authorized to sign the Loan Documents.
**Certificate of Existence:** A certification of the Secretary of State (or other government authority) of the state/commonwealth of Borrower's incorporation or organization as to the existence or good standing of Borrower and its charter documents on file.
**Opinion of Counsel:** An opinion of counsel for Borrower satisfactory to Bank and Bank's counsel.
**Guaranty:** Guaranty Agreement(s) duly executed by Guarantor(s).
**Additional Documents:** Receipt by Bank of other approvals, opinions, or documents as Bank may reasonably request.
**Any other Conditions Precedent:**

**Section 2 Representations and Warranties**

Borrower represents and warrants to Bank that:

1

# CARTER BANK & TRUST
## LOAN AGREEMENT

2.01. **Financial Statements.** The balance sheet of Borrower and its subsidiaries, if any, and the related Statements of Income and Retained Earnings of Borrower and its subsidiaries, the accompanying footnotes together with the accountant's opinion thereon, and all other financial information previously furnished to Bank, accurately, completely and fairly reflect the financial condition of Borrower and its subsidiaries as of the dates thereof, including all contingent liabilities of every type, and the financial condition of Borrower and its subsidiaries as stated therein has not changed materially and adversely since the date thereof.

2.02. **Name, Capacity and Standing.** Borrower's exact legal name is correctly stated in the initial paragraph of the Agreement. If Borrower and any of its subsidiaries, if any, is a corporation, general partnership, limited partnership, limited liability partnership, or limited liability company, it is duly organized and validly existing under the laws of its respective state of incorporation or organization; that it and/or its subsidiaries, if any, are duly qualified and in good standing in every other state in which the nature of their business shall require such qualification, and are each duly authorized by their board of directors, general partners or member/manager(s), respectively, to enter into and perform the obligations under the Loan Documents.

2.03. **No Violation of Other Agreements.** The execution and delivery of the Loan Documents, and the performance by Borrower, by any and all pledgors (whether Borrower or other owners of collateral property securing payment of the Loan (hereinafter sometimes referred to as the "Pledgor")) or by Guarantors thereunder will not violate any provision, as applicable, of its articles of incorporation, by-laws, articles of organization, operating agreement, agreement of partnership, limited partnership or limited liability partnership, or, of any law, other agreement, indenture, note, or other instrument binding upon any Borrower, any Pledgor or any Guarantor, or give cause for the acceleration of any of the respective obligations of any Borrower or any Guarantor.

2.04. **Authority.** The execution, delivery and performance of this Agreement, the Note and the other Loan Documents have been duly authorized by all necessary and proper corporate or equivalent action. All authority from and approval by any federal, state, or local governmental body, commission or agency necessary to the making, validity, or enforceability of this Agreement and the other Loan Documents has been obtained.

2.05. **Asset Ownership.** Borrower and each Pledgor has good and marketable title to all of the properties and assets reflected on the balance sheets and financial statements furnished to Bank, and all such properties and assets are free and clear of mortgages, deeds of trust, pledges, liens, security interests, and all other encumbrances except as otherwise disclosed by such financial statements or otherwise in writing.

2.06. **Discharge of Liens and Taxes.** Borrower and its subsidiaries, if any, have filed, paid, and/or discharged all taxes or other claims which may become a lien on any of their respective properties or assets, excepting to the extent that such items are being appropriately contested in good faith and for which an adequate reserve (in an amount acceptable to Bank) for the payment thereof is being maintained.

2.07. **Regulations U and X.** None of the Loan proceeds shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in viplation of the provisions of Regulation U and Regulation X of the Board of Governors of the Federal Reserve System.

2.08. **ERISA.** Each employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), maintained by Borrower or by any subsidiary of Borrower or any corporate Guarantor meets, as of the date hereof, the minimum funding standards of Section 302 of ERISA, all applicable requirements of ERISA and of the Internal Revenue Code of 1986, as amended, and no "Reportable Event" nor "Prohibited Transaction" (as defined by ERISA) has occurred with respect to any such plan.

2.09. **Litigation.** There is no claim, action, suit or proceeding pending, threatened or reasonably anticipated before any court, commission, administrative agency, whether State or Federal, or arbitration which will materially adversely affect the financial condition, operations, properties, or business of Borrower, its subsidiaries, if any, any Guarantor, or any Pledgor, or affect the ability of Borrower or any Guarantor or any Pledgor to perform its obligations under the Loan Documents.

2.10. **Other Agreements.** The representations and warranties made by Borrower to Bank in the other Loan Documents are true and correct in all respects on the date hereof

2.11. **Binding and Enforceable.** The Loan Documents, when executed, shall constitute valid and binding obligations of Borrower and Guarantors respectively, and are enforceable in accordance with their terms, except as may be limited by bankruptcy, insolvency, moratorium, or similar laws affecting creditors' rights generally.

