# EXHIBIT 1.B

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ███63-87 | GREENBRIER HOTEL CORPORATION | ███7587 | 05/22/17 | |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $8,000,000.00 | Not Applicable | 5.500% | Payable on Demand | Commercial |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
(Commercial - Draw)

---

**CONFESSION OF JUDGMENT.** I appoint and authorize John Gregory, James Haskins, Scott Wall and/or James McGarry of Young, Haskins, Mann, Gregory, Wall And McGarry, Starling Avenue, Martinsville, VA 24112, attorneys in fact, to appear in the office of the Clerk of the Circuit Court of the City of Martinsville, 55 West Church Street, Martinsville, Virginia, to confess judgment against me, in favor of Lender, if I default on this agreement. The confession of judgment may be without process and for any amount **of PRINCIPAL and INTEREST** plus all other amounts due on this Note plus collection costs and reasonable attorneys' fees. This is in addition to other remedies. A substitute attorney-in-fact may be appointed by Lender.

**For the purposes of this notice, "you" means the Borrower.**

**IMPORTANT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 22 2017. The parties and their addresses are:

**LENDER:**
    **CARTER BANK & TRUST**
    4 East Commonwealth Boulevard
    Martinsville, VA  24112-1920
    Telephone:  (276) 632-2901

**BORROWER:**
    **GREENBRIER HOTEL CORPORATION**
    a West Virginia Corporation
    300 WEST MAIN STREET
    WHITE SULPHUR SPRINGS, WV 24986-2414

    **PLAYERS CLUB, LLC**
    a Delaware Limited Liability Company
    300 West Main Street
    White Sulphur Springs, WV 24986

    **JUSTICE FAMILY GROUP, LLC**
    a Delaware Limited Liability Company
    300 West Main Street
    White Sulphur Springs, WV 24986

    **GREENBRIER GOLF AND TENNIS CLUB CORPORATION**
    a West Virginia Corporation
    300 West Main Street
    White Sulphur Springs, WV 24986

    **GREENBRIER MEDICAL INSTITUTE, LLC**
    a West Virginia Limited Liability Company
    300 West Main Street
    White Sulphur Springs, WV 24986

    **THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC.**
    a Delaware Corporation
    300 West Main Street
    White Sulphur Springs, WV 24986

**THE GREENBRIER SPORTING CLUB, INC.**
a West Virginia Corporation
300 West Main Street
White Sulphur Springs, WV 24986

**OAKHURST CLUB, LLC**
a West Virginia Corporation
300 West Main Street
White Sulphur Springs, WV 24986

1. **DEFINITIONS.**  As used in this Note, the terms have the following meanings:

   **A. Pronouns.**  The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note.  "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

   **B. Note.**  Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   **C. Loan.**  Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   **D. Loan Documents.**  Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   **E. Property.**  Property is any property of the Borrower, real, personal or intangible, that secures my performance of the obligations of this Loan.

   **F. Percent.**  Rates and rate change limitations are expressed as annualized percentages.

   **G. Dollar Amounts.**  All dollar amounts will be payable in lawful money of the United States of America.

2. **PROMISE TO PAY.**  For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of **$8,000,000.00 (Principal)**, plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

3. **ADVANCES.**  Advances under this Note are made according to the following terms and conditions.

   **A. Renewal of Prior Note.**  This Note renews and extends that certain Promissory Note and Security Agreement dated November 2, 2016 made by Greenbrier Hotel Corporation, Players Club, LLC and Justice Family Group, LLC payable to the order of Lender in the original principal amount of $3,000,000.

   **B. Requests for Advances.**  My requests are a warranty that I am in compliance with all the Loan Documents.  When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan.  Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me.  All advances will be made in United States dollars.  I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine.  To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

   I or anyone I authorize to act on my behalf may request advances by the following methods.

   **C. Advance Limitations.**  In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

      **(1)** Discretionary Advances.  You will make all Loan advances at your sole discretion.

      **(2)** Advance Amount.  Subject to the terms and conditions contained in this Note, advances will be made in exactly the amount I request.

**(3)** Disbursement of Advances.   On my fulfillment of this Note's terms and conditions, you will disburse the advance in any manner as you and I agree.

**(4)** Credit Limit.   I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit.   You may, at your option, grant such a request without obligating yourselves to do so in the future.   I will pay any overadvances in addition to my regularly scheduled payments.   I will repay any overadvance by repaying you in full within five (5) days after the overadvance occurs.

**(5)** Records.   Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**4. INTEREST.**   Interest will accrue on the unpaid Principal balance of this Note at the rate of **5.500 percent (Interest Rate) per annum**.

    **A. Post-Maturity Interest.**   After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

    **B. Maximum Interest Amount.**   Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law.   Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance.   Any remainder will be refunded to me.

    **C. Statutory Authority.**   The amount assessed or collected on this Note is authorized by the Virginia usury laws under Va. Code §§ 6.2 et. seq.

    **D. Accrual.**   Interest accrues using an Actual/360 days counting method.

**5. PAYMENT.**   I agree to pay this Note **ON DEMAND**, and, prior to demand, to pay interest that has accrued on this Note monthly on the first day of each month commencing on June 1, 2017 and continuing until your demand.   Upon your demand the entire unpaid balance of Principal and accrued interest, along with any earned, and unpaid fees or charges, and the amount of any advances made on my behalf, will be due and owing.

Payments will be rounded up to the nearest $.01.   With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf.   Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to escrow that is due, then to late charges that are due, then to any charges that I owe other than principal and interest, and finally to principal that is due.   If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me.   The actual amount of my final payment will depend on my payment record.

**6. PREPAYMENT.**   I may prepay this Loan in full or in part at any time.   Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**7. LOAN PURPOSE.**   The purpose of this Loan is working capital.

**8. SECURITY.**   The Loan is secured by the following, previously executed, security instruments or agreements:

Deeds of Trust:   A first priority deed of trust on real property owned by Borrower and described in those Deeds of Trust made by (i) Greenbrier Hotel Corporation dated on or about the date hereof, (ii) Greenbrier Medical Institute, LLC dated March 20, 2014, as modified by Modification of Deed of Trust and Assignment of Leases and Rents dated August 4, 2014 and Credit Line Deed of Trust dated April 8, 2016, (iii) Oakhurst Club, LLC dated on or about the date hereof, (iv) Greenbrier Golf and Tennis Club Corporation dated May 24, 2016, and (v) The Greenbrier Sporting Club Development Company, Inc. dated April 8, 2016, as modified on or about the date hereof; and

Security Agreement:   A first priority security interest in all assets owned or hereafter acquired by Borrower and all replacements, substitutions and proceeds thereof.

**9. GUARANTY.**   A Guaranty, dated on the date hereof, from JAMES C JUSTICE, II (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

A Guaranty, dated on the date hereof, from CATHY L. JUSTICE (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

**10. DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. New Organizations.** Without your written consent, I organize, merge into, or consolidate with an entity; acquire all or substantially all of the assets of another; materially change the legal structure, management, ownership or financial condition; or effect or enter into a domestication, conversion or interest exchange.

**E. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**F. Other Documents.** A default occurs under the terms of any other Loan Document.

**G. Other Agreements.** I am in default on any other debt or agreement I have with you.

**H. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**I. Judgment.** I fail to satisfy or appeal any judgment against me.

**J. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**K. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**L. Property Transfer.** I transfer all or a substantial part of my money or property.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Termination.** You may terminate my rights to obtain advances or other extensions of credit by any of the methods provided in this Note.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include (unless prohibited by law) reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this

transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**17. APPLICABLE LAW.** This Note is governed by the laws of Virginia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Virginia, unless otherwise required by law.

**18. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**19. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**20. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**21. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**22. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**23. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**24. WAIVER OF JURY TRIAL.** All of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any

litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

25. **SIGNATURES.**  By signing under seal, I agree to the terms contained in this Note.  I also acknowledge receipt of a copy of this Note.


BORROWER:

GREENBRIER HOTEL CORPORATION

By _____
Date _____5-22-17_____ (Seal)
JILLEAN L. JUSTICE, President


PLAYERS CLUB, LLC

By _____
Date _____5-22-17_____ (Seal)
JILLEAN L. JUSTICE, President


JUSTICE FAMILY GROUP, LLC

Date _____5-22-17_____ (Seal)
JILLEAN L. JUSTICE, President


GREENBRIER GOLF AND TENNIS CLUB CORPORATION

By _____
Date _____5-22-17_____ (Seal)
JILLEAN L. JUSTICE, President

GREENBRIER MEDICAL INSTITUTE, LLC

By _____
Date _____ (Seal)
    JILLEAN L. JUSTICE, President

THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC.

By _____
Date _____ (Seal)
    JILLEAN L. JUSTICE, President

THE GREENBRIER SPORTING CLUB, INC.

By _____
Date 5-22-2017 (Seal)
    James T. Miller     Treasurer

OAKHURST CLUB, LLC

By _____
Date _____ (Seal)
    JILLEAN L. JUSTICE, Member

ACKNOWLEDGMENT (REQUIRED FOR CONFESSION OF JUDGMENT):

STATE OF _West Virginia_, COUNTY (OR CITY) OF _Greenbrier_ ss.

This instrument was acknowledged before me this ___22nd___ day of __May__ ___2017___ by JILLEAN L. JUSTICE – President of GREENBRIER HOTEL CORPORATION a West Virginia corporation, on behalf of the corporation.

My Commission Expires:
    February 16, 2023
    Connie G Vance
    NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE OF _West Virginia_, COUNTY (OR CITY) OF _Greenbrier_ ss.

This instrument was acknowledged before me this ___22nd___ day of __May__, ___2017___ by JILLEAN L. JUSTICE – President of PLAYERS CLUB, LLC, a Limited Liability Company, on behalf of the Limited Liability Company.

My Commission Expires: February 16, 2023
    Connie G Vance
    NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE OF _West Virginia_ , COUNTY (OR CITY) OF _Greenbrier_ ss.

This instrument was acknowledged before me this ___22nd___ day of ___May___, ___2017___ by JILLEAN L. JUSTICE - President of JUSTICE FAMILY GROUP, LLC, a Limited Liability Company, on behalf of the Limited Liability Company.

My Commission Expires: _February 16, 2023_

_Connie G Vance_
NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE OF _West Virginia_ , COUNTY (OR CITY) OF _Greenbrier_ ss.

This instrument was acknowledged before me this ___22nd___ day of ___May___, ___2017___ by JILLEAN L. JUSTICE - President of GREENBRIER GOLF AND TENNIS CLUB CORPORATION a West Virginia corporation, on behalf of the corporation.

My Commission Expires: _February 16, 2023_

_Connie G Vance_
NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE OF _West Virginia_ , COUNTY (OR CITY) OF _Greenbrier._ ss.

This instrument was acknowledged before me this ___22nd___ day of ___May___, ___2017___ by JILLEAN L. JUSTICE - President of GREENBRIER MEDICAL INSTITUTE, LLC a Limited Liability Company on behalf of the Limited Liability Company.

My Commission Expires: _February 16, 2023_

_Connie G Vance_
NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE OF _West Virginia_ , COUNTY (OR CITY) OF _Greenbrier_ ss.

This instrument was acknowledged before me this ___22nd___ day of ___May___, ___2017___ by JILLEAN L. JUSTICE - President of THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC. a Delaware corporation, on behalf of the corporation.

My Commission Expires: _February 16, 2023_

_Connie G Vance_
NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE     OF   *West Virginia*           COUNTY      (OR       CITY)      OF
_____ *Greenbrier* _____ ss.

This instrument was acknowledged before me this ___22nd___ day of ___May___,
___2017___ by *James Terry Miller* - *Treasurer* of THE GREENBRIER SPORTING CLUB, INC.,
a West Virginia corporation, on behalf of the corporation.

My Commission Expires:
*February 16 2023*
             NOTARY PUBLIC
*Connie G Vance*

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

STATE     OF   *West Virginia*,          COUNTY      (OR       CITY)      OF
*Greenbrier* _____ ss.

This instrument was acknowledged before me this ___22nd___ day of ___May___,
___2017___ by Jillean L. Justice - Member of OAKHURST CLUB, LLC a West Virginia limited
liability company, on behalf of the limited liability company.

My Commission Expires: *February 16, 2023*
*Connie A. Vance*
NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

31289514 F

# CARTER BANK & TRUST

## LOAN AGREEMENT

███████53-87
Carter Bank & Trust Loan Number

This Loan Agreement (the "Agreement") is made this 22nd day of May, 2017 by and between Carter Bank & Trust, a Virginia banking corporation ("Bank"), and:

Greenbrier Hotel Corporation, a West Virginia corporation, Justice Family Group, LLC, a Delaware limited liability company, Players Club, LLC, a Delaware limited liability company, Greenbrier Golf and Tennis Club Corporation, a West Virginia corporation, Greenbrier Medical Institute, LLC, a West Virginia limited liability company, Oakhurst Club, LLC, a West Virginia limited liability company, The Greenbrier Sporting Club, Inc., a West Virginia corporation, and The Greenbrier Sporting Club Development Company, Inc. a Delaware corporation (individually and collectively, "Borrower", each having its chief executive offices at 302 S. Jefferson St., Roanoke, VA 24011.