2.12. **Commercial Purpose.** The Loan are not "consumer transactions", as defined in the Virginia or West Virginia Uniform Commercial Code, and none of the collateral was or will be purchased or held primarily for personal, family or household purposes.

2.13. **Foreign Assets Control Regulations.** It is not in violation of (i) the Trading with the Enemy Act (50 U.S.C. App. Sec. 1 et seq), as amended, (ii) any of the foreign assets control regulations issued by the Office of Foreign Assets Control of the United States Treasury Department ("OFAC") and any executive order related thereto, or (iii) the U.S. Patriot Act, and further that it (a) is not subject to sanctions administered by OFAC or the U.S. Department of State or (b) has not engaged in any dealing or transactions with, or is otherwise associated with, any person subject to such sanctions.

2.14 **Survival of Representations and Warranties.** Borrower agrees that in extending loan advances, Bank is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Bank under this Agreement or the other Loan Documents. Borrower further agrees that regardless of any investigation made by Bank, all such representations, warranties and covenants will survive the making of each advance under the Loan and delivery to Bank of the Loan Documents, shall be continuing in nature, shall be deemed made and reaffirmed by Borrower at the time each advance is made, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided herein, whichever is the last to occur.

**Section 3 Affirmative Covenants**

Borrower covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations owed under the Loan Documents, Borrower shall:

3.01. **Maintain Existence and Current Legal Form of Business.** (a) Maintain its existence and good standing in the state of its incorporation or organization, (b) maintain its current legal form of business indicated above, and, (c), as applicable, qualify and remain qualified as a foreign corporation, general partnership, limited partnership, limited liability partnership or limited liability company in each jurisdiction in which such qualification is required.

3.02. **Maintain Records.** Keep adequate records and books of account, in which complete entries will be made in accordance with GAAP consistently applied, reflecting all financial transactions of Borrower. If Borrower now or hereafter maintains any business records in the possession of a third party, at the request of Bank, Borrower shall notify such third party to permit Bank free access to such records at all reasonable times and to provide Bank with copies of any records it may request, all at Borrower's expense.

# CARTER BANK & TRUST
## LOAN AGREEMENT

**3.03. Maintain Properties.** Maintain, keep, and preserve all of its properties (tangible and intangible) including the collateral necessary or useful in the conduct of its business in good working order and condition, ordinary wear and tear excepted.

**3.04. Conduct of Business.** Continue to engage in an efficient, prudent, and economical manner in a business of the same general type as now conducted.

**3.05. Maintain Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Bank may require with respect to Borrower's properties and operations, in form, amounts, and coverages and with insurance companies acceptable to Bank. Borrower, upon request of Bank, will deliver to Bank from time to time the policies or certificates of insurance in form satisfactory to Bank, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Bank. Each insurance policy also shall include an endorsement (NY long form) providing that coverage in favor of Bank will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering the Collateral, Borrower shall provide Bank with such Bank's loss payable or other endorsements as Bank may require, and shall furnish to Bank upon request, reports on each existing insurance policy showing such information as Bank may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties and assets insured; (5) the current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Bank (however not more often than annually), Bank may require that an independent appraiser satisfactory to Bank determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower. Should any or all of the Collateral become uninsured for any reason, Borrower shall have ten (10) days after receipt of notice from Bank to obtain replacement insurance on the Collateral satisfactory to Bank and, should Borrower fail to obtain such insurance, Bank may purchase insurance covering the Collateral, the cost of which shall be paid by Borrower on demand.

**3.06. Comply With Laws.** Comply in all respects with all applicable laws, rules, regulations, ordinances and orders applicable to each Borrower's business, operations and properties including without limitation, the Americans with Disabilities Act, paying before the delinquency thereof all taxes, assessments, and governmental charges imposed upon it or upon its income, profits or property, and all Environmental Laws.

**3.07. Right of Inspection.** Permit the officers and authorized agents of Bank, at any reasonable time or times in Bank's sole discretion to visit the properties of any Borrower, and to discuss such matters with any officers, directors, managers, members or partners, limited or general, of such Borrower, and with Borrower's independent accountant as Bank deems necessary and proper.

**3.08. Reporting Requirements.** Furnish to Bank:

**Monthly Financial Reports:** Monthly within thirty (30) days of the end of each month end, the Borrower's internally prepared balance sheet and income statement for the period ended, prepared in accordance with generally accepted accounting principles, applied on a consistent basis, and certified as correct to the best knowledge and belief by the Borrower's chief financial officer or other officer or person acceptable to the Bank.

**Annual Reports:** Annually, within two hundred forty (240) days of the end of each fiscal year, the Borrower's audited balance sheet and income statement for the year ended, prepared in accordance with generally accepted accounting principles, applied on a consistent basis.

**Monthly Production Reports:** Monthly within thirty (30) days of the end of each month, internally prepared production reports for each of the applicable mines. in a form prepared by Borrower in the ordinary course of business.