James C. Justice, II and Cathy L. Justice (individually "Guarantor" and collectively the "Guarantors").

The Borrower has applied to Bank for and Bank has agreed to make, subject to the terms of and upon the reliance of Borrower's representations, warranties and agreements made in this Agreement, the following loan and/or line of credit (hereinafter sometimes referred to, singularly or collectively, if more than one, as "Loan"):

**Revolving Loan** ("Loan") in the principal amount not to exceed $8,000,000.00 for the purpose of renewing that certain $3,000,000 loan made by Bank to Greenbrier Hotel Corporation, Justice Family Group, LLC and The Players Club, LLC dated November 2, 2016 and to provide working capital to the Greenbrier Hotel for the Professional Golfers Association Tour Event expenses and other items, which Loan shall be evidenced by the Borrower's Promissory Note dated of even date herewith (the "Note") payable ON DEMAND with accrued interest payable monthly and which shall bear interest at the rate set forth in such note, the terms of which are incorporated herein by reference. When Bank makes demand on the Revolving Note, the entire unpaid principal balance then outstanding plus accrued interest thereon shall be paid in full. The Loan shall be secured by a first and prior lien and security interest on real property owned by Borrower described in those Deeds of Trust made by (i) Greenbrier Hotel Corporation dated on or about the date hereof as described in Section 1 below (the "Amended and Restated Greenbrier Hotel Corporation Deed of Trust"), (ii) Greenbrier Medical Institute, LLC dated March 20, 2014, as modified by Modification of Deed of Trust and Assignment of Leases and Rents dated August 4, 2014 and Credit Line Deed of Trust dated April 8, 2016, (iii) Oakhurst Club, LLC dated on or about the date hereof as described in Section 1 below (the "Amended and Restated Oakhurst Club Deed of Trust"), (iv) Greenbrier Golf and Tennis Club Corporation dated May 24, 2016, and (v) The Greenbrier Sporting Club Development Company, Inc. dated April 8, 2016, as modified as described in Section 1 below (as so modified, the "Greenbrier Sporting Club Development Company Deed of Trust")(collectively, the "Deeds of Trust"). Provided that the principal amount outstanding under the Loan does not exceed $8,000,000, Borrower may borrow, repay and reborrowing the Loan until demand by Bank.

## Section 1 Conditions Precedent

Bank shall not be obligated to make any disbursement of loan proceeds until all of the following conditions have been satisfied by proper evidence, execution, and/or delivery to Bank of the following documents and items in addition to this Agreement, all in form and substance satisfactory to Bank and Bank's counsel in their sole discretion:

**USA Patriot Act Verification Information:** Information or documentation, including but not limited to the legal name, address, tax identification number, driver's license, and date of birth (if the Borrower is an individual) of the Borrower sufficient for Bank to verify the identity of the Borrower in accordance with the USA Patriot Act. Borrower shall notify Bank promptly of any change in such information.

**Note:** The Note duly executed by the Borrower.

**Deed of Trust:** The Deeds of Trust in which Borrower or other owner thereof shall grant and hypothecate to Bank a first priority lien on the specified real property, fixtures and improvements thereon (the "Mortgaged Property"), including without limitation (i) the Amended and Restated Greenbrier Hotel Corporation Deed of Trust executed by Greenbrier Hotel Corporation in form and substance acceptable to Bank in its sole opinion, together with such consents and subordinations as Bank shall require in its sole opinion, (ii) the Amended and Restated Oakhurst Club Deed of Trust executed by Oakhurst Club, LLC in form and substance acceptable to Bank in its sole opinion and (iii) a modification to the Greenbrier Sporting Club Development Company Deed of Trust in form and substance acceptable to Bank in its sole opinion

**Assignment of Leases and Rents:** The Assignment of Leases and Rents in which the Borrower or other owner thereof shall assign to Bank all existing and thereafter arising leases on the Mortgaged Property and the rents and profits therefrom.

**Title Insurance:** A Standard ALTA mortgage policy from a company or companies approved by Bank, providing coverage for the aggregate principal amount of the Note(s) and insuring the appropriate lien priority of the Deeds of Trust and which shall not contain any title exceptions or policy exclusions not approved by Bank and Bank's counsel.

**Flood Hazard Certification:** Evidence satisfactory to Bank and Bank's counsel as to whether the Mortgaged Property is located within an area identified as having "special flood hazards" as such term is used in the Federal Flood Disaster Protection Act of 1973.

**Security Agreements:** Security Agreement in which Borrower and any other owner (a "Debtor") of personal property collateral shall grant to Bank a first priority security interest in the personal property specified therein. (If Bank has or will have a security interest in any collateral which is inferior to the security interest of another creditor, Borrower must fully disclose to Bank any and all prior security interests, and Bank must specifically approve any such security interest which will continue during the term of the Loan)

**Control Agreement:** A Control Agreement pertaining to Deposit Accounts, Letter-of-Credit Rights and/or Electronic Chattel Paper, as required in connection with the Security Agreement.

**UCC Financing Statements:** Copies of UCC Financing Statements duly filed in Borrower's or other owner's state of incorporation, organization or residence, and in all jurisdictions necessary, or in the opinion of Bank desirable, to perfect the security interests granted in the Security Agreement(s), and certified copies of Information Requests identifying all previous financing statements on record for Borrower or other debtor, as appropriate from all jurisdictions indicating that no security interest has previously been granted in any of the collateral described in the Security Agreement(s), unless prior approval has been given by Bank.

**Commitment Fee:** A commitment fee (or balance thereof) of $N/A payable to Bank on the date of execution of the Loan Documents

1

# CARTER BANK & TRUST

## LOAN AGREEMENT

**Negative Pledge and Transfer Agreements.**  Negative Pledge and Transfer Agreements in form and substance acceptable to Bank in its sole discretion executed by such entities as Bank shall require in its sole discretion (such entities, "Pledgors").

**Subordination Agreement.**  Subordination Agreement in form and substance acceptable to Bank in its sole discretion executed by such persons or entities as Bank shall require in its sole discretion (such persons or entities, "Subordinators").

**Release and Reaffirmation Agreement.**  Reaffirmation Agreement in form and substance acceptable to Bank in its sole discretion executed by the Subordinators.

**Corporate Resolutions:**  A Certificate of Corporate Resolutions signed by the corporate secretary or certified officer containing resolutions duly adopted by the Board of Directors of Borrower and by the boards of directors of such other corporate entities as Bank shall require in its sole discretion authorizing the execution, delivery, and performance of the Loan Documents on or in a form provided by or acceptable to Bank in its sole discretion.

**Articles of Incorporation:**  A copy of the Articles of Incorporation and all other charter documents of Borrower and such other corporate entities as Bank shall require in its sole discretion, all filed with and certified by the Secretary of State of the state/commonwealth of Borrower's or such entity's incorporation.

**By-Laws:**  A copy of the By-Laws of Borrower and such other corporate entities as Bank shall require in its sole discretion, certified by the Secretary of Borrower or such other entity as to their completeness and accuracy.

**Certificate of Incumbency:**  A certificate of the Secretary of Borrower and such other corporate entities as Bank shall require in its sole discretion, certifying the names and true signatures of the officers of Borrower and such other entities authorized to sign the Loan Documents.

**Certificate of Existence:**  A certification of the Secretary of State (or other government authority) of the state/commonwealth of Borrower's and such other entities as Bank shall require in its sole discretion incorporation or organization as to the existence or good standing of Borrower and such other entities as Bank shall require in its sole discretion and Borrower's or such entity's charter documents on file.

**Opinion of Counsel:**  An opinion of counsel for Borrower, Guarantors, Pledgors and Subordinators satisfactory to Bank and Bank's counsel.

**Guaranty:**  Guaranty Agreement(s) duly executed by Guarantor(s).

**Limited Liability Company Operating Agreement:**  A copy of Borrower's and such other entities as Bank shall require in its sole discretion Operating Agreement, certified by Borrower's or such entity's manager(s) and/or member(s), as applicable, as to its completeness and accuracy.

**Declaration of Limited Liability Company:**  A declaration or resolution from Borrower's and such other entities as Bank shall require in its sole discretion authorizing the execution, delivery, and performance of the Loan Documents on a form provided by or acceptable to Bank.

**Limited Liability Company Articles of Organization:**  A copy of the Articles of Organization and all other organizational documents of Borrower and such other entities as Bank shall require in its sole discretion, all filed with and certified by the Secretary of State of the state/commonwealth of Borrower's organization.

**Additional Documents:**  Receipt by Bank of other approvals, opinions, or documents as Bank may reasonably request.

## Section 2 Representations and Warranties

Borrower represents and warrants to Bank that:

2.01.  **Financial Statements.**  The balance sheet of Borrower and its subsidiaries, if any, and the related Statements of Income and Retained Earnings of Borrower and its subsidiaries, the accompanying footnotes together with the accountant's opinion thereon, and all other financial information previously furnished to Bank, accurately, completely and fairly reflect the financial condition of Borrower and its subsidiaries as of the dates thereof, including all contingent liabilities of every type, and the financial condition of Borrower and its subsidiaries as stated therein has not changed materially and adversely since the date thereof.

2.02.  **Name, Capacity and Standing.**  Borrower's exact legal name is correctly stated in the initial paragraph of the Agreement. If Borrower and any of its subsidiaries, if any, is a corporation, general partnership, limited partnership, limited liability partnership, or limited liability company, it is duly organized and validly existing under the laws of its respective state of incorporation or organization; that it and/or its subsidiaries, if any, are duly qualified and in good standing in every other state in which the nature of their business shall require such qualification, and are each duly authorized by their board of directors, general partners or member/manager(s), respectively, to enter into and perform the obligations under the Loan Documents.

2.03.  **No Violation of Other Agreements.**  The execution and delivery of the Loan Documents, and the performance by Borrower, Pledgors, Guarantors or Subordinators thereunder will not violate any provision, as applicable, of its articles of incorporation, by-laws, articles of organization, operating agreement, agreement of partnership, limited partnership or limited liability partnership, or, of any law, other agreement, indenture, note, or other instrument binding upon any Borrower, any Pledgor, any Guarantor or any Subordinator, or give cause for the acceleration of any of the respective obligations of any Borrower or any Guarantor.

2.04.  **Authority.**  The execution, delivery and performance of this Agreement, the Note and the other Loan Documents have been duly authorized by all necessary and proper corporate or equivalent action. All authority from and approval by any federal, state, or local governmental body, commission or agency necessary to the making, validity, or enforceability of this Agreement and the other Loan Documents has been obtained.

2.05.  **Asset Ownership.**  Borrower, each Guarantor and each Pledgor has good and marketable title to all of the properties and assets reflected on the balance sheets and financial statements furnished to Bank, and all such properties and assets are free and clear of mortgages, deeds of trust, pledges, liens, security interests, and all other encumbrances except as otherwise disclosed by such financial statements or otherwise in writing.

2.06.  **Discharge of Liens and Taxes.**  Borrower and its subsidiaries, if any, and each Guarantor have filed, paid, and/or discharged all taxes or other claims which may become a lien on any of their respective properties or assets, excepting to the extent that such items are being appropriately contested in good faith and for which an adequate reserve (in an amount acceptable to Bank) for the payment thereof is being maintained.

2.07.  **Regulations U and X.**  None of the Loan proceeds shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in violation of the provisions of Regulation U and Regulation X of the Board of Governors of the Federal Reserve System.

# CARTER BANK & TRUST
## LOAN AGREEMENT

2.08. **ERISA.** Each employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), maintained by Borrower or by any subsidiary of Borrower or any corporate Guarantor meets, as of the date hereof, the minimum funding standards of Section 302 of ERISA, all applicable requirements of ERISA and of the Internal Revenue Code of 1986, as amended, and no "Reportable Event" nor "Prohibited Transaction" (as defined by ERISA) has occurred with respect to any such plan.

2.09. **Litigation.** There is no claim, action, suit or proceeding pending, threatened or reasonably anticipated before any court, commission, administrative agency, whether State or Federal, or arbitration which will materially adversely affect the financial condition, operations, properties, or business of Borrower, its subsidiaries, if any, any Guarantor, or any Pledgor, or affect the ability of Borrower, any Guarantor, any Pledgor or any Subordinator to perform its obligations under the Loan Documents.

2.10. **Other Agreements.** The representations and warranties made by Borrower, each Guarantor, each Pledgor and each Subordinator to Bank in the other Loan Documents are true and correct in all respects on the date hereof

2.11. **Binding and Enforceable.** The Loan Documents, when executed, shall constitute valid and binding obligations of Borrower, all Guarantors, all Pledgors and all Subordinators, respectively, and are enforceable in accordance with their terms, except as may be limited by bankruptcy, insolvency, moratorium, or similar laws affecting creditors' rights generally.

2.12. **Commercial Purpose.** The Loan is not a "consumer transaction", as defined in the Virginia or West Virginia Uniform Commercial Code, and none of the collateral was or will be purchased or held primarily for personal, family or household purposes.