**Tax Returns:** State and Federal tax returns for the Borrower when each such return is filed, and such additional information and statements (including, without limitation, lists of assets and liabilities, aging of receivables and payables, inventory schedules, budgets, forecasts, and other reports with respect to the Borrower's financial condition and business operations) as the Bank may request from time to time.

**Officer Compliance Certificate:** An Officer's Compliance Certificate ("OCC") with respect to Borrower's compliance with the Affirmative, Financial and Negative Covenants set forth in Sections 3, 5, and 6 of this Agreement. The OCC will be in form acceptable to Bank, properly executed by an authorized officer of Borrower, including calculations to support all Financial Covenants, and set forth any corrective action taken or proposed to be taken with respect to any Default or Event of Default under such covenants. The OCC is due within the same number of days required for the delivery of Financial Statements for each fiscal quarter's end and for the fiscal year end. The OCC furnished by Borrower for the fiscal year end shall include a reconciliation of all adjustments, if any, by Borrower to the fourth quarter's certification.

**Notice of Litigation:** Promptly after the receipt by Borrower, or by any Guarantor of which Borrower has knowledge, notice of any complaint, action, suit or proceeding before any court or administrative agency or body of any type which, if determined adversely, could have a material adverse effect on the financial condition, properties, or operations of any Borrower or any Guarantor, as applicable.

**Tax Returns:** As soon as available each year, complete copies of all federal tax returns (including all Schedules thereto) filed by Borrower.

**Notice of Default:** Promptly upon discovery or knowledge thereof, notice of the existence of any event of default under this Agreement or any other Loan Documents.

**USA Patriot Act Verification Information:** Information or documentation, including but not limited to the legal name, address, tax identification number, driver's license, and date of birth (if Borrower is an individual) of Borrower sufficient for Bank to verify the identity of Borrower in accordance with the USA Patriot Act. Borrower shall notify Bank promptly of any change in such information.

**Other Information:** Such other information as Bank may from time to time reasonably request.

**3.09. Appraisal(s).** If required by Bank, furnish at Borrower's expense an independent appraisal or update by an appraiser satisfactory to Bank of the market value of any real or personal property collateral securing the Loan.

**3.10. Affirmative Covenants from other Loan Documents.** All affirmative covenants contained in any other Loan Documents are hereby incorporated by reference herein.

**3.11. Management.** Maintain executive and management personnel with substantially the same qualifications and experience as the current executive and management personnel and promptly provide written notice to Bank of any change in such executive or management personnel.

**Section 4 Guarantors' Covenants**

Each Guarantor covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations owed under the Loan Documents, Guarantor shall:

3

# CARTER BANK & TRUST
## LOAN AGREEMENT

**4.01. Maintain Properties; Liquid Assets.** Guarantors shall not, without the prior written consent of Bank, sell, transfer or otherwise dispose of any of more than 30% of his/her personal Liquid Assets of any kind to any trust, entity, spouse, child, sibling, or any unrelated third party. "Liquid Assets" shall mean all publicly traded securities and/or securities accounts, bonds and mutual funds, any certificates of deposit, money market accounts, U.S. Treasuries and other federal agency instruments, hedge funds, derivative accounts and other investment instruments which are not pledged to Bank as security for any obligation to Bank.

**4.02. Comply With Laws.** Comply in all respects with all applicable laws, rules, regulations, and orders including, without limitation the Americans with Disabilities Act, paying before the delinquency thereof all taxes, assessments, and governmental charges imposed or assessed upon Guarantor or upon Guarantor's income, profits and properties, and with all Environmental Laws.

**4.03 Reporting Requirements.** Furnish to Bank:

**Guarantor Financial Reports:** Each of the Guarantors shall submit financial statements to the Bank on the Bank's form on an annual basis by January 31 of each year and shall submit copies of its State and Federal tax returns to the Bank when each such return is filed. The bank shall provide such form at least (30) days in advance of any required submission.

**Notice of Litigation:** Promptly after the receipt by Guarantor, or by Borrower of which Guarantor has knowledge, notice of any claim, action, suit, and proceeding before any court or governmental agency of any type which, if determined adversely, could have a material adverse effect on the financial condition, properties, or operations of Guarantors or Borrower, as appropriate.

**4.04. Transfer of Ownership.** Not, without the prior written consent of Bank: If Guarantor is a corporation, (a) issue, transfer or sell any new class of stock, or (b) issue, transfer or sell, in the aggregate, from its treasury stock and/or currently authorized but unissued shares of any class of partnership, limited partnership, limited liability partnership or limited liability company, issue, transfer or sell any interest in Guarantor.

**4.05. Tax Returns:** As soon as available each year, furnish complete copies of all federal tax returns (including all Schedules thereto) filed by Guarantor.