2.13. **Foreign Assets Control Regulations.** Borrower, each Guarantor, each Pledgor and each Subordinator is not in violation of (i) the Trading with the Enemy Act (50 U.S.C. App. Sec. 1 et seq), as amended, (ii) any of the foreign assets control regulations issued by the Office of Foreign Assets Control of the United States Treasury Department ("OFAC") and any executive order related thereto, or (iii) the U.S. Patriot Act, and further that it (a) is not subject to sanctions administered by OFAC or the U.S. Department of State and (b) has not engaged in any dealing or transactions with, or is otherwise associated with, any person subject to such sanctions.

2.14. **Survival of Representations and Warranties.** Borrower agrees that in extending loan advances, Bank is relying on all representations, warranties, and covenants made by Borrower, each Guarantor, each Pledgor and each Subordinator in this Agreement or in any certificate or other instrument delivered by Borrower, each Guarantor, each Pledgor and each Subordinator to Bank under this Agreement or the other Loan Documents. Borrower further agrees that regardless of any investigation made by Bank, all such representations, warranties and covenants will survive the making of each advance under the Loan and delivery to Bank of the Loan Documents, shall be continuing in nature, shall be deemed made and reaffirmed by Borrower at the time each advance is made, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided herein, whichever is the last to occur.

## Section 3 Affirmative Covenants

Borrower covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations owed under the Loan Documents, Borrower shall:

3.01. **Maintain Existence and Current Legal Form of Business.** (a) Maintain its existence and good standing in the state of its incorporation or organization, (b) maintain its current legal form of business indicated above, and, (c), as applicable, qualify and remain qualified as a foreign corporation, general partnership, limited partnership, limited liability partnership or limited liability company in each jurisdiction in which such qualification is required.

3.02. **Maintain Records.** Keep adequate records and books of account, in which complete entries will be made in accordance with GAAP consistently applied, reflecting all financial transactions of Borrower. If Borrower now or hereafter maintains any business records in the possession of a third party, at the request of Bank, Borrower shall notify such third party to permit Bank free access to such records at all reasonable times and to provide Bank with copies of any records it may request, all at Borrower's expense.

3.03. **Maintain Properties.** Maintain, keep, and preserve all of its properties (tangible and intangible) including the collateral necessary or useful in the conduct of its business in good working order and condition, ordinary wear and tear excepted.

3.04. **Conduct of Business.** Continue to engage in an efficient, prudent, and economical manner in a business of the same general type as now conducted.

3.05. **Maintain Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Bank may require with respect to Borrower's properties and operations, in form, amounts, and coverages and with insurance companies acceptable to Bank. Borrower, upon request of Bank, will deliver to Bank from time to time the policies or certificates of insurance in form satisfactory to Bank, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Bank. Each insurance policy also shall include an endorsement (NY long form) providing that coverage in favor of Bank will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering the Collateral, Borrower shall provide Bank with such Bank's loss payable or other endorsements as Bank may require, and shall furnish to Bank upon request, reports on each existing insurance policy showing such information as Bank may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties and assets insured; (5) the current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Bank (however not more often than annually), Bank may require that an independent appraiser satisfactory to Bank determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower. Should any or all of the Collateral become uninsured for any reason, Borrower shall have ten (10) days after receipt of notice from Bank to obtain replacement insurance on the Collateral satisfactory to Bank and, should Borrower fail to obtain such insurance, Bank may purchase insurance covering the Collateral, the cost of which shall be paid by Borrower on demand.

3.06. **Comply With Laws.** Comply in all respects with all applicable laws, rules, regulations, ordinances and orders applicable to each Borrower's business, operations and properties including without limitation, the Americans with Disabilities Act, paying before the delinquency thereof all taxes, assessments, and governmental charges imposed upon it or upon its income, profits or property, and all Environmental Laws.

3.07. **Right of Inspection.** Permit the officers and authorized agents of Bank, at any reasonable time or times in Bank's sole discretion to visit the properties of any Borrower, to discuss such matters with any officers, directors, managers, members or partners, limited or general, of such Borrower, and with Borrower's independent accountant as Bank deems necessary and proper;

# CARTER BANK & TRUST
## LOAN AGREEMENT

and to make copies of any Borrower's books and records. Borrower agrees to pay all collateral audit fees and servicing fees associated with each collateral or other audit by Bank and all servicing fees for the Loan.

3.08. **Reporting Requirements.** Furnish to Bank:

**Monthly Financial Reports:** Monthly within thirty (30) days of the end of each month end, the Borrower's internally prepared balance sheet and income statement for the period ended, prepared in accordance with generally accepted accounting principles, applied on a consistent basis, and certified as correct to the best knowledge and belief by the Borrower's chief financial officer or other officer or person acceptable to the Bank.

**Annual Reports:** Annually, within two hundred forty (240) days of the end of each fiscal year, the Borrower's audited consolidated balance sheet, income statement and statement of cash flows for the year ended, prepared in accordance with generally accepted accounting principles, applied on a consistent basis.

**Accounts Receivable, Payable and Other Reports.** Monthly within fifteen (15) days of the end of each month, copies of each contract that creates or will create an account, and accounts receivable aging and payable reports, inventory valuation reports, and such other and further reports as Bank shall require, each in a form satisfactory and with such frequency as Bank shall require in its sole discretion.

**Tax Returns:** State and Federal tax returns for the Borrower when each such return is filed, and such additional information and statements (including, without limitation, lists of assets and liabilities, aging of receivables and payables, inventory schedules, budgets, forecasts, and other reports with respect to the Borrower's financial condition and business operations) as the Bank may request from time to time in its sole discretion.

**Officer Compliance Certificate:** An Officer's Compliance Certificate ("OCC") with respect to Borrower's compliance with the Affirmative, Financial and Negative Covenants set forth in Sections 3, 5, and 6 of this Agreement. The OCC will be in form acceptable to Bank, properly executed by an authorized officer of Borrower, including calculations to support all Financial Covenants, and set forth any corrective action taken or proposed to be taken with respect to any Default or Event of Default under such covenants. The OCC is due within the same number of days required for the delivery of Financial Statements for each fiscal quarter's end and for the fiscal year end. The OCC furnished by Borrower for the fiscal year end shall include a reconciliation of all adjustments, if any, by Borrower to the fourth quarter's certification.

**Notice of Litigation:** Promptly after the receipt by Borrower, by any Guarantor, by any Pledgor or by any Subordinator of which Borrower has knowledge, notice of any complaint, action, suit or proceeding before any court or administrative agency or body of any type which, if determined adversely, could have a material adverse effect on the financial condition, properties, or operations of any Borrower, any Guarantor, any Pledgor or any Subordinator, as applicable.

**Notice of Default:** Promptly upon discovery or knowledge thereof, notice of the existence of any default or event of default under this Agreement or any other Loan Documents.

**USA Patriot Act Verification Information:** Information or documentation, including but not limited to the legal name, address, tax identification number, driver's license, and date of birth (if Borrower is an individual) of Borrower sufficient for Bank to verify the identity of Borrower in accordance with the USA Patriot Act. Borrower shall notify Bank promptly of any change in such information.

**Other Information:** Such other information as Bank may from time to time reasonably request.

3.09. **Appraisal(s).** If required by Bank, furnish at Borrower's expense an independent appraisal or update by an appraiser satisfactory to Bank of the market value of any real or personal property collateral securing the Loan.

3.10. **Affirmative Covenants from other Loan Documents.** All affirmative covenants contained in any other Loan Documents are hereby incorporated by reference herein.

3.11. **Management.** Maintain executive and management personnel with substantially the same qualifications and experience as the current executive and management personnel and promptly provide written notice to Bank of any change in such executive or management personnel.

## Section 4 Guarantors' Covenants

Each Guarantor covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations owed under the Loan Documents, Guarantor shall:

4.01. **Maintain Properties; Liquid Assets.** Guarantors shall not, without the prior written consent of Bank, sell, transfer or otherwise dispose of any of more than 30% of his/her personal Liquid Assets of any kind to any trust, entity, spouse, child, sibling, or any unrelated third party. "Liquid Assets" shall mean all publicly traded securities and/or securities accounts, bonds and mutual funds, any certificates of deposit, money market accounts, U.S. Treasuries and other federal agency instruments, hedge funds, derivative accounts and other investment instruments which are not pledged to Bank as security for any obligation to Bank.

4.02. **Comply With Laws.** Comply in all respects with all applicable laws, rules, regulations, and orders including, without limitation the Americans with Disabilities Act, paying before the delinquency thereof all taxes, assessments, and governmental charges imposed or assessed upon Guarantor's income, profits and properties, and with all Environmental Laws.

4.03. **Reporting Requirements.** Furnish to Bank:

**Guarantor Financial Reports:** Each of the Guarantors shall submit financial statements to the Bank on the Bank's form on an annual basis by January 31 of each year and shall submit copies of its State and Federal tax returns to the Bank when each such return is filed. The Bank shall provide such form at least (30) days in advance of any required submission.

**Notice of Litigation:** Promptly after the receipt by Guarantor, or by Borrower of which Guarantor has knowledge, notice of any claim, action, suit, and proceeding before any court or governmental agency of any type which, if determined adversely, could have a material adverse effect on the financial condition, properties, or operations of Guarantors or Borrower, as appropriate.

4.04. **Transfer of Ownership.** Not, without the prior written consent of Bank: If Guarantor is a corporation, (a) issue, transfer or sell any new class of stock, or (b) issue, transfer or sell, in the aggregate, from its treasury stock and/or currently authorized but unissued shares of any class of partnership, limited partnership, limited liability partnership or limited liability company, issue, transfer or sell any interest in Guarantor.

4.05. **Tax Returns:** As soon as available each year, furnish complete copies of all federal tax returns (including all Schedules thereto) filed by Guarantor.

4.06. **Other Information:** Furnish such other information as Bank may from time to time reasonably request.

# CARTER BANK & TRUST
## LOAN AGREEMENT

4.07. **Representations and Warranties.** Each Guarantor represents and warrants to Bank that: (i) if Guarantor is a corporation, partnership, limited partnership, limited liability partnership, limited liability limited partnership, or limited liability company, it is duly organized and validly existing under the laws of its respective state of incorporation or organization; that it and/or its subsidiaries, if any, are duly qualified and in good standing in every other state in which the nature of their business shall require such qualification, and are each duly authorized by their board of directors, general partners or member/manager(s), respectively, to enter into and perform the obligations under its Guaranty Agreement; (ii) all financial statements and related information furnished to Bank in connection with the Loan are true, correct and complete in all material respects, accurately represent the financial condition of such Guarantor as of the date thereof, and no material adverse change in its financial condition has occurred since the date thereof; (iii) it has full knowledge of the financial condition and business operations of Borrower; (iv) there is no litigation pending or, to the knowledge of such Guarantor, threatened which if adversely decided would materially impair its ability to honor and pay its obligations under its Guaranty Agreement; and (v) it is not in violation of (1) the Trading with the Enemy Act (50 U.S.C. App. Sec. 1 et seq), as amended, (2) any of the foreign assets control regulations issued by OFAC and any executive order related thereto, or (3) the U.S. Patriot Act, and further that it (a) is not subject to sanctions administered by OFAC or the U.S. Department of State or (b) has not engaged in any dealing or transactions with, or is otherwise associated with, any person subject to such sanctions.

**Section 5 Financial Covenants:**  N/A

**Section 6 Negative Covenants**

Each Borrower covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations under the Loan Documents, such Borrower shall not, without the prior written consent of Bank:

6.01. **Liens.** Create, incur, assume, or suffer to exist any lien or security interest upon or in Collateral, any of Borrower's other properties, or the properties of any Pledgor securing payment of the Loan, whether now owned or hereafter acquired, except Permitted Liens.

6.02. **Debt.** Incur, assume, or suffer to exist any debt, except:
  (a) Debt to Bank;
  (b) Debt outstanding on the date hereof and shown on the most recent financial statements submitted to Bank;
  (c) Accounts payable to trade creditors incurred in the ordinary course of business;
  (d) Debt secured by purchase money security interests only in the property or assets acquired; and
  (e) Debt in excess of $1,000,000 in the aggregate in any fiscal year with prior written notice to Bank.

6.03. **Capital Expenditures.** Expenditures for fixed assets in any fiscal year shall not exceed in the aggregate the sum of $5,000,000 without prior written notice to Bank.

6.04. **Change of Legal Form of Business or Nature of Business; Purchase of Assets.** Change Borrower's name or the legal form of Borrower's business as shown above, whether by merger, consolidation, conversion or otherwise; Borrower shall not purchase all or substantially all of the assets or business of any Person, or enter into any partnership with a third party; Borrower shall not engage in any business activities materially different from those in which Borrower is presently engaged; and Borrower shall not cease operations, liquidate or dissolve.

6.05. **Leases.** Create, incur, assume, or suffer to exist any leases, except:
  (a) Leases outstanding on the date hereof and showing on the most recent financial statement submitted to Bank;
  (b) Operating Leases for machinery and equipment which do not in the aggregate require payments in excess of $ N/A in any fiscal year of Borrower.