**4.06. Other Information:** Furnish such other information as Bank may from time to time reasonably request.

**4.07. Representations and Warranties.** Each Guarantor represents and warrants to Bank that: (i) if Guarantor is a corporation, partnership, limited partnership, limited liability partnership, limited liability limited partnership, or limited liability company, it is duly organized and validly existing under the laws of its respective state of incorporation or organization; that it and/or its subsidiaries, if any, are duly qualified and in good standing in every other state in which the nature of their business shall require such qualification, and are each duly authorized by their board of directors, general partners or member/manager(s), respectively, to enter into and perform the obligations under its Guaranty Agreement, (ii) all financial statements and related information furnished to Bank in connection with the Loan are true, correct and complete in all material respects, accurately represent the financial condition of such Guarantor as of the date thereof, and no material adverse change in its financial condition has occurred since the date thereof; (iii) it has full knowledge of the financial condition and business operations of Borrower; (iv) there is no litigation pending or, to the knowledge of such Guarantor, threatened which if adversely decided would materially impair its ability to honor and pay its obligations under its Guaranty Agreement; and (v) it is not in violation of (1) the Trading with the Enemy Act (50 U.S.C. App. Sec. 1 et seq), as amended, (2) any of the foreign assets control regulations issued by OFAC and any executive order related thereto, or (3) the U.S. Patriot Act, and further that it (a) is not subject to sanctions administered by OFAC or the U.S. Department of State or (b) has not engaged in any dealing or transactions with, or is otherwise associated with, any person subject to such sanctions.

**Section 5 Financial Covenants:** N/A

**Section 6 Negative Covenants**

Each Borrower covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations under the Loan Documents, such Borrower shall not, without the prior written consent of Bank:

**6.01. Liens.** Create, incur, assume, or suffer to exist any lien or security interest upon or in Collateral, any of Borrower's other properties, or the properties of any Pledgor securing payment of the Loan, whether now owned or hereafter acquired, except Permitted Liens.

**6.02. Debt.** Incur, assume, or suffer to exist any debt, except:
(a) Debt to Bank;
(b) Debt outstanding on the date hereof and shown on the most recent financial statements submitted to Bank;
(c) Accounts payable to trade creditors incurred in the ordinary course of business;
(d) Debt secured by purchase money security interests only in the property or assets acquired; and

**6.03. Capital Expenditures.** Expenditures for fixed assets in any fiscal year shall not exceed in the aggregate the sum of $N/A.

**6.04. Change of Legal Form of Business; Purchase of Assets.** Change Borrower's name or the legal form of Borrower's business as shown above, whether by merger, consolidation, conversion or otherwise, and Borrower shall not purchase all or substantially all of the assets or business of any Person, or enter into any partnership with a third party.

**6.05. Leases.** Create, incur, assume, or suffer to exist any leases, except:
(a) Leases outstanding on the date hereof and showing on the most recent financial statement submitted to Bank;
(b) Operating Leases for machinery and equipment which do not in the aggregate require payments in excess of $ N/A in any fiscal year of Borrower.

**6.06. Dividends or Distributions; Acquisition of Capital Stock or Other Ownership Interests.** Declare or pay any dividends or distributions of any kind, or purchase or redeem, retire, or otherwise acquire any of Borrower's capital stock or other ownership interests, now or hereafter outstanding. For purposes of this section so long as the Borrower had net income (or otherwise had positive cash flow) for the period in which the dividend or distribution takes place and there is adequate working capital in the business, the Bank's consent will not be unreasonably withheld.

**6.07. Salaries.** Salaries and any other cash compensation to owners/officers/partners/managers shall be limited as follows: N/A

**6.08. Guaranties.** Assume, guarantee, endorse, or otherwise be or become directly or contingently liable for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

**6.09. Loans to Insiders and Affiliates.** Make any loans to directors, officers, partners, members, shareholders, subsidiaries or affiliates.

**6.10. Disposition of Assets.** Sell, lease, or otherwise dispose of any of its assets or properties except in the ordinary and usual course of its business.

4

# CARTER BANK & TRUST
## LOAN AGREEMENT

6.11. **Transfer of Ownership.** (a) issue, transfer or sell any new class of stock, (b) issue, transfer or sell, in the aggregate more than 10%] of the total number of shares from its treasury stock and/or currently authorized but unissued shares of any class of stock, as of the date of this Agreement, or (c) permit any shareholder to transfer or sell more than 10% of its issued and outstanding shares in Borrower as of the date of this Agreement

6.12. **Negative Covenants from Loan Documents.** All negative covenants contained in any Loan Document are hereby incorporated by reference herein.