6.06. **Dividends or Distributions; Acquisition of Capital Stock or Other Ownership Interests.** Declare or pay any dividends or distributions of any kind, or purchase or redeem, retire, or otherwise acquire any of Borrower's capital stock or other ownership interests, now or hereafter outstanding.

6.07. **Salaries.** Salaries and any other cash compensation to owners/officers/partners/managers shall be limited as follows: N/A

6 08. **Guaranties.** Assume, guarantee, endorse, or otherwise be or become directly or contingently liable for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

6.09 **Loans to Insiders and Affiliates.** Make any loans to directors, officers, partners, members, shareholders, subsidiaries, affiliates, any Guarantors or any Subordinators.

6 10. **Disposition of Assets.** Sell, lease, or otherwise dispose of any of its assets or properties except in the ordinary and usual course of its business.

6.11. **Transfer of Ownership.** (a) issue, transfer or sell any new class of stock, (b) issue, transfer or sell, in the aggregate more than 10% of the total number of shares from its treasury stock and/or currently authorized but unissued shares of any class of stock, as of the date of this Agreement, or (c) permit any shareholder to transfer or sell more than 10% of its issued and outstanding shares in Borrower as of the date of this Agreement.

6.12 **Negative Covenants from Loan Documents.** All negative covenants contained in any Loan Document are hereby incorporated by reference herein.

6.13. **Transactions with Affiliates.** Directly or indirectly, sell, lease, transfer, or otherwise dispose of any of its property to, or purchase any property from, or enter into any contract, agreement, understanding, loan, advance, guarantee or transaction (including the rendering of services) with or for the benefit of, any Affiliate (each of the foregoing, an "Affiliate Transaction"), unless (a) such Affiliate Transaction or series of Affiliate Transactions is (i) in the best interest of Borrower and (ii) on terms that are no less favorable to Borrower than those what would have been obtained in a comparable arm's-length transaction by Borrower with a person that is not an Affiliate. For purposes of this section, "Affiliate" shall mean any Borrower, any relative of any Borrower, of any Guarantor, or of an entity which is a parent, subsidiary or any person or entity controlled by, or under the common control of, any Borrower, any Guarantor, Borrower's parent or subsidiary, or Guarantor's parent or subsidiary.

**Section 7 Hazardous Substances and Compliance with Environmental Laws**

7.01. **Investigation.** Borrower hereby certifies that it has exercised due diligence to ascertain whether its real property, including without limitation the Mortgaged Property, is or has been affected by the presence of asbestos, oil, petroleum or other hydrocarbons, urea formaldehyde, PCBs, hazardous or nuclear waste, toxic chemicals and substances, or other hazardous materials, as defined in applicable Environmental Laws (collectively, "Hazardous Substances"). Borrower represents and

# CARTER BANK & TRUST
## LOAN AGREEMENT

warrants that there are no Hazardous Substances contaminating its real property, nor have any such materials been released on or stored on or improperly disposed of on its real property during its ownership, occupancy or operation thereof except in strict compliance with Environmental Laws and any applicable permits. Borrower hereby agrees that, except in strict compliance with applicable Environmental Laws, it shall not knowingly permit any release, storage or contamination of its properties as long as any indebtedness or obligations to Bank under the Loan Documents remains unpaid or unfulfilled. In addition, Borrower does not have or use any underground storage tanks on any of its real property, including the Mortgaged Property, which are not registered with the appropriate Federal and/or State agencies and which are not properly equipped and maintained in accordance with all Environmental Laws. If requested by Bank, Borrower shall provide Bank with all necessary and reasonable assistance required for purposes of determining the existence of Hazardous Substances on the Mortgaged Property, including allowing Bank access to the Mortgaged Property, to Borrower's employees having knowledge of, and to its files and records within Borrower's control relating to the existence, storage, or release of Hazardous Substances on the Mortgaged Property.

7.02.   **Compliance.**  Borrower agrees to comply with all applicable Environmental Laws, including, without limitation, all those relating to Hazardous Substances.  Borrower further agrees to provide Bank, and all appropriate Federal and State authorities, with immediate notice in writing of any release of Hazardous Substances on the Mortgaged Property and to pursue diligently to completion all appropriate and/or required remedial action in the event of such release. In addition, Borrower shall within fifteen (15) days after receipt thereof, a complete copy of any notice, summons, lien, citation, letter or other communication from any governmental agency concerning any action or omission of Borrower in connection with any environmental activity or issue.

7.03.   **Remedial Action; Indemnity.**  Bank shall have the right, but not the obligation, to undertake all or any part of such remedial action in the event of a release of Hazardous Substances on the Mortgaged Property and to add any expenditures so made to the principal indebtedness secured by the Deed(s) of Trust or other security instruments.  Borrower agrees to indemnify and hold Bank harmless from any and all loss or liability arising out of any violation of the representations, covenants, and obligations contained in this Section 7, or resulting from the recording of the Deed(s) of Trust or other security instruments. In addition, Bank shall have all rights and remedies provided in other Loan Documents with respect to Hazardous Substances and violations of Environmental Laws.

## Section 8 Events of Default

The following shall be "Events of Default" by Borrower or any Guarantor:

8.01.   Should Borrower fail to make payment of any installment of principal or interest on the Note when due.

8.02.   Should any representation or warranty made in the Loan Documents prove to be false or misleading in any material respect when made.

8.03.   Should any report, certificate, financial statement, or other document furnished prior to the execution of or pursuant to the terms of this Agreement prove to be false, incomplete or misleading in any material respect when delivered or made.

8.04.   Should Borrower or any Guarantor default in the payment or performance of any other loan, line of credit, indenture, mortgage instrument, security agreement or other agreement with Bank or with another creditor or Person that may materially affect any Borrower's or any Guarantor's property or ability to perform their respective obligations under this Agreement or the other Loan Documents.

8.05.   Should any Borrower, any Guarantor, any Pledgor or any Subordinator breach any covenant, condition, or agreement made under any of the Loan Documents to which it is a party.

8.06.   Should a custodian be appointed for or take possession of any or all of the assets of any Borrower or any Guarantor, should any Borrower or any Guarantor either voluntarily or involuntarily become subject to any insolvency proceeding, including becoming a debtor under the United States Bankruptcy Code, any proceeding to dissolve any Borrower or any Guarantor, any proceeding to have a receiver appointed, or should any Borrower or any Guarantor make an assignment for the benefit of creditors; or should there be an attachment, execution, or other judicial seizure of all or any portion of any Borrower's or any Guarantor's assets, including an action or proceeding to seize any Collateral or any funds on deposit with Bank, and such seizure is not discharged within 30 days.

8.07.   Should final judgment for the payment of money be rendered against Borrower or any Guarantor which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed.

8.08.   Upon the death of, or termination of existence of, or dissolution of, any Borrower, Pledgor or Guarantor.

8.09.   Should Bank determine that any Borrower or any Guarantor has suffered a material adverse change in its financial condition or its business operations.

8.10.   Should any lien or security interest in the Collateral terminate, fail for any reason to have the priority agreed to by Bank on the date granted, or become unenforceable, unperfected or invalid for any reason, should the Collateral fail to be insured as required herein, or should the market value of the Mortgaged Property or other Collateral decline below the value anticipated or required in connection with the Loan.

8.11.   Should Borrower commit a default under any Hedge Agreement, as defined in Section 10.01.

8.12.   Should Borrower assert for any reason that this Agreement or any provision hereof or any other Loan Document is invalid or unenforceable, or should any Guarantor terminate its Guaranty or otherwise assert that this Guaranty is invalid or unenforceable.

8.13.   Should any Borrower, Guarantor or any officer, director or owner of 20% or more of the outstanding ownership interests of any Borrower or Guarantor, be indicted for a felony offense under state or federal law, including without limitation any violation of any anti-money laundering, bribery, OFAC or bank fraud, or should any Borrower or Guarantor employ an executive officer or manager, or elect a director, who has been convicted of any such felony offense, or should any Person become an owner of 20% or more of the outstanding ownership interests of any Borrower or Guarantor who has been indicted or convicted of any such felony offense.

## Section 9 Remedies Upon Default

Upon the occurrence of any of the above Events of Default, and subject to any applicable notice and cure periods, if any, Bank may at any time thereafter, at its option, take any or all of the following actions, at the same or at different times:

9.01.   Demand and declare the outstanding balance of the Note to be immediately due and payable, both as to principal and interest, late fees, and all other amounts/expenditures without presentment, demand, protest, or further notice of any kind, all of

6

# CARTER BANK & TRUST
## LOAN AGREEMENT

which are hereby expressly waived by Borrower and each Guarantor, and such balance shall accrue interest at the Default Rate as provided herein until paid in full;

9.02.   Require any Borrower or any Guarantor to pledge additional collateral to Bank from such Borrower's or Guarantor's assets and properties to secure the Loan, the acceptability and sufficiency of such collateral to be determined in Bank's sole discretion;

9.03.   Take immediate possession of and/or foreclose upon any or all Collateral which may be granted to Bank as security for the indebtedness and obligations of any Borrower or any Guarantor under the Loan Documents;

9.04.   Exercise any and all other rights and remedies available to Bank under the terms of the Loan Documents and applicable law, including the Virginia Uniform Commercial Code;

9.05.   Any obligation of Bank to advance funds to a Borrower or any other Person under the terms of under the Loan Documents and all other obligations, if any, of Bank under the Loan Documents shall immediately cease and terminate unless and until Bank shall reinstate such obligation in writing.

## Section 10 Miscellaneous Provisions

10.01.   **Definitions.**

"**Collateral**" shall mean all property and assets granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, security deed, deed of trust, assignment, pledge, crop pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

"**Environmental Laws**" shall mean all federal and state laws and regulations which affect or may affect the Mortgaged Property, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. Sections 9601 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. Sections 6901 et seq.), the Federal Water Pollution Control Act (33 U.S.C. Sections 1251 et seq.), the Clean Air Act (42 U.S.C. Section 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. Section 2601 et seq.), and all applicable environmental laws and regulations of the State of West Virginia and the Commonwealth of Virginia, as such laws or regulations have been amended or may be amended.

"**Loan Documents**" shall mean this Agreement including any Schedule attached hereto, the Note(s), the Deeds of Trust, the Mortgage(s), the Security Deed(s), the Security Agreement(s), the Assignment(s) of Leases and Rents, the Negative Pledge Agreements, the Subordination Agreement, the Release and Reaffirmation Agreement, all UCC Financing Statements, the Guaranty Agreement(s), and all other documents, certificates, and instruments executed in connection therewith, and all renewals, extensions, modifications, substitutions, and restatements thereof and therefore.

"**Permitted Liens**" shall mean (1) liens and security interest securing any indebtedness owed by any Borrower to Bank; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith and for which appropriate reserves are maintained; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under Section 6.02; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by Bank in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

"**Person**" shall mean an individual, partnership, corporation, trust, unincorporated organization, limited liability company, limited liability partnership, association, joint venture, or a government agency or political subdivision thereof.

"**GAAP**" shall mean generally accepted accounting principles as established by the Financial Accounting Standards Board or the American Institute of Certified Public Accountants, as amended and supplemented from time to time.

10.02. **Non-impairment.**   If any one or more provisions contained in the Loan Documents shall be held invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained therein shall not in any way be affected or impaired thereby and shall otherwise remain in full force and effect.

10.03. **Applicable Law, Jurisdiction and Venue.**   The Loan Documents shall be construed in accordance with and governed by the laws of the Commonwealth of Virginia and shall bind each Borrower's heirs, personal representatives, successors and assigns and inure to the benefit of Bank's successors and assigns.   Any litigation arising out of any of the Loan Documents shall have as its venue the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western Division of Virginia.

10.04. **Waiver.**   Neither the failure nor any delay on the part of Bank in exercising any right, power or privilege granted in the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any other right, power, or privilege which may be provided by law.   A waiver by Bank of a provision of this Agreement shall not prejudice or constitute a waiver of Bank's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.   No prior waiver by Bank, nor any course of dealing between Bank and Borrower, or between Bank and any Guarantor, shall constitute a waiver of any of Bank's rights or of any of Borrower's or any Guarantor's obligations as to any future transaction.   Whenever the consent of Bank is required under this Agreement, the granting of such consent by Bank in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Bank.

10.05. **Modification.**   No modification, amendment, or waiver of any provision of any of the Loan Documents shall be effective unless in writing and signed by Borrower and Bank.

10.06 **Payment Amount Adjustment.**   In the event that any Loan referenced herein has a fixed payment with a variable (floating) interest rate and, as a result of an increase in such interest rate, accruals of interest are not fully paid, Bank, in its sole discretion, may at any time adjust Borrower's fixed payment amount(s) to prevent the amount of interest accrued in a given period exceeding the periodic payment amount or to cause the affected Loan to be repaid within the same period of time as originally agreed upon.