6.13. **Transactions with Affiliates.** Directly or indirectly, sell, lease, transfer, or otherwise dispose of any of its property to, or purchase any property from, or enter into any contract, agreement, understanding, loan, advance, guarantee or transaction (including the rendering of services) with or for the benefit of, any Affiliate (each of the foregoing, an "Affiliate Transaction"), unless (a) such Affiliate Transaction or series of Affiliate Transactions is (i) in the best interest of Borrower and (ii) on terms that are no less favorable to Borrower than those what would have been obtained in a comparable arm's-length transaction by Borrower with a person that is not an Affiliate. For purposes of this section, "Affiliate" shall mean any Borrower, any relative of any Borrower, of any Guarantor, or of an entity which is a parent, subsidiary or any person or entity controlled by, or under the common control of, any Borrower, any Guarantor, Borrower's parent or subsidiary, or Guarantor's parent or subsidiary.

### Section 7 Hazardous Substances and Compliance with Environmental Laws

7.01. **Investigation.** Borrower hereby certifies that to the best of its knowledge its real property, including without limitation the Mortgaged Property, is not or has not been affected by the presence of asbestos, oil, petroleum or other hydrocarbons, urea formaldehyde, PCBs, hazardous or nuclear waste, toxic chemicals and substances, or other hazardous materials, as defined in applicable Environmental Laws (collectively, "Hazardous Substances"). Borrower represents and warrants that to the best of its knowledge there are no Hazardous Substances contaminating its real property, nor have any such materials been released on or stored on or improperly disposed of on its real property during its ownership, occupancy or operation thereof except in strict compliance with Environmental Laws and any applicable permits. Borrower hereby agrees that, except in strict compliance with applicable Environmental Laws, it shall not knowingly permit any release, storage or contamination of its properties as long as any indebtedness or obligations to Bank under the Loan Documents remains unpaid or unfulfilled. In addition, Borrower does not have or use any underground storage tanks on any of its real property, including the Mortgaged Property, which are not registered with the appropriate Federal and/or State agencies and which are not properly equipped and maintained in accordance with all Environmental Laws. If requested by Bank, Borrower shall provide Bank with all necessary and reasonable assistance required for purposes of determining the existence of Hazardous Substances on the Mortgaged Property, including allowing Bank access to the Mortgaged Property, to Borrower's employees having knowledge of, and to its files and records within Borrower's control relating to the existence, storage, or release of Hazardous Substances on the Mortgaged Property.

7.02. **Compliance.** Borrower agrees to comply with all applicable Environmental Laws, including, without limitation, all those relating to Hazardous Substances. Borrower further agrees to provide Bank, and all appropriate Federal and State authorities, with immediate notice in writing of any release of Hazardous Substances on the Mortgaged Property and to pursue diligently to completion all appropriate and/or required remedial action in the event of such release. In addition, Borrower shall within fifteen (15) days after receipt thereof, a complete copy of any notice, summons, lien, citation, letter or other communication from any governmental agency concerning any action or omission of Borrower in connection with any environmental activity or issue.

7.03. **Remedial Action; Indemnity:** Bank shall have the right, but not the obligation, to undertake all or any part of such remedial action in the event of a release of Hazardous Substances on the Mortgaged Property and to add any expenditures so made to the principal indebtedness secured by the Deed(s) of Trust or other security instruments. Borrower agrees to indemnify and hold Bank harmless from any and all loss or liability arising out of any violation of the representations, covenants, and obligations contained in this Section 7, or resulting from the recording of the Deed(s) of Trust or other security instruments. In addition, Bank shall have all rights and remedies provided in other Loan Documents with respect to Hazardous Substances and violations of Environmental Laws.

### Section 8 Events of Default

The following shall be "Events of Default" by Borrower or any Guarantor:

8.01. Should Borrower fail to make payment of any installment of principal or interest on the Note when due.

8.02. Should any representation or warranty made in the Loan Documents prove to be false or misleading in any material respect when made.

8.03. Should any report, certificate, financial statement, or other document furnished prior to the execution of or pursuant to the terms of this Agreement prove to be false, incomplete or misleading in any material respect when delivered or made.

8.04. Should Borrower or any Guarantor default in the payment or performance of any other loan, line of credit, indenture, mortgage instrument, security agreement or other agreement with Bank or with another creditor or Person that may materially affect any Borrower's or any Guarantor's property or ability to perform their respective obligations under this Agreement or the other Loan Documents.

8.05. Should any Borrower, any Guarantor or any Pledgor breach any covenant, condition, or agreement made under any of the Loan Documents to which it is a party.

8.06. Should a custodian be appointed for or take possession of any or all of the assets of any Borrower or any Guarantor; should any Borrower or any Guarantor either voluntarily or involuntarily become subject to any insolvency proceeding, including becoming a debtor under the United States Bankruptcy Code, any proceeding to dissolve any Borrower or any Guarantor, any proceeding to have a receiver appointed, or should any Borrower or any Guarantor make an assignment for the benefit of creditors; or should there be an attachment, execution, or other judicial seizure of all or any portion of any Borrower's or any Guarantor's assets, including an action or proceeding to seize any Collateral or any funds on deposit with Bank, and such seizure is not discharged within 30 days.

8.07. Should final judgment for the payment of money be rendered against Borrower or any Guarantor which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed.