10.07 **Stamps and Other Fees.** Borrower shall pay all federal or state stamp and recording taxes, or other fees or charges, if any are payable or are determined to be payable by reason of the execution, delivery, or issuance of the Loan Documents or any security granted to Bank; and Borrower and Guarantors agree to indemnify and hold harmless Bank against any and all liability in respect thereof. Borrower shall pay all fees incurred by Bank for the appraisal of the Mortgaged Property obtained at any time after the date of this Agreement which Bank requires pursuant to federal or state regulations, in connection with any event of default under the Loan Documents or restructure of the Loan, any material damage to or condemnation of the Mortgaged

# CARTER BANK & TRUST
## LOAN AGREEMENT

Property, or in connection with any foreclosure or forbearance. Such appraisal fees shall be payable on demand, shall accrue interest at the default rate set forth in the Note(s) following demand and shall be secured by the security documents executed by Borrower or Pledgor.

10.08. **Attorneys' Fees.** In the event Borrower, any Guarantor, any Pledgor or any Subordinator shall default in any of its obligations hereunder or under any Loan Document and Bank finds it necessary to employ an attorney to assist in the enforcement or collection of the indebtedness of Borrower to Bank, to enforce the terms and provisions of the Loan Documents, to modify the Loan Documents, or in the event Bank voluntarily or otherwise should become a party to any suit or legal proceeding (including a proceeding conducted under the Bankruptcy Code), Borrower and Guarantors, jointly and severally, agree to pay all reasonable attorneys' fees incurred by Bank and all related costs of collection or enforcement that may be incurred by Bank. Borrower and Guarantor shall be liable for such attorneys' fees and costs whether or not any suit or proceeding is actually commenced.

10.09. **Bank Making Required Payments.** In the event Borrower shall fail to maintain insurance, pay taxes or assessments, costs and expenses which Borrower is, under any of the terms hereof or of any Loan Documents, required to pay, or fail to keep any of the properties and assets constituting collateral free from new security interests, liens, or encumbrances, except as permitted herein, Bank may at its election make expenditures for any or all such purposes and the amounts expended together with interest thereon at the Default Rate, shall become immediately due and payable to Bank, and shall have benefit of and be secured by the collateral; provided, however, Bank shall be under no duty or obligation to make any such payments or expenditures.

10.10. **Right of Offset.** Any indebtedness owing from Bank to Borrower may be set off and applied by Bank on any indebtedness or liability of Borrower to Bank at any time and from time to time after maturity, whether by acceleration or otherwise, and without demand or notice to Borrower.

10.11. **UCC Authorization.** Borrower authorizes Bank to file such UCC Financing Statements describing the collateral in any location deemed necessary and appropriate by Bank.

10.12. **Modification and Renewal Fees.** Bank may, at its option, charge any fees for modification, renewal, extension, or restatement of any terms of the Note(s) and the other Loan Documents not prohibited by applicable law.

10.13. **Conflicting Provisions.** If provisions of this Agreement shall conflict with any terms or provisions of any of the Note(s), security document(s) or any schedule attached hereto, the provisions of such Note, security documents or any Schedule attached hereto, as appropriate, shall take priority over any provisions in this Agreement.

10.14. **Notices.** Any notice permitted or required by the provisions of this Agreement shall be deemed to have been given when delivered in writing to Bank at 1300 Kings Mountain Road, Martinsville, VA 24112, Attention: Phyllis Karavatakis, and to the Borrower at its offices at 302 S. Jefferson St., Roanoke, VA 24011 when sent by certified mail and return receipt requested or by recognized courier. Unless otherwise required by law, if there is more than one Borrower, any notice given by Bank to any Borrower shall be deemed to be notice given to all Borrowers.

10.15. **Consent to Jurisdiction.** Borrower and Guarantors hereby irrevocably agree that any legal action or proceeding arising out of or relating to this Agreement or any of the Loan Documents shall be instituted in the Circuit Court of the City of Martinsville, Virginia. Borrower consents to the jurisdiction of such court and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Borrower may now or hereafter have in any such legal action or proceedings

10.16. **Counterparts.** This Agreement may be executed by one or more parties on any number of separate counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument.

10.17. **Entire Agreement.** The Loan Documents embody the entire agreement between Borrower and Bank with respect to the Loan, and there are no oral or parole agreements existing between Bank and Borrower with respect to the Loan which are not expressly set forth in the Loan Documents.

10.18. **Indemnity.** Borrower and Guarantors hereby jointly and severally agree to indemnify and hold Bank, its affiliates, their successors and assigns and their respective directors, officers, employees and shareholders harmless from and against, any loss, damage, lawsuit, proceeding, judgment, cost, penalty, expense (including all reasonable in-house and outside attorneys' fees, whether or not suit is brought, accountants' fees and/or consultants' fees) or liability whatsoever arising from or otherwise relating to the closing, disbursement, administration or repayment of the Loan, including without limitation: (i) Borrower's or Guarantors' failure to comply with the terms of this Agreement and the other Loan Documents (ii) the breach of any representation or warranty made to Bank in this Agreement or in any other Loan Documents now or hereafter executed in connection with the Loan; (iii) the violation of any covenant or agreement contained in this Agreement or any of the other Loan Documents; provided, however, that the foregoing indemnification shall not be deemed to cover any such loss, damage, lawsuit, proceeding, cost, expense or liability which is finally determined by a court of competent jurisdiction to result solely from Bank's gross negligence or willful misconduct. This indemnity obligation shall survive the payment of the Loan and the termination of this Agreement.

10.19. **WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND BANK, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER AND GUARANTORS AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT BANK MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER AND GUARANTORS TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BANK TO MAKE THE LOAN AND ENTER INTO THIS AGREEMENT. FURTHER, THE UNDERSIGNED HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT BANK WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION. BORROWER AND GUARANTORS ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS PARAGRAPH, THAT THEY FULLY UNDERSTAND ITS TERMS, CONTENT AND EFFECT, AND THAT THEY VOLUNTARILY AND KNOWINGLY AGREES TO THE TERMS OF THIS PARAGRAPH.**

10.20. **Required Information for New Loan.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Bank to obtain, verify and record information that identifies each person or entity obtaining a loan including Borrower's legal name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will

# CARTER BANK & TRUST

## LOAN AGREEMENT

constitute a default under this instrument or agreement. In addition, no Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

10.21. **Correction of Errors; Further Assurances.** Borrower will and will cause any Pledgor, any Subordinator and each Guarantor to cooperate with Bank to correct any errors in this Agreement, the Note or other Loan Documents and shall execute such documentation as is necessary to do so. In addition, Borrower, each Pledgor, each Subordinator and each Guarantor shall cooperate fully with Bank and execute such further instruments, documents and agreements, and shall do any and all such further acts, as may be reasonably requested by Bank to better evidence and reflect the transactions described herein and contemplated hereby and to carry into effect the intent purposes of this Agreement, the Note and the other Loan Documents, including without limitation the granting and/or perfecting of a security interest in the Collateral.

10.22. **Consent to Loan Participation.** Borrower and each Guarantor agrees and consents to Bank's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Bank. Bank may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Bank may have about Borrower, any Guarantor, any Pledgor, any Subordinator or about any other matter relating to the Loan, and Borrower and each Guarantor hereby waivers any rights to privacy Borrower or any Guarantor may have with respect to such matters. Borrower and each Guarantor hereby waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower and each Guarantor agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement(s) governing the sale of such participation interests. Borrower and each Guarantor waives all rights of offset or counterclaim, whether now existing or hereafter arising, against Bank or against any purchaser of such a participation interest and unconditionally agrees that either Bank or such purchaser may enforce Borrower's and each Guarantor's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower and each Guarantor agrees that the purchaser of any such participation interest may enforce its interest irrespective of any personal claims or defenses that Borrower or any Guarantor may have against Bank. Any purchaser of a participation interest in the Loan may exercise a right of setoff against Borrower or any Guarantor to the same extent as Bank has such right.

10.23. **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

10.24. **Construction.** Each party hereto hereby acknowledges that all parties hereto participated equally in the drafting and/or negotiation of this Agreement and that, accordingly, no court when interpreting this Agreement shall construe it more stringently against one party than the other.

10.25. **Time of the Essence.** Time is of the essence in the performance of this Agreement and the other Loan Documents.

IN WITNESS WHEREOF, the Bank, Borrower and Guarantors have caused this Agreement to be duly executed under seal all as of the date first above written.

Borrower:

WITNESS:

Print Name: CHARLES HENTHORN

**Greenbrier Hotel Corporation**
Name of Corporation

By: _____ (SEAL)

Name: Jillean L. Justice
Title: President

WITNESS:

Print Name: CHARLES HENTHORN

**Justice Family Group, LLC**
Name of Limited Liability Company

By: _____ (SEAL)

Name: Jillean L. Justice
Title: President

WITNESS:

Print Name: CHARLES HENTHORN

**Players Club, LLC**
Name of Limited Liability Company

By: _____ (SEAL)

Name: Jillean L. Justice
Title: President

[EXECUTIONS CONTINUE ON FOLLOWING PAGE]

# CARTER BANK & TRUST

## LOAN AGREEMENT

WITNESS:

Print Name: CHARLES HENTHORN

Greenbrier Golf and Tennis Club Corporation
Name of Corporation

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

Print Name: CHARLES HENTHORN

Greenbrier Medical Institute, LLC
Name of Limited Liability Company

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

Print Name: CHARLES HENTHORN

Oakhurst Club, LLC
Name of Limited Liability Company

By: _____ (SEAL)
Name: Jillean L. Justice
Title: Member

WITNESS:

Print Name: CHARLES HENTHORN

The Greenbrier Sporting Club, Inc.
Name of Corporation

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

Print Name: CHARLES HENTHORN

The Greenbrier Sporting Club Development Company, Inc.
Name of Corporation

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

Print Name: CHARLES HENTHORN

Print Name: CHARLES HENTHORN

Guarantors:

_____ (SEAL)
Name: James C. Justice, II

_____ (SEAL)
Name: Cathy L. Justice

Bank:

CARTER BANK & TRUST

By: _____
Name: _____
Title: _____

31292285 F

10

# CARTER BANK & TRUST

## LOAN AGREEMENT

WITNESS:

*Charles Henthorn*
Print Name: CHARLES HENTHORN

_____
Greenbrier Golf and Tennis Club Corporation
Name of Corporation
By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

*Charles Henthorn*
Print Name: CHARLES HENTHORN

_____
Greenbrier Medical Institute, LLC
Name of Limited Liability Company
By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

*Charles Henthorn*
Print Name: CHARLES HENTHORN

_____
Oakhurst Club, LLC
Name of Limited Liability Company
By: _____ (SEAL)
Name: Jillean L. Justice
Title: Member

WITNESS:

*Charles Henthorn*
Print Name: CHARLES HENTHORN

_____
The Greenbrier Sporting Club, Inc.
Name of Corporation
By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

*Charles Henthorn*
Print Name: CHARLES HENTHORN

_____
The Greenbrier Sporting Club Development Company, Inc.
Name of Corporation
By: _____ (SEAL)
Name: Jillean L. Justice
Title: President

WITNESS:

*Charles Henthorn*
Print Name: CHARLES HENTHORN

*Charles Henthorn*
Print Name: CHARLES HENTHORN

Guarantors:

_____ (SEAL)
Name: James C. Justice, II

_____ (SEAL)
Name: Cathy L. Justice

Bank:

CARTER BANK & TRUST
By: _____
Name: Phyllis Q. Karavatakis
Title: President

31292285 F

10

# SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is May 22, 2017.  The parties and their addresses are:

> **SECURED PARTY:**
> **CARTER BANK & TRUST**
> 4 East Commonwealth Boulevard
> Martinsville, Virginia  24112

> **DEBTOR:**
> **GREENBRIER HOTEL CORPORATION**
> a West Virginia corporation
> 300 WEST MAIN STREET
> WHITE SULPHUR SPRINGS, WV 24986

**Definitions.**  For the purposes of this document, the following terms have the following meanings.

"Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party.  The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.**  The term "Secured Debts" includes and this Agreement will secure each of the following:

> **A. Specific Debts.**  The following debts and all extensions, renewals, refinancings, modifications and replacements.  A promissory note or other agreement, dated November 28, 2014, from me to you, in the amount of $60,000,000.00.
> **B. All Debts.**  All present and future debts from me to you, even if this Agreement is not specifically referenced.  The future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt.  If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement.  Nothing in this Agreement constitutes a commitment to make additional or future loans or advances.  Any such commitment must be in writing.

This Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.  In addition, this Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

> **C. Sums Advanced.**  All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.**  To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property).  Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all

obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.**

All borrower's assets whether now owned or hereafter acquired, including but not limited to the following:

All accounts and general intangibles;

All equipment, including but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the property, but such a list is not necessary for a valid security interest in my equipment;

All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in debtor's business; and

All goods now or in the future affixed to real property and are, or are to become, fixtures on the property.

Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and

to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell (except in the ordinary course of business), lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**6. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

A. demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

B. enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

C. file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

D. compromise, release, extend, or exchange any indebtedness of an Account Debtor.

E. take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

F. endorse all payments by any Account Debtor which may come into your possession as payable to me.

G. deal in all respects as the holder and owner of the Account Debtors' obligations.

**7. AUTHORITY TO PERFORM.**   I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property.  If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to:

    **A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

    **B.** pay any rents or other charges under any lease affecting the Property.

    **C.** order and pay for the repair, maintenance and preservation of the Property.

    **D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

    **E.** place a note on any chattel paper indicating your interest in the Property.

    **F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

    **G.** handle any suits or other proceedings involving the Property in my name.

    **H.** prepare, file, and sign my name to any necessary reports or accountings.

    **I.** make an entry on my books and records showing the existence of this Agreement.

    **J.** notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care.  If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care.  Reasonable care will not include:  any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties.  Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement.  All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property.  For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control.  You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**8. DEFAULT.**   I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

    **A. Payments.** I fail to make a payment in full when due.

    **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

    **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

    **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

    **E. Other Documents.** A default occurs under the terms of any other Loan Document.

    **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.**  I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.**  I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.**  The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.**  I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.**  I transfer all or a substantial part of my money or property.

**L. Property Value.**  You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.**  Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.**  You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**9. DUE ON SALE.**  You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property.  This right is subject to the restrictions imposed by federal law, as applicable.

**10. REMEDIES.**  After I default, you may at your option do any one or more of the following.

**A. Acceleration.**  You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.**  You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.**  You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.**  Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.**  You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.**  You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your reasonable attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Virginia Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

**G. Use and Operation.**  You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace.  You may use and operate my property for the length of

time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.**  By choosing any one or more of these remedies you do not give up your right to use any other remedy.  You do not waive a default if you choose not to use a remedy.  By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. WAIVER OF CLAIMS.**  I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. PERFECTION OF SECURITY INTEREST AND COSTS.**  I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code.  I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property.  I agree to pay all actual costs of terminating your security interest.

**13. APPLICABLE LAW.**  This Agreement is governed by the laws of Virginia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.  In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Virginia, unless otherwise required by law.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.**  Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor.  You may sue each Debtor individually or together with any other Debtor.  You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property.  Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent.  Such a change will not release Debtor from the terms of this Agreement.  If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment.  You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned.  This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.**  This Agreement may not be amended or modified by oral agreement.  No amendment or modification of this Agreement is effective unless made in writing and executed by you and me.  This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.**  Whenever used, the singular includes the plural and the plural includes the singular.  The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**17. NOTICE AND ADDITIONAL DOCUMENTS.**  Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing.  Notice to one Debtor will be deemed to be notice to all Debtors.  I will inform you in writing of any change in my name, address or other application information.  I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property.  I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property.  Time is of the essence.

18.  WAIVER OF JURY TRIAL.    All of the parties to this Agreement knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Agreement or any other Loan Document or related obligation.   All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

SIGNATURES.   By signing under seal, I agree to the terms contained in this Agreement.   I also acknowledge receipt of a copy of this Agreement.

DEBTOR:

GREENBRIER HOTEL CORPORATION

By_____      Date___5-22-17____
(Seal)
          Jillean L. Justice, President

STATE OF ___West Virginia___; CITY/COUNTY OF ___Greenbrier___;

I, a Notary Public of the above referenced State, certify that Jillean L. Justice executed this document on behalf of Greenbrier Hotel Corporation before me this ___22nd___ day or May, 2017.

My Commission Expires:  ___February 16 2023___

___Connie G Vance___
      NOTARY PUBLIC
F

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

# SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is May 22, 2017.  The parties and their addresses are:

    **SECURED PARTY:**
        **CARTER BANK & TRUST**
        4 East Commonwealth Boulevard
        Martinsville, Virginia  24112

    **DEBTOR:**
        **GREENBRIER GOLF AND TENNIS CLUB CORPORATION**
        a West Virginia corporation
        300 WEST MAIN STREET
        WHITE SULPHUR SPRINGS, WV 24986

**Definitions.**  For the purposes of this document, the following terms have the following meanings.

"Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party.  The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.**  The term "Secured Debts" includes and this Agreement will secure each of the following:

    **A. Specific Debts.**  The following debts and all extensions, renewals, refinancings, modifications and replacements.  A promissory note or other agreement, No. 042-137-2845-82, dated July 1, 2016, from me to you, in the amount of $25,580,000.00.

    **B. All Debts.**  All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt.  If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement.  Nothing in this Agreement constitutes a commitment to make additional or future loans or advances.  Any such commitment must be in writing.

This Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.  In addition, this Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

    **C. Sums Advanced.**  All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.**  To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property).  Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all

obligations that support the payment or performance of the Property.  "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3.  PROPERTY DESCRIPTION.**

All borrower's assets whether now owned or hereafter acquired, including but not limited to the following:

All accounts and general intangibles;

All equipment, including but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools.  All equipment described in a list or schedule which I give to you will also be  included in the property, but such a list is not necessary for a valid security interest in my equipment;

All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in debtor's business; and

All goods now or in the future affixed to real property and are, or are to become, fixtures on the property.

Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**4.  WARRANTIES AND REPRESENTATIONS.**   I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.**   I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate.  I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.**   The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.**   My name indicated in the DATE AND PARTIES section is my exact legal name.  I am located at the address indicated in the DATE AND PARTIES section.  I will provide verification of registration and location upon your request.  I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.**   Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name.  Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.**   I represent that I own all of the Property.  Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts.  I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5.  DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.**   I will defend the Property against any other claim.  I agree to do whatever you require to protect your security interest and

to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**6. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

**A.** demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

**B.** enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

**C.** file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

**D.** compromise, release, extend, or exchange any indebtedness of an Account Debtor.

**E.** take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

**F.** endorse all payments by any Account Debtor which may come into your possession as payable to me.

**G.** deal in all respects as the holder and owner of the Account Debtors' obligations.

**7. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to:

    **A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

    **B.** pay any rents or other charges under any lease affecting the Property.

    **C.** order and pay for the repair, maintenance and preservation of the Property.

    **D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

    **E.** place a note on any chattel paper indicating your interest in the Property.

    **F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

    **G.** handle any suits or other proceedings involving the Property in my name.

    **H.** prepare, file, and sign my name to any necessary reports or accountings.

    **I.** make an entry on my books and records showing the existence of this Agreement.

    **J.** notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

    **A. Payments.** I fail to make a payment in full when due.

    **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

    **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

    **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

    **E. Other Documents.** A default occurs under the terms of any other Loan Document.

    **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**9. DUE ON SALE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**10. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your reasonable attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Virginia Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

**G. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of

time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**13. APPLICABLE LAW.** This Agreement is governed by the laws of Virginia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Virginia, unless otherwise required by law.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**17. NOTICE AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**18. WAIVER OF JURY TRIAL.** All of the parties to this Agreement knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Agreement or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**SIGNATURES.** By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

DEBTOR:

GREENBRIER GOLF AND TENNIS CLUB CORPORATION

By _____   Date  5-22-17
(Seal)
            Jillean L. Justice, President

STATE OF *West Virginia* ; CITY/COUNTY OF *Greenbrier* ;

I, a Notary Public of the above referenced State, certify that Jillean L. Justice executed this document on behalf of Greenbrier Golf and Tennis Club Corporation before me this 22nd day of May, 2017.

My Commission Expires *February 16, 2023*

_____
            NOTARY PUBLIC

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

# SECURITY AGREEMENT

**DATE AND PARTIES**. The date of this Security Agreement (Agreement) is May 22, 2017. The parties and their addresses are:

    SECURED PARTY:
        **CARTER BANK & TRUST**
        4 East Commonwealth Boulevard
        Martinsville, Virginia 24112

    DEBTOR:
        **THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC.**
        a Delaware corporation
        300 WEST MAIN STREET
        WHITE SULPHUR SPRINGS, WV 24986

**Definitions.** For the purposes of this document, the following terms have the following meanings.

"Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 042-137-2845-82, dated July 1, 2016, from me to you, in the amount of $25,580,000.00.

**B. All Debts.** All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement. Nothing in this Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**C. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all

obligations that support the payment or performance of the Property.  "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.**

All borrower's assets whether now owned or hereafter acquired, including but not limited to the following:

All accounts and general intangibles;

All equipment, including but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools.  All equipment described in a list or schedule which I give to you will also be  included in the property, but such a list is not necessary for a valid security interest in my equipment;

All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in debtor's business; and

All goods now or in the future affixed to real property and are, or are to become, fixtures on the property.

Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**4. WARRANTIES AND REPRESENTATIONS.**  I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.**  I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate.  I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.**  The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.**  My name indicated in the DATE AND PARTIES section is my exact legal name.  I am located at the address indicated in the DATE AND PARTIES section.  I will provide verification of registration and location upon your request.  I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.**  Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name.  Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.**  I represent that I own all of the Property.  Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts.  I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest**.  I will defend the Property against any other claim.  I agree to do whatever you require to protect your security interest and

to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell (except in the ordinary course of business), lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**6. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

   A. demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

   B. enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

   C. file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

   D. compromise, release, extend, or exchange any indebtedness of an Account Debtor.

   E. take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

   F. endorse all payments by any Account Debtor which may come into your possession as payable to me.

   G. deal in all respects as the holder and owner of the Account Debtors' obligations.

**7. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to:

**A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

**B.** pay any rents or other charges under any lease affecting the Property.

**C.** order and pay for the repair, maintenance and preservation of the Property.

**D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

**E.** place a note on any chattel paper indicating your interest in the Property.

**F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

**G.** handle any suits or other proceedings involving the Property in my name.

**H.** prepare, file, and sign my name to any necessary reports or accountings.

**I.** make an entry on my books and records showing the existence of this Agreement.

**J.** notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**9. DUE ON SALE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**10. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your reasonable attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Virginia Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

**G. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of

time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**13. APPLICABLE LAW.** This Agreement is governed by the laws of Virginia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Virginia, unless otherwise required by law.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**17. NOTICE AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

18. **WAIVER OF JURY TRIAL.**   All of the parties to this Agreement knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Agreement or any other Loan Document or related obligation.   All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**SIGNATURES.**   By signing under seal, I agree to the terms contained in this Agreement.   I also acknowledge receipt of a copy of this Agreement.

DEBTOR:

THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC.

By _____     Date _5-22-17_
(Seal)
            Jillean L. Justice, President

STATE OF _West Virginia_; CITY/COUNTY OF _Greenbrier_;

I, a Notary Public of the above referenced State, certify that Jillean L. Justice executed this document on behalf of The Greenbrier Sporting Club Development Company, Inc. before me this _22nd_ day of May, 2017.

My Commission Expires _February 16, 2023_

_____
         NOTARY PUBLIC
F

NOTARY PUBLIC OFFICIAL SEAL
CONNE G VANCE
State of West Virginia
My Comm Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

# Subordination Agreement

The undersigned hereby represents to and agrees with **Carter Bank & Trust** (hereinafter called the "Bank") as follows:

Each of **Greenbrier Hotel Corporation, Justice Family Group, LLC, Players Club, LLC, Greenbrier Golf and Tennis Club Corporation, Greenbrier Medical Institute, LLC, Oakhurst Club, LLC, The Greenbrier Sporting Club, Inc. and The Greenbrier Sporting Club Development Company, Inc.** (individually and collectively, the "Borrower"), is now indebted to the undersigned and the Borrower may hereafter from time to time become indebted to the undersigned in further amounts.

In order to induce the Bank, at any time or from time to time, at its option, to make loans or extend credit or provide other accommodation or benefit to or for account of the Borrower, with or without security, or to purchase or extend credit upon any instrument or writing in respect of which the Borrower may be liable in any capacity, or to grant such renewals or extensions of any thereof as the Bank may deem advisable, each of the undersigned hereby postpones and subordinates the payment of all loans, advances, liabilities, obligations and indebtedness owed by the Borrower to each of the undersigned, whether now existing or hereafter arising, direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, and whether arising directly between the Borrower and each of the undersigned or acquired outright, conditionally or as collateral security from another by each of the undersigned, together with all interest, fees, charges, expenses and attorney's fees (collectively, the "Junior Debt") to the payment in full of all indebtedness of the Borrower to the Bank, howsoever arising, whether now existing or hereafter arising, direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, and whether arising directly between the Borrower and the Bank or acquired outright, conditionally or as collateral security from another by the Bank, together with all interest, fees, charges, expenses and attorney's fees (collectively, the "Senior Debt"). Each of the undersigned agrees that each of the undersigned will not ask, demand, sue for, make claim upon, take or receive from the Borrower, by set-off or in any other manner, the whole or any part of the Junior Debt, or any security therefor, unless and until all of the Senior Debt shall have been fully paid with interest, including all interest accruing on the Senior Debt after the commencement of a bankruptcy case. Each of the undersigned also agrees that (i) any lien or security interest it may now have or hereafter acquire in all or any portion of any real or personal property of the Borrower shall be subject, subordinate and inferior at all times and in all respects to the lien, dignity and priority of any lien or security interest of the Bank, whether now existing or hereafter arising, in or on any real or personal property of the Borrower; (ii) that the foregoing subordination by each of the undersigned shall be effective irrespective of (A) the time, order or method of attachment or perfection of the liens and/or security interests of the Bank in or on any real or personal property of the Borrower or (B) the ordinary rules for determining priority under the Uniform Commercial Code, or any other applicable law governing the relative priorities of secured creditors; and (iii) each of the undersigned shall not enforce or attempt to enforce any lien or security interest it may now have or hereafter acquire in all or any portion of any real or personal property of the Borrower unless and until all of the Senior Debt shall have been fully paid with interest, including all interest accruing on the Senior Debt after the commencement of a bankruptcy case.