8.08. Upon the death of, or termination of existence of, or dissolution of, any Borrower, Pledgor or Guarantor.

8.10. Should any lien or security interest in the Collateral terminate, fail for any reason to have the priority agreed to by Bank on the date granted, or become unenforceable, unperfected or invalid for any reason, should the Collateral fail to be insured as required herein, or should the market value of the Mortgaged Property or other Collateral decline below the value anticipated or required in connection with the Loan.

# CARTER BANK & TRUST
## LOAN AGREEMENT

8.11. Should Borrower commit a default under any Hedge Agreement, as defined in Section 10.01.

8.12. Should Borrower assert for any reason that this Agreement or any provision hereof or any other Loan Document is invalid or unenforceable, or should any Guarantor terminate his Guaranty or otherwise assert that that its Guaranty is invalid or unenforceable.

8.13. Should any Borrower, Guarantor or any officer, director or owner of 20% or more of the outstanding ownership interests of any Borrower or Guarantor, be indicted for a felony offense under state or federal law, including without limitation any violation of any anti-money laundering, bribery, OFAC or bank fraud, or should any Borrower or Guarantor employ an executive officer or manager, or elect a director, who has been convicted of any such felony offense, or should any Person become an owner of 20% or more of the outstanding ownership interests of any Borrower or Guarantor who has been indicted or convicted of any such felony offense.

### Section 9 Remedies Upon Default

Upon the occurrence of any of the above Events of Default, and subject to any applicable notice and cure periods, if any, Bank may at any time thereafter, at its option, take any or all of the following actions, at the same or at different times:

9.01. Declare the outstanding balance of the Note to be immediately due and payable, both as to principal and interest, late fees, and all other amounts/expenditures without presentment, demand, protest, or further notice of any kind, all of which are hereby expressly waived by Borrower and each Guarantor, and such balance shall accrue interest at the Default Rate as provided herein until paid in full;

9.02. Require any Borrower or any Guarantor to pledge additional collateral to Bank from such Borrower's or Guarantor's assets and properties to secure the Loan, the acceptability and sufficiency of such collateral to be determined in Bank's sole discretion;

9.03. Take immediate possession of and/or foreclose upon any or all Collateral which may be granted to Bank as security for the indebtedness and obligations of any Borrower or any Guarantor under the Loan Documents;

9.04. Exercise any and all other rights and remedies available to Bank under the terms of the Loan Documents and applicable law, including the Virginia Uniform Commercial Code;

9.05. Any obligation of Bank to advance funds to a Borrower or any other Person under the terms of under the Loan Documents and all other obligations, if any, of Bank under the Loan Documents shall immediately cease and terminate unless and until Bank shall reinstate such obligation in writing.

### Section 10 Miscellaneous Provisions

10.01. **Definitions.**

"**Collateral**" shall mean all property and assets granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, security deed, deed of trust, assignment, pledge, crop pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

"**Environmental Laws**" shall mean all federal and state laws and regulations which affect or may affect the Mortgaged Property, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. Sections 9601 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. Sections 6901 et seq.), the Federal Water Pollution Control Act (33 U.S.C. Sections 1251 et seq.), the Clean Air Act (42 U.S.C. Section 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. Section 2601 et seq.), and all applicable environmental laws and regulations of the State of West Virginia and the Commonwealth of Virginia, as such laws or regulations have been amended or may be amended.

"**Loan Documents**" shall mean this Agreement including any Schedule attached hereto, the Note(s), the [Deed(s) of Trust, the Mortgage(s), the Security Deed(s)], the Security Agreement(s), the Assignment(s) of Leases and Rents, all UCC Financing Statements, the Guaranty Agreement(s), and all other documents, certificates, and instruments executed in connection therewith, and all renewals, extensions, modifications, substitutions, and restatements thereof and therefore.

"**Permitted Liens**" shall mean (1) liens and security interest securing any indebtedness owed by any Borrower to Bank; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith and for which appropriate reserves are maintained; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under Section 6.02; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by Bank in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

"**Person**" shall mean an individual, partnership, corporation, trust, unincorporated organization, limited liability company, limited liability partnership, association, joint venture, or a government agency or political subdivision thereof.

"**GAAP**" shall mean generally accepted accounting principles as established by the Financial Accounting Standards Board or the American Institute of Certified Public Accountants, as amended and supplemented from time to time.

10.02. **Non-impairment.** If any one or more provisions contained in the Loan Documents shall be held invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained therein shall not in any way be affected or impaired thereby and shall otherwise remain in full force and effect.

10.03. **Applicable Law, Jurisdiction and Venue.** The Loan Documents shall be construed in accordance with and governed by the laws of the Commonwealth of Virginia and shall bind each Borrower's heirs, personal representatives, successors and assigns and inure to the benefit of Bank's successors and assigns.