Should any payment or distribution of security or proceeds be received by any of the undersigned upon or with respect to any of the Junior Debt prior to the satisfaction of all of the Senior Debt, each of the undersigned will forthwith deliver the same to the Bank in precisely the form received (except for the endorsement or assignment of each of the undersigned where necessary), for application on any Senior Debt, whether or not due, and, until so delivered, the same shall be held in trust by each of the undersigned as property of the Bank. In the event of the failure of each of the undersigned to make any such endorsement or assignment, the Bank, or any of its officers or employees, are hereby authorized to make the same and each of the undersigned hereby irrevocably appoints the Bank its true and lawful attorney-in-fact for the purposes specified herein, with full power of substitution, and such power shall be a power coupled with an interest. Each power of attorney granted under this Agreement shall be irrevocable until the Senior Debt is fully and finally paid, and shall not terminate upon the death, incompetency, dissolution, bankruptcy or termination of existence of any of the undersigned.

Until all of the Senior Debt is paid in full, each of the undersigned will not (1) demand or accept from Borrower any payment on account of the Junior Debt, nor shall any of the undersigned release, exchange, extend the time of payment of, compromise, set off or otherwise discharge or enforce any part of the Junior Debt; (2) subordinate any part of the Junior Debt to the indebtedness or claims of any other person; (3) convert any or all of the Junior Debt to capital stock or other securities of the Borrower; (4) commence or join with other creditors of the Borrower in commencing any bankruptcy, reorganization, receivership or insolvency proceeding against the Borrower; or (5) assign, transfer or pledge to any person any claim any of the undersigned has or may have against the Borrower unless such assignment or transfer is made expressly subject to this Agreement, and each of the undersigned will mark any notes or other evidence of indebtedness of the Borrower which it holds: "Payment of this instrument is subordinated to all debts now or hereafter owed by maker to Carter Bank & Trust, its successors and assigns."

Each of the undersigned agrees that, in the event of any distribution, division or application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of the assets of the Borrower or the proceeds thereof, to creditors of the Borrower, or upon any indebtedness of the Borrower, by reason of the liquidation, dissolution or other winding up of the Borrower or the Borrower's business, or any sale, receivership, insolvency or bankruptcy proceedings, or assignment for the benefit of creditors, or any proceeding by or against the Borrower for any relief under any bankruptcy or insolvency law or laws relating to the relief of debtors, readjustment of indebtedness, reorganizations, compositions or extensions, then and in any such event any payment or distribution of any kind or character, either in cash, securities or other property, which shall be payable or deliverable upon or with respect to any or all of the Junior Debt shall be paid or delivered directly to the Bank for application on the Senior Debt, whether or not due, until the Senior Debt shall have first been fully paid and satisfied with interest, including interest accruing after the commencement of such proceeding. Each of undersigned irrevocably authorizes and empowers the Bank: (1) to demand, sue for, collect and receive every such payment or distribution and give acquittance therefor: (2) to file claims and take such other proceedings, in the Bank's own name or in the name of any of the undersigned or otherwise, as the Bank may deem necessary or advisable for the enforcement of this Agreement; and (3) to vote the full amount of each of the undersigned's claims in any receivership, insolvency or bankruptcy proceeding in each of the undersigned's place and stead. Each of undersigned further irrevocably appoints the Bank its true and lawful attorney-in-fact for the purposes specified herein, with full power of substitution, and such power shall be a power coupled with an interest. Each of the undersigned further agrees to execute and deliver to the Bank such powers of attorney, assignments or other instruments as may be requested by the Bank in order to enable the Bank to enforce any and all claims upon or with respect to any or all of the Junior Debt and to collect and receive any and all payments or distributions which may be payable or deliverable at any time upon or with respect to any of the Junior Debt.

Each of the undersigned represents and warrants (1) each of the undersigned is the lawful owner of the Junior Debt and that no part thereof is subject to any defense, offset or counterclaim; (2) that the Junior Debt has not previously been subordinated to the indebtedness or claims of any other party other than those specified in writing to the Bank prior to the execution of this Agreement; (3) that no part of the Junior Debt is evidenced by any instrument, security or other writing which has not previously been disclosed to the Bank in writing; and (4) that no part of the Junior Debt is secured by property of the Borrower unless otherwise disclosed to the Bank in writing.

This is a continuing agreement of subordination and the Bank may continue, without notice to any of the undersigned, to extend credit or other accommodation or benefit and loan moneys to or for the account of the Borrower on the faith hereof until thirty (30) days following the Bank's receipt of written notice of revocation of this Agreement, notwithstanding the death, incompetency, dissolution, termination of existence or bankruptcy of any of the undersigned. Such notice of revocation shall not affect this Agreement in relation to any obligations or liabilities of the Borrower then existing or any obligations or liabilities created thereafter pursuant to any previous commitment of the Bank to the Borrower, or any extensions or renewals of such obligations or liabilities, and as to all such obligations and liabilities and extensions or renewals thereof, this Agreement shall continue effective until the same shall have been fully discharged with interest. None of the death, incompetency, dissolution, termination of existence or bankruptcy of any of the undersigned shall effect a termination hereof.

Each of the undersigned hereby waives: presentment, demand, protest, notice of protest, notice of default or dishonor, notice of payment or nonpayment, all other notices and demands of any kind in connection with all negotiable instruments evidencing all or any portion of the Senior Debt; notice of any loans made, extensions granted or other action taken in reliance hereon; any right to require the marshalling of assets with respect to the Senior Debt or the Junior Debt; any right to compel the Bank to seek recourse against any person or property, including guarantors, before seeking recourse against the Junior Debt or any property securing the Junior Debt; and any right to require that the Bank preserve rights against prior parties on any instrument or chattel paper received from the Borrower or any of the undersigned as collateral security for any or all of the Senior Debt. It is agreed that the Bank, at any time and from time to time, either before or after any such notice of revocation, may either before, at or after maturity enter into such agreement or agreements with the Borrower as the Bank may deem proper extending the time of payment of or renewing or otherwise altering the terms of all or any of the Senior Debt one or more times and for periods in excess of the original term or affecting the security underlying any or all of the Senior Debt, or may exchange, substitute, sell, surrender or otherwise deal with any such security, or may release any person primarily or secondarily liable on any or all of the Senior Debt, or may release any balance of funds of the Borrower with the Bank, without notice to any of the undersigned, and without in any way impairing or affecting this Agreement thereby.

Each of the undersigned consents and agrees that all obligations and liabilities of the Borrower to the Bank shall be deemed to have been made or incurred or renewed or extended at the request of each of the undersigned and in reliance upon this Agreement, and each of the undersigned further agrees that in the event that the Borrower is a partnership this Agreement shall not be affected by any change which shall arise from the admission of one or more partners to the Borrower or from the death, incompetency, dissolution, termination of existence, bankruptcy or retirement of any partner or partners of the Borrower.

No waiver shall be deemed to be made by the Bank of any of its rights hereunder unless the same shall be in writing signed on behalf of the Bank, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Bank or the obligations of any of the undersigned to the Bank in any other respect at any other time.

Notice of acceptance of this Agreement is hereby waived, and this Agreement shall be immediately binding upon each of the undersigned, and the executors, administrators, successors and assigns of each of the undersigned.

This Agreement shall be construed according to the laws of the Commonwealth of Virginia. Each of undersigned hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement may be instituted in the Circuit Court of the City of Martinsville, Virginia, or the United States District Court for the Western District of Virginia, or in such other appropriate court and venue as the Bank may choose in its sole discretion. Each of the undersigned hereby consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which each of the undersigned may now or hereafter have in any such legal action or proceedings.

**UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH OF THE UNDERSIGNED HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS AGREEMENT OR ANY OF THE OTHER DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED OR DELIVERED IN CONNECTION WITH THE SENIOR DEBT OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN EACH OF THE UNDERSIGNED AND THE BANK, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. EACH OF THE UNDERSIGNED AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT THE BANK MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH OF THE UNDERSIGNED TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE BANK TO ENTER INTO THIS AGREEMENT. FURTHER, EACH OF THE UNDERSIGNED HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE BANK, NOR THE BANK'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. NO REPRESENTATIVE OR AGENT OF THE BANK, NOR THE BANK'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION. EACH OF THE UNDERSIGNED ACKNOWLEDGES IT HAS HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS PARAGRAPH, THAT IT FULLY UNDERSTANDS ITS TERMS, CONTENT AND EFFECT, AND THAT IT VOLUNTARILY AND KNOWINGLY AGREES TO THE TERMS OF THIS PARAGRAPH.**

This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements or conditions, whether express or implied, oral or written. Neither this Agreement nor any provisions hereof may be changed, waived or amended other than by an agreement in writing signed by the Bank, the Borrower and each of the undersigned.

[Remainder of Page Intentionally Left Blank]

-3-

*In Witness Whereof,* this Agreement has been signed and sealed this 22nd day of May, 2017.

Southern Coal Corporation

By _____ (SEAL)
Name: James C. Justice, III
Title: President
                                    Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells _____, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Southern Coal Corporation, a Delaware corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

A&G Coal Corporation

By _____ (SEAL)
Name: James C. Justice, III
Title: President
                                    Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells _____, a Notary Public of the City/County and State aforesaid, certify that that James C. Justice, III who is President of A&G Coal Corporation, a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-4-

**Bardo Mining, LLC**

By _____ (SEAL)
Name: James C. Justice, III
Title:  President
                          Creditor

State of  Virginia          )
                            ) ss.
City/County of  Roanoke     )

I,  Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Bardo Mining, LLC, a Kentucky limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Liggett Mining, LLC

By _____ (SEAL)
Name: James C. Justice, III
Title:  President
                          Creditor

State of  Virginia          )
                            ) ss.
City/County of  Roanoke     )

I,  Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Liggett Mining, LLC, a Kentucky limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Sequoia Energy, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Sequoia Energy, LLC, a Kentucky limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Infinity Energy, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Infinity Energy, LLC, a Kentucky limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Cane-Patch Mining Company, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

Creditor

State of ___Virginia___ )
                         ) ss.
City/County of ___Roanoke___ )

I, ___Leslie Ann Wells___, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Cane-Patch Mining Company, Inc., a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Meg-Lynn Land Company, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

Creditor

State of ___Virginia___ )
                         ) ss.
City/County of ___Roanoke___ )

I, ___Leslie Ann Wells___, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Meg-Lynn Land Company, Inc., a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-7-

Premium Coal Company, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

Creditor

State of Virginia )
                        ) ss.
City/County of Roanoke )

I, Leslie Ann Wells, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Premium Coal Company, Inc., a Tennessee corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Baden Reclamation Company

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

Creditor

State of Virginia )
                        ) ss.
City/County of Roanoke )

I, Leslie Ann Wells, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Baden Reclamation Company, a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-8-

Nine Mile Mining, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
_____
Creditor

State of _Virginia_ )
) ss.
City/County of _Roanoke_ )

I, _Leslie Ann Wells_ , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Nine Mile Mining, Inc. a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_____
Notary Public

My Commission expires: _5-31-2017_
Notary Registration Number: _7560729_

Bellwood Corporation

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
_____
Creditor

State of _Virginia_ )
) ss.
City/County of _Roanoke_ )

I, _Leslie Ann Wells_ , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Bellwood Corporation, a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_____
Notary Public

My Commission expires: _5-31-2017_
Notary Registration Number: _7560729_

-9-

Bluestone Energy Sales Corporation

By _____ (SEAL)
Name:  James C. Justice, III
Title:  President
                                              Creditor

State of Virginia )
                                ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Bluestone Energy Sales Corporation, a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

Leslie Ann Wells
Notary Public

My Commission expires:  5-31-2017
Notary Registration Number:  7560729

Justice Coal of Alabama, LLC,
formerly known as Alabama Carbon, LLC

By _____ (SEAL)
Name:  James C. Justice, III
Title:  President
                                              Creditor

State of Virginia )
                                ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Justice Coal of Alabama, LLC, an Alabama limited liability company, formerly known as of Alabama Carbon, LLC, an Alabama limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

Leslie Ann Wells
Notary Public

My Commission expires:  5-31-2017
Notary Registration Number:  7560729

-10-

**Virginia Fuel Corporation**

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
_____
Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Virginia Fuel Corporation, a Delaware corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

LESLIE ANN WELLS
NOTARY PUBLIC
★ REG. #7560729 ★
MY COMMISSION
EXPIRES
5/31/2017
COMMONWEALTH OF VIRGINIA

**Justice Low Seam Mining Inc.**

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
_____
Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Justice Low Seam Mining Inc., a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

LESLIE ANN WELLS
NOTARY PUBLIC
★ REG. #7560729 ★
MY COMMISSION
EXPIRES
5/31 2017
COMMONWEALTH OF VIRGINIA

Kentucky Fuel Corporation

By _____ (SEAL)
Name: James C. Justice, III
Title: President
                                            Creditor

State of Virginia )
                    ) ss.
City/County of Roanoke )

    I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Kentucky Fuel Corporation, a Delaware corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

    Witness my hand and official stamp or seal, this 22nd day of May, 2017.