10.04. **Waiver.** Neither the failure nor any delay on the part of Bank in exercising any right, power or privilege granted in the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any other right, power, or privilege which may be provided by law. A waiver by Bank of a provision of this Agreement shall not prejudice or constitute a waiver of Bank's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Bank, nor any course of dealing between Bank and Borrower, or between Bank and any Guarantor, shall constitute a waiver of any of Bank's rights or of any of Borrower's or any Guarantor's obligations as to any future transaction. Whenever the consent of Bank is required under this Agreement, the granting of such consent by Bank in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Bank.

# CARTER BANK & TRUST

## LOAN AGREEMENT

**10.05. Modification.** No modification, amendment, or waiver of any provision of any of the Loan Documents shall be effective unless in writing and signed by Borrower and Bank.

**10.06. Payment Amount Adjustment.** In the event that any Loan referenced herein has a fixed payment with a variable (floating) interest rate and, as a result of an increase in such interest rate, accruals of interest are not fully paid, Bank, in its sole discretion, may at any time adjust Borrower's fixed payment amount(s) to prevent the amount of interest accrued in a given period exceeding the periodic payment amount or to cause the affected Loan to be repaid within the same period of time as originally agreed upon.

**10.07 Stamps and Other Fees.** Borrower shall pay all federal or state stamp and recording taxes, or other fees or charges, if any are payable or are determined to be payable by reason of the execution, delivery, or issuance of the Loan Documents or any security granted to Bank; and Borrower and Guarantors agree to indemnify and hold harmless Bank against any and all liability in respect thereof. Borrower shall pay all fees incurred by Bank for the appraisal of the Mortgaged Property obtained at any time after the date of this Agreement which Bank requires pursuant to federal or state regulations, in connection with any event of default under the Loan Documents or restructure of the Loan, any material damage to or condemnation of the Mortgaged Property, or in connection with any foreclosure or forbearance. Such appraisal fees shall be payable on demand, shall accrue interest at the default rate set forth in the Note(s) following demand and shall be secured by the security documents executed by Borrower or Pledgor.

**10.08. Attorneys' Fees.** In the event Borrower, any Guarantor or any Pledgor shall default in any of its obligations hereunder and Bank finds it necessary to employ an attorney to assist in the enforcement or collection of the indebtedness of Borrower to Bank, to enforce the terms and provisions of the Loan Documents, to modify the Loan Documents, or in the event Bank voluntarily or otherwise should become a party to any suit or legal proceeding (including a proceeding conducted under the Bankruptcy Code), Borrower and Guarantors, jointly and severally, agree to pay all reasonable attorneys' fees incurred by Bank and all related costs of collection or enforcement that may be incurred by Bank. Borrower and Guarantor shall be liable for such attorneys' fees and costs whether or not any suit or proceeding is actually commenced.

**10.09. Bank Making Required Payments.** In the event Borrower shall fail to maintain insurance, pay taxes or assessments, costs and expenses which Borrower is, under any of the terms hereof or of any Loan Documents, required to pay, or fail to keep any of the properties and assets constituting collateral free from new security interests, liens, or encumbrances, except as permitted herein, Bank may at its election make expenditures for any or all such purposes and the amounts expended together with interest thereon at the Default Rate, shall become immediately due and payable to Bank, and shall have benefit of and be secured by the collateral; provided, however, Bank shall be under no duty or obligation to make any such payments or expenditures.

**10.10. Right of Offset.** Any indebtedness owing from Bank to Borrower may be set off and applied by Bank on any indebtedness or liability of Borrower to Bank at any time and from time to time after maturity, whether by acceleration or otherwise, and without demand or notice to Borrower.

**10.11. UCC Authorization.** Borrower authorizes Bank to file such UCC Financing Statements describing the collateral in any location deemed necessary and appropriate by Bank.

**10.12. Modification and Renewal Fees.** Bank may, at its option, charge any fees for modification, renewal, extension, or restatement of any terms of the Note(s) and the other Loan Documents not prohibited by applicable law.

**10.13. Conflicting Provisions.** If provisions of this Agreement shall conflict with any terms or provisions of any of the Note(s), security document(s) or any schedule attached hereto, the provisions of such Note, security documents or any Schedule attached hereto, as appropriate, shall take priority over any provisions in this Agreement.

**10.14 Notices.** Any notice permitted or required by the provisions of this Agreement shall be deemed to have been given when delivered in writing to Bank at 1300 Kings Mountain Road, Martinsville, VA 24112, and to the Borrower at its offices at 302 S. Jefferson St., Roanoke, VA 24011 when sent by certified mail and return receipt requested or by recognized courier. Unless otherwise required by law, if there is more than one Borrower, any notice given by Bank to any Borrower shall be deemed to be notice given to all Borrowers.

**10.15. Consent to Jurisdiction.** Borrower and Guarantors hereby irrevocably agree that any legal action or proceeding arising out of or relating to this Agreement or any of the Loan Documents shall be instituted in the Circuit Court of the City of Martinsville, Virginia. Borrower consents to the jurisdiction of such court and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Borrower may now or hereafter have in any such legal action or proceedings.