                                       Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Bluestone Resources Inc.

By _____ (SEAL)
Name: James C. Justice, III
Title: President
                                            Creditor

State of Virginia )
                    ) ss.
City/County of Roanoke )

    I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Bluestone Resources Inc., a Delaware corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

    Witness my hand and official stamp or seal, this 22nd day of May, 2017.

                                        Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-12-

National Resources Inc.

By _____ (SEAL)
Name: James C. Justice, III
Title: President
_____
              Creditor

State of __Virginia__ )
                      ) ss.
City/County of __Roanoke__ )

I, __Leslie Ann Wells__, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of National Resources Inc., a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this __22nd__ day of May, 2017.

_____
              Notary Public

My Commission expires: __5-31-2017__
Notary Registration Number: __7560729__

Tams Management, Inc.

By _____ (SEAL)
Name: James C. Justice, III
Title: President
_____
              Creditor

State of __Virginia__ )
                      ) ss.
City/County of __Roanoke__ )

I, __Leslie Ann Wells__, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Tams Management, Inc., a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this __22nd__ day of May, 2017.

_____
              Notary Public

My Commission expires: __5-31-2017__
Notary Registration Number: __7560729__

-13-

Justice Farms of North Carolina, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                                    Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Justice Farms of North Carolina, LLC, a Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

James C. Justice Companies, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                                    Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of James C. Justice Companies, Inc., a Delaware corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-14-

Twin Fir Estates, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                              Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

    I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Twin Fir Estates, LLC, a Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

    Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Wilcox Industries, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                              Creditor

State of Virginia )
                  ) ss.
City/County of Roanoke )

    I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Wilcox Industries, Inc., a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

    Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-15-

Triple J, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title:   President
                                          Creditor

State of  Virginia  )
                    ) ss.
City/County of Roanoke

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Triple J, LLC. a Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

_____ (SEAL)
Name: James C. Justice, III
                                          Creditor

State of  Virginia  )
                    ) ss.
City/County of Roanoke

I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III personally appeared before me this day and acknowledged the due execution of this Agreement.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-16-

_(signature)_ (SEAL)

Name: James C. Justice, II
Obligor

State of _WV_ )
) ss.
City/County of _Greenbrier_ )

I, _Connie G Vance_, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, II personally appeared before me this day and acknowledged the due execution of this Agreement.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_(signature)_
Notary Public

My Commission expires: _February 16, 23_
Notary Registration Number:_____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

_(signature)_ (SEAL)

Name: Cathy L. Justice
Creditor

State of _WV_
City/County of _GRB_ )

I, _Connie G Vance_ a Notary Public of the City/County and State aforesaid, certify that Cathy L. Justice personally appeared before me this day and acknowledged the due execution of this Agreement.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_(signature)_
Notary Public

My Commission expires: _February 16 2023_
Notary Registration Number:_____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

-17-

Chesapeake and Ohio Traveler, Inc.

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
                                    Creditor

State of _West VA_ )
                   ) ss.
City/County of _GBR_ )

I, _Connie Vance_ , a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Chesapeake and Ohio Traveler, Inc., a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
                    Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number: _____

> NOTARY PUBLIC OFFICIAL SEAL
> CONNIE G VANCE
> State of West Virginia
> My Comm. Expires Feb 16, 2023
> 159 Waynes Mountain Rd
> White Sulpher Springs WV 24986

The Greenbrier Resort and Club Management Company

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
                                    Creditor

State of _West VA_ )
                   ) ss.
City/County of _Greenbrier_ )

> NOTARY PUBLIC OFFICIAL SEAL
> CONNIE G VANCE
> State of West Virginia
> My Comm. Expires Feb 16, 2023
> 159 Waynes Mountain Rd
> White Sulpher Springs WV 24986

I, _Connie Vance_ a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of The Greenbrier Resort and Club Management Company, a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
                    Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number: _____

**Greenbrier IA, Inc.**

By: _Jillean L Justice_ (SEAL)
Name: Jillean L. Justice
Title: President
_____
Creditor

State of _WV_ )
                            ) ss.
City/County of _GBR_ )

I, _Connie G Vance_, a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Greenbrier IA, Inc., a Delaware corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_Connie G Vance_
Notary Public

My Commission expires: _Feberuary 16, 2023_
Notary Registration Number:_____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

**Old White Club Corporation**

By: _Jillean L Justice_ (SEAL)
Name: Jillean L. Justice
Title: President
_____
Creditor

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

State of _WVA_ )
                            ) ss.
City/County of _GRB_ )

I, _Connie G Vance_, a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Old White Club Corporation, a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_Connie G Vance_
Notary Public

My Commission expires: _Feberuary 16, 2023_
Notary Registration Number:_____

**The Old White Development Company**

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President _____
                      Creditor

State of _____ )
                ) ss.
City/County of _____ )

    I, _____, a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of The Old White Development Company, a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

    Witness my hand and official stamp or seal, this _____ day of May, 2017.

                            _____
                                Notary Public

My Commission expires: _____
Notary Registration Number: _____

**Southeast Cotton, Inc.**

By: _____ (SEAL)
Name: James C. Justice III
Title: President _____
                      Creditor

State of Virginia )
                ) ss.
City/County of Roanoke )

    I, Leslie Ann Wells, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Southeast Cotton, Inc., a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

    Witness my hand and official stamp or seal, this 22nd day of May, 2017.

                            _____
                                  Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

LESLIE ANN WELLS
NOTARY PUBLIC
REG. #7560729
MY COMMISSION
EXPIRES
5/31/20 17
COMMONWEALTH OF VIRGINIA

-20-

The Old White Development Company

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
                    Creditor

State of _____WV_____ )
                          ) ss.
City/County of __GBR__ )

        I, _Connie G Vance_, a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of The Old White Development Company, a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

        Witness my hand and official stamp or seal, this 22nd day of May, 2017.

                                        _____
                                                Notary Public

My Commission expires: February 16, 2023
Notary Registration Number: _____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm Expires Feb 16, 2023
159 Waynes Mountain Rd
Sulphur Springs WV 24986

Southeast Cotton, Inc.

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                    Creditor

State of _____ )
                          ) ss.
City/County of _____ )

        I, _____, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Southeast Cotton, Inc., a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

        Witness my hand and official stamp or seal, this _____ day of May, 2017.

                                        _____
                                                Notary Public

My Commission expires: _____
Notary Registration Number: _____

-20-

American Turf Grass Corporation

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

           Creditor

State of Virginia )
        ) ss.
City/County of Roanoke )

  I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of American Turf Grass Corporation, a Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

  Witness my hand and official stamp or seal, this 22nd day of May, 2017.

        _____
           Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

Rapidan, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President

           Creditor

State of Virginia )
        ) ss.
City/County of Roanoke )

  I, Leslie Ann Wells , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Rapidan, LLC, a West Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

  Witness my hand and official stamp or seal, this 22nd day of May, 2017.

        _____
           Notary Public

My Commission expires: 5-31-2017
Notary Registration Number: 7560729

-21-

Blue Ridge Farm Center, Inc.

By _____ (SEAL)
Name: James C. Justice, III
Title: President
                              Creditor

State of __Virginia__ )
                       ) ss.
City/County of __Roanoke__ )

I, __Leslie Ann Wells__, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Blue Ridge Farm Center, Inc., a Virginia corporation. personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation. .

Witness my hand and official stamp or seal, this __22nd__ day of May, 2017.

_____
Notary Public

My commission expires: __5-31-2017__
Notary Registration Number: __7560729__

Justice Family Farms, LLC

By _____ (SEAL)
Name: James C. Justice, III
Title: President
                              Creditor

State of __Virginia__ )
                       ) ss.
City/County of __Roanoke__ )

I, __Leslie Ann Wells__, a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Justice Family Farms, LLC, a West Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this __22nd__ day of May, 2017.

_____
Notary Public

My Commission expires: __5-31-2017__
Notary Registration Number: __7560729__

-22-

Greenthorn LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                          Creditor

State of __Virginia__ )
                        ) ss.
City/County of __Roanoke__ )

I, __Leslie Ann Wells__ , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Greenthorn LLC, a Kentucky limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this __22nd__ day of May, 2017.

_____
                          Notary Public

My Commission expires: __5-31-2017__
Notary Registration Number: __7560729__

Black River Coal, LLC

By: _____ (SEAL)
Name: James C. Justice, III
Title: President
                          Creditor

State of __Virginia__ )
                        ) ss.
City/County of __Roanoke__ )

I, __Leslie Ann Wells__ , a Notary Public of the City/County and State aforesaid, certify that James C. Justice, III who is President of Black River Coal, LLC, a Delaware limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this __22nd__ day of May, 2017.

_____
                          Notary Public

My Commission expires: __5-31-2017__
Notary Registration Number: __7560729__

Each of the undersigned hereby acknowledges receipt of a copy of the foregoing Subordination Agreement; and agrees that it will not, directly or indirectly, pay on account of or grant a security interest in, mortgage, pledge, assign or transfer any properties to secure or satisfy all or any part of the Junior Debt, and that each of the undersigned will not hereafter issue any instrument, security or other writing evidencing any part of the Junior Debt except with the prior written consent of the Bank. A breach by any Creditor that executed this Subordination Agreement or any of the undersigned of any of the provisions of the foregoing Subordination Agreement shall be a default and an event of default under the Senior Debt, and all of the undersigned's obligations and liabilities to the Bank shall, at the option of the Bank, become immediately due and payable.

**Greenbrier Hotel Corporation**

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
<span style="font-size:smaller">Borrower</span>

State of _WV_ )
                          ) ss.
City/County of _GBR_ )

I, _Connie G Vance_ , a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Greenbrier Hotel Corporation, a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number:_____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

**Justice Family Group, LLC**

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
<span style="font-size:smaller">Borrower</span>

State of _WV_ )
                          ) ss.
City/County of _GBR_ )

I, _Connie G Vance_ , a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice, who is President of Justice Family Group, LLC, a Delaware limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number:_____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

-24-

Players Club, LLC

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
Borrower

State of _____WV_____ )
                      ) ss.
City/County of __GBR__ )

I, _Connie G Vance_, a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Players Club, LLC, a Delaware limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_____
Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number: _____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

Greenbrier Golf and Tennis Club Corporation

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
Borrower

State of _____WV_____ )
                      ) ss.
City/County of __GBR__ )

I, _Connie G Vance_, a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Greenbrier Golf and Tennis Club Corporation, a West Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this _22nd_ day of May, 2017.

_____
Notary Public

My Commission expires: _____
Notary Registration Number: _____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

-25-

**Greenbrier Medical Institute, LLC**

By: _____ (SEAL)
Name:  Jillean L. Justice
Title:  President
        Borrower

State of  _WV_ )
                 ) ss.
City/County of  _GBR_ )

I, _Connie G Vance_ , a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of Greenbrier Medical Institute, LLC, a West Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
                                    Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number: _____

```
NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986
```

**Oakhurst Club, LLC**

By: _____ (SEAL)
Name:  Jillean L. Justice
Title:  Member
Borrower

State of  _WV_ )
                 ) ss.
City/County of  _GBR_ )

I, _Connie G Vance_ , a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is a Member of Oakhurst Club, LLC, a West Virginia limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
                                    Notary Public

My Commission expires: _February 16, 2023_
Notary Registration Number: _____

```
NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986
```

-26-

The Greenbrier Sporting Club, Inc.

By: _____ (SEAL)
Name: James T. Miller
Title: Treasurer
    Borrower

State of WV )
               ) ss.
City/County of GBR )

I, Connie G Vance , a Notary Public of the City/County and State aforesaid, certify that James T Miller who is Treasurer of The Greenbrier Sporting Club, Inc. a West Virginia corporation, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____

My Commission expires: February 22, 2023
Notary Registration Number: _____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986

The Greenbrier Sporting Club Development Company, Inc.

By: _____ (SEAL)
Name: Jillean L. Justice
Title: President
    Borrower

State of WVa )
               ) ss.
City/County of GBR )

I, Connie G Vance , a Notary Public of the City/County and State aforesaid, certify that Jillean L. Justice who is President of The Greenbrier Sporting Club Development Company, Inc., a Delaware limited liability company, personally appeared before me this day and acknowledged the due execution of this Agreement on behalf of the corporation.

Witness my hand and official stamp or seal, this 22nd day of May, 2017.

_____
Notary Public

My Commission expires: February 16, 2023
Notary Registration Number: _____

NOTARY PUBLIC OFFICIAL SEAL
CONNIE G VANCE
State of West Virginia
My Comm. Expires Feb 16, 2023
159 Waynes Mountain Rd
White Sulpher Springs WV 24986