**10.16. Counterparts.** This Agreement may be executed by one or more parties on any number of separate counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument.

**10.17. Entire Agreement.** The Loan Documents embody the entire agreement between Borrower and Bank with respect to the Loan, and there are no oral or parole agreements existing between Bank and Borrower with respect to the Loan which are not expressly set forth in the Loan Documents.

**10.18. Indemnity.** Borrower and Guarantors hereby jointly and severally agree to indemnify and hold Bank, its affiliates, their successors and assigns and their respective directors, officers, employees and shareholders harmless from and against, any loss, damage, lawsuit, proceeding, judgment, cost, penalty, expense (including all reasonable in-house and outside attorneys' fees, whether or not suit is brought, accountants' fees and/or consultants' fees) or liability whatsoever arising from or otherwise relating to the closing, disbursement, administration or repayment of the Loan, including without limitation: (i) Borrower's or Guarantors' failure to comply with the terms of this Agreement and the other Loan Documents (ii) the breach of any representation or warranty made to Bank in this Agreement or in any other Loan Documents now or hereafter executed in connection with the Loan; (iii) the violation of any covenant or agreement contained in this Agreement or any of the other Loan Documents; provided, however, that the foregoing indemnification shall not be deemed to cover any such loss, damage, lawsuit, proceeding, cost, expense or liability which is finally determined by a court of competent jurisdiction to result solely from Bank's gross negligence or willful misconduct. This indemnity obligation shall survive the payment of the Loan and the termination of this Agreement.

**10.19. WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND BANK, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER AND GUARANTORS AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT BANK MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER AND GUARANTORS TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BANK TO MAKE THE LOAN AND ENTER INTO THIS AGREEMENT. FURTHER, THE UNDERSIGNED HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT BANK WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL**

# CARTER BANK & TRUST
## LOAN AGREEMENT

PROVISION. NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION. BORROWER AND GUARANTORS ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS PARAGRAPH, THAT THEY FULLY UNDERSTAND ITS TERMS, CONTENT AND EFFECT, AND THAT THEY VOLUNTARILY AND KNOWINGLY AGREES TO THE TERMS OF THIS PARAGRAPH.

10.20. **Required Information for New Loan.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Bank to obtain, verify and record information that identifies each person or entity obtaining a loan including Borrower's legal name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will constitute a default under this instrument or agreement. In addition, no Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

10.21. **Correction of Errors; Further Assurances.** Borrower will and will cause any Pledgor and each Guarantor to cooperate with Bank to correct any errors in this Agreement, the Note or other Loan Documents and shall execute such documentation as is necessary to do so. In addition, Borrower, Pledgor and each Guarantor shall cooperate fully with Bank and execute such further instruments, documents and agreements, and shall do any and all such further acts, as may be reasonably requested by Bank to better evidence and reflect the transactions described herein and contemplated hereby and to carry into effect the intent purposes of this Agreement, the Note and the other Loan Documents, including without limitation the granting and/or perfecting of a security interest in the Collateral.

10.22. **Consent to Loan Participation.** Borrower agrees and consents to Bank's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Bank. Bank may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Bank may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waivers any rights to privacy Borrower may have with respect to such matters. Borrower hereby waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement(s) governing the sale of such participation interests. Borrower waives all rights of offset or counterclaim, whether now existing or hereafter arising, against Bank or against any purchaser of such a participation interest and unconditionally agrees that either Bank or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower agrees that the purchaser of any such participation interest may enforce its interest irrespective of any personal claims or defenses that Borrower may have against Bank. Any purchaser of a participation interest in the Loan may exercise a right of setoff against Borrower to the same extent as Bank has such right.

10.23. **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

10.24. **Construction.** Each party hereto hereby acknowledges that all parties hereto participated equally in the drafting and/or negotiation of this Agreement and that, accordingly, no court when interpreting this Agreement shall construe it more stringently against one party than the other.

10.25. **Time of the Essence.** Time is of the essence in the performance of this Agreement and the other Loan Documents.

IN WITNESS WHEREOF, the Bank, Borrower and Guarantors have caused this Agreement to be duly executed all as of the date first above written.

WITNESS: _/s/_
Print Name: Stephen W. Ball

Borrower:

Justice Low Seam Mining, Inc.
Name of Corporation

By: _/s/_ (SEAL)
Name: James C. Justice II
Title: President

WITNESS: _/s/_
Print Name: Stephen W. Ball

Print Name: Stephen W. Ball

Guarantors:

_/s/_ (SEAL)
Name: James C. Justice, II

_/s/_ (SEAL)
Name: Cathy Justice

8

# CARTER BANK & TRUST
## LOAN AGREEMENT

**CARTER BANK & TRUST**

By: _____
Name: _____
Title: _____