## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### Beckley Division

BELLWOOD CORP.,
GREENBRIER HOTEL CORP.,
GREENBRIER GOLF AND TENNIS CLUB
CORP.,
GREENBRIER MEDICAL INSTITUTE, LLC,
THE GREENBRIER SPORTING CLUB
DEVELOPMENT COMPANY, INC.,
THE GREENBRIER SPORTING CLUB, INC.,
JUSTICE FAMILY GROUP, LLC,
JAMES C. JUSTICE COMPANIES, INC.,
JUSTICE FARMS OF NORTH CAROLINA,
LLC,
JUSTICE LOW SEAM MINING, INC.,
OAKHURST CLUB, LLC,
TAMS MANAGEMENT, INC.,
TRIPLE J PROPERTIES LLC,
JAMES C. JUSTICE II,
CATHY L. JUSTICE, AND
JAMES C. JUSTICE III

           Plaintiffs,

    v.

CARTER BANK & TRUST, et al.

           Defendants.

Civil Action No.  5:21-cv-00320

---

### MEMORANDUM IN SUPPORT OF CARTER BANK'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE WESTERN DISTRICT OF VIRGINIA

Defendant Carter Bank & Trust ("Carter Bank"), by counsel and pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 1404(a) & 1406(a), and Local Rule 7.1(a)(2), submits this Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint for improper venue or, in the alternative, to transfer this case to the United States District Court for the Western District of Virginia.

## I.   INTRODUCTION

Defendant Carter Bank has extended hundreds of millions of dollars in loans to the collection of mining, hospitality, real estate, and farming businesses (collectively the "Justice Entities") operated by Plaintiffs James C. Justice, II and his son James C. Justice, III (together with Cathy L. Justice, "the "Justices").  Although Carter Bank has worked repeatedly and cooperatively with the Justices and the Justice Entities in restructuring and/or extending various of the loans made by Carter Bank, as well as advancing new credit to various of the Justice Entities, Carter Bank advised the Plaintiffs early in 2021 that it would not renew or extend two loans totaling approximately $57 million that were scheduled to mature on June 1, 2021.  Despite having agreed in numerous documents not to sue Carter Bank, let alone in West Virginia, the Plaintiffs filed, on the afternoon of Memorial Day, the day before these two loans matured, a Complaint in this Court making numerous conclusory allegations of bad faith, breach of fiduciary duty, overreaching, and stonewalling. The gist of the Complaint is that, four years ago, Carter Bank somehow induced the Plaintiffs into "technical" defaults and then sought to exercise its rights under the pertinent loan documents, forcing Plaintiffs to sign various loan documents with purportedly unfair provisions. Despite referencing the many loans Carter Bank extended to them, and the documents that evidence those loans, Plaintiffs failed to attach even a single loan document to the Complaint.

The reason for this failure becomes immediately clear upon a review of even a handful of the relevant documents:  they uniformly contain forum selection clauses pursuant to which the Plaintiffs agreed to an exclusive forum in Virginia, not West Virginia.  Between 2017 and 2020, Plaintiffs executed ***more than seventy five (75) separate loan documents*** with forum selection clauses that mandate either the Circuit Court of the City of Martinsville, Virginia, or the United States District Court for the Western District of Virginia as the ***only*** forum to adjudicate any

dispute arising from the lending relationship between the parties.  This is true even for loan documents executed before the date the Plaintiffs allege that Carter Bank commenced its allegedly improper conduct.

That is not all.  In addition to the loan documents, over a period extending from 2017 until June 30, 2020, all Plaintiffs executed *twelve (12)* Release and Reaffirmation Agreements and *three (3)* Forbearance Agreements, all of which included forum a selection clause mandating either the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western District of Virginia as the *only* forum to adjudicate any dispute arising from the lending relationship between the parties.

Because the multitude of forum selection clauses are reasonable, were freely entered into by the Plaintiffs over a number of years, are not unfair, and do not contravene public policy, they are presumptively valid.  Plaintiffs have no colorable argument that the forum selection clauses themselves, separate and apart from the agreements in which they appear, were the product of overreaching.  For one thing, Plaintiffs are highly sophisticated parties who were represented by sophisticated and experienced counsel during the negotiation of every one of the loan documents and release agreements.  For another, it is not fundamentally unfair to require Plaintiffs to prosecute this litigation in their chosen forum, particularly given the fact that almost half of the Justice Entities, as well as Plaintiff James C. Justice, III ("Jay Justice") himself, all are located in the Western District of Virginia, all loan documents require the application of Virginia law, and Plaintiffs assert three of their seven claims under Virginia law.  Because the numerous mandatory forum selection clauses are enforceable, the Court should dismiss this case or transfer the case to the United States District Court for the Western District of Virginia.

Dismissal or transfer to the United States District Court for the Western District of Virginia,

where this case could, indeed should have been brought is also proper pursuant to 28 U.S.C. §

1404(a).  All the relevant factors weigh in favor of a dismissal or transfer:

- Plaintiffs agreed to the Western District of Virginia as the exclusive forum to litigate disputes with Carter Bank;

- The sources of proof, namely all of the relevant loan documents, were drafted in, delivered to Carter Bank and are located in the Western District of Virginia;

- The most pertinent witnesses – including all of Defendants' witnesses as well as Jay Justice and in-house counsel Stephen W. Ball for the Justice Entities – are located in the Western District of Virginia;

- For most of the Justice Entities located in West Virginia, the Western District of Virginia is convenient – located almost as close to their White Sulphur Springs headquarters as is this Court; and

- This case involves loans to numerous Virginia-based entities by a Virginia chartered bank and documents governed by Virginia law, and revolves around a meeting held in the Western District of Virginia between residents of Virginia; it is not a controversy local to West Virginia.

In short, in the interests of justice the Court should dismiss this case or transfer it to the

United States District Court for the Western District of Virginia.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>The Parties</u>

Defendant Carter Bank is a banking institution incorporated in the Commonwealth of

Virginia, with its principal place of business in Martinsville, Virginia.  Compl. ¶ 32; Declaration

of Litz Van Dyke ("Van Dyke Decl.") ¶ 4, <u>**Exhibit A**</u>.[1]  The Director Defendants serve as directors

of Carter Bank. Their places of residence are not alleged in the Complaint but none of these

individual Defendants is a resident of or domiciled in West Virginia.[2]  Defendants John and Jane

---

[1] All exhibits referenced herein have been attached to the Motion to Dismiss for Improper Venue or In the Alternative, to Transfer Venue to the Western District of Virginia.

[2] Of the fifteen (15) named directors, eleven (11) of them reside or resided in the Western District

Does are alleged to be "institution-affiliated parties" of Carter Bank, as defined in 12 U.S.C. § 1813(u).  The Complaint does not identify their names or places of residence; they are not alleged to be residents of West Virginia.  Compl. ¶ 34.

Plaintiffs James C. Justice II ("Jim Justice") and Cathy L. Justice are residents of West Virginia.  Compl. ¶ 31.  Plaintiff Jay Justice is a resident of the City of Roanoke, Commonwealth of Virginia. [3]  Plaintiffs Greenbrier Hotel Corp., Greenbrier Golf and Tennis Club Corp., Greenbrier Medical Institute, LLC, The Greenbrier Sporting Club Development Company Inc., The Greenbrier Sporting Club, Inc., Justice Family Group, LLC, and Oakhurst Club, LLC are headquartered in and have their principal places of business in White Sulphur Springs, West Virginia.  Compl. ¶¶ 19-24, 28.  Plaintiff Bellwood Corp. is a West Virginia corporation with its principal place of business in Beckley, West Virginia.  Compl. ¶ 18.  Plaintiffs James C. Justice Companies, Inc., Justice Low Seam Mining, Inc., and TAMS Management, Inc., all have their headquarters in Roanoke, Virginia.  Compl. ¶¶ 25, 27, 29. Plaintiffs Justice Farms of North Carolina, LLC and Triple J Properties LLC are Virginia limited liability companies with their headquarters and/or principal places of business in Roanoke, Virginia.  Compl. ¶¶ 26, 30.  Thus, ten of the Plaintiffs are West Virginia related and six are Virginia related.

B.    **Allegations in the Complaint**

For the purposes of this Motion and given the procedural posture of this case, the allegations in the Complaint are accepted as true.  However, Carter Bank strenuously denies the

---

of Virginia.  One of the Director Defendants, Charles E. Hall, has died since the filing of the Complaint.  None of the Director Defendants are residents of West Virginia.  *See* Mem. Supp. Rule 12(b)(2) Mot. to Dismiss.

[3] Plaintiffs Jim Justice, Cathy L. Justice and James C. Justice are referred to herein as the "Individual Plaintiffs."  The entity Plaintiffs are referred to collectively as the "Justice Entities."

allegations and will substantively address all allegations in the Complaint in due course.

The Justice Entities and Carter Bank began a commercial lending relationship in 2001. Carter Bank, then headed by Worth Carter, a resident of Virginia, made various commercial loans to the Justice Entities.  Compl. ¶¶ 44-49.  By the end of 2011, Carter Bank had loaned the Justice Entities more than $170 million.  Compl. ¶ 47.  From 2014 through 2016, Carter Bank provided additional loans to the Justice Entities, so that by the end of 2016, Carter Bank had loaned over $775 million to the Justice Entities.  Compl. ¶¶ 5, 48.  On April 7, 2017, Worth Carter passed away and Defendants Phyllis Q. Karavatakis ("Karavatakis") and Litz Van Dyke ("Van Dyke") "formally took over management of Carter Bank."  Compl. ¶ 50.

Plaintiffs allege that their relationship with Carter Bank began to sour in the Fall of 2017. Specifically, the Complaint alleges that, on September 7, 2017, Plaintiff Jay Justice and attorneys for the Justice Entities met with Van Dyke, Karavatakis and Carter Bank's attorney to make a request for a $10 million loan to "bring certain coal mining operations back into production" and to obtain the deferral of a $1.9 million payment due on "coal loans associated with these entities." Compl. ¶ 51.  Although the location of this meeting, requested by the Plaintiffs, is not identified, this meeting in fact took place in Martinsville, Virginia where Carter Bank has its headquarters. Van Dyke Decl. ¶ 13.  Carter Bank purportedly consented to the Justice Entities' requests, both at the meeting and during subsequent communications, but then "cut off communication" around October 1, 2017.  Compl. ¶53.  The Complaint alleges that, on October 3, 2017, Carter Bank sent notices of default to the entities involved.  Compl. ¶ 54.  As a result of the default, Plaintiffs assert that they were forced to execute various loan documents, including guaranty agreements, security agreements, releases, and forbearance agreements.  Compl. ¶ 55.

The theme of the remaining allegations in the Complaint is that Carter Bank repeated this

conduct, initially promising to extend the payment date for certain loans, later reneging on those promises and declaring the loans in default. Compl. ¶ 58. Using those defaults, Carter Bank then allegedly demanded that the Justice Entities enter into various loan agreements, releases, reaffirmation agreements, and modified notes with purportedly disadvantageous provisions. Compl. ¶¶ 58-64. The Complaint also accuses Carter Bank of refusing to respond to attempts on the part of the Plaintiffs to contact them, including in the spring of 2021 in relation to certain payments due on June 1, 2021. Compl. ¶¶ 65-70. On Memorial Day, May 31, 2021, the day before the June 1, 2021 payment due date, Plaintiffs filed their Complaint in this Court asserting seven causes of action against the Defendants.

**C.    Numerous Loan Documents and Release and Reaffirmation Agreements Executed by Plaintiffs Over a Four-Year Period Include Forum Selection Clauses Mandating the Western District of Virginia as the Proper Forum for the Resolution of Disputes**.

Beginning approximately five (5) years ago, Carter Bank began to seek to reduce its credit exposure to the Justice Entities and repeatedly so informed the Justice Entities of its desire to do so. Van Dyke Decl. ¶ 8. During the ensuing years, contrary to the allegations in the Complaint, Carter Bank worked cooperatively and repeatedly with the Justice Entities to restructure and/or extend various of the loans made to the Justice Entities, as well as occasionally advance new credit. Van Dyke Decl. ¶ 9. As one would expect, in connection with these new loans, restructurings, and extensions of existing loans, the Justice Entities executed various loan agreements, promissory notes, guaranties, modifications to deeds of trust, security agreements, subordination agreements and other loan documents. Van Dyke Decl. ¶10 & Ex. 1. The Individual Plaintiffs also repeatedly executed personal guaranties. *Id*. The loan documents and guaranties just described are collectively referred to as "the Loan Documents." Virtually all of the Loan Documents contain forum selection clauses. In total, during the period 2017-2020, **the Plaintiffs executed at least**

**seventy five (75) separate Loan Documents containing forum selection clauses** providing that the exclusive venue for any dispute would lie in Virginia, either in the Circuit Court of the City of Martinsville, or in the United States District Court for the Western District of Virginia.  A number of documents containing such clauses were executed even before the September/October 2017 events that are alleged to provide the initial basis for Plaintiffs' claims.

In the Fall of 2017, certain of the Justice Entities defaulted on loans made to them by Carter Bank.  As a result of the default, the parties engaged in negotiations that resulted in the execution of a forbearance agreement, which subsequently was amended and restated twice in the immediately ensuing months (collectively the "Forbearance Agreements") and pursuant to which Carter Bank agreed to forebear from exercising its rights under certain of the then-operative Loan Documents.  Van Dyke Decl. ¶ 14 & Ex. 1.C.  Each Forbearance Agreement contained a forum selection clause designating the United States District Court for the Western District of Virginia or the Circuit Court of the City of Martinsville, Virginia as the exclusive forum to litigate any dispute between the parties.  During the negotiations leading to the various Justice Entities' execution of the Forbearance Agreements, as well as the associated Loan Documents, the Plaintiffs were represented by both their Virginia-based in-house counsel, Stephen W. Ball, Esq. ("Ball") and their well-respected senior outside counsel, Paul E. Sullivan, Esq. ("Sullivan") of the law firm, Frost, Brown & Todd, LLC.  Mr. Sullivan's curriculum vitae is impressive.  Van Dyke Decl. ¶¶ 15.  The Justices and the Justice Entities were well represented by sophisticated counsel at the time that the Forbearance Agreements were executed.

In addition to the Loan Documents and the Forbearance Agreements, beginning in May 2017 (before any of the actions alleged in the Complaint to support the Plaintiffs' claims had occurred) and last occurring on June 30, 2020, the Plaintiffs executed, in connection with such

restructurings and/or extensions, **twelve (12) Release and Reaffirmation Agreements (a) reaffirming the legality, validity and binding nature of the respective terms of their loan obligations to Carter Bank, (b) covenanting not to participate in any lawsuit adverse to Carter Bank relating to the Loan Documents and (c) unconditionally releasing Carter Bank from any and all claims they might have against Carter Bank** (collectively the "Release and Reaffirmation Agreements.")  Van Dyke Decl. ¶ 30 & Ex. 1.N.  Each of the Forbearance Agreements contained similar releases by incorporation.  Van Dyke Decl. ¶ 14 & Ex. 1.C.  Again, the Plaintiffs were represented by counsel with respect to the negotiation of each of these Release and Reaffirmation Agreements, and Forbearance Agreements, including the most recent one.  Van Dyke Decl. ¶15.

Most pertinent here, each of the twelve Release and Reaffirmation Agreements also contained a forum selection clause, again identifying the United States District Court for the Western District of Virginia or the Circuit Court of the City of Martinsville, Virginia as the venue in which to litigate any dispute.  Thus, commencing in May 2017, Plaintiffs repeatedly agreed that either the Western District of Virginia or the City of Martinsville were to be the venue for any legal action relating to the Plaintiffs' reaffirmation of the validity and enforceability of the Loan Documents.[4]  Van Dyke Decl. 30 Ex. 1.N.

All of the Loan Documents executed over the almost more than three-year period, as well as the Forbearance Agreements and Release and Reaffirmation Agreements, provided that they are governed by Virginia law.[5]

---

[4]  The initial Release and Reaffirmation Agreement's language regarding forum selection arguably is not absolutely mandatory.  The language in the remaining Release and Reaffirmation Agreements regarding forum selection unquestionably is.

[5]  Additionally, each promissory note executed by the Plaintiffs contains a confession of judgment

Thus, the numerous Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements uniformly included provisions by which the Plaintiffs agreed that any dispute between them and Carter Bank would be brought **exclusively** in the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western District of Virginia.

As just one example, the May 22, 2017 Loan Agreement, executed by Greenbrier Hotel Corporation, et al. before the complained of events of October, 2017, provided that "Any litigation arising out of any of the Loan Documents shall have as its venue the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western District of Virginia." Van Dyke Decl., Ex 1.B. Nothing could be clearer.  Plaintiffs make no allegation regarding the unenforceability of this document.

As another example, the November 22, 2017 Forbearance Agreement provides:

> Each of the Justice Entities hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or any of the Loans or Loan Documents shall be instituted exclusively in the Circuit Court of the City of Martinsville, Virginia, or the United States District Court for the Western District of Virginia, assuming such court has jurisdiction. Each of the Justice Entities hereby consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which each of the undersigned may now or hereafter have in any such legal action or proceedings.

Van Dyke Decl., Ex. 1.C.

As recently as June 30, 2020, the Plaintiffs, then represented by an equally sophisticated outside counsel, William A. Burck, Esq., a partner practicing with Quinn Emanuel Urquhart & Sullivan, LLP who had replaced Mr. Sullivan as outside counsel to the Justices and the Justice Entities (Van Dyke Decl. ¶ 29), again agreed in numerous loan documents as well as the Release

---

provision consenting to the confession of judgment in the Circuit Court of the City of Martinsville, Virginia. *See, e.g*., Van Dyke Decl., Ex. 1 - notes.

and Reaffirmation Agreement that was executed in connection with those loan documents that the exclusive venue for any dispute would lie in the Circuit Court of the City of Martinsville or the United States District Court for the Western District of Virginia.  Van Dyke Decl. <u>Ex. 1.M and 1.N.</u>  All told, **Plaintiffs signed more than ninety (90) separate documents over a three-and-a-half year period agreeing to venue in the United States District Court for the Western District of Virginia or the Circuit Court of the City of Martinsville**.

Venue of this action therefore is proper only in the United States District Court for the Western District of Virginia.  Accordingly, Defendants move this Court to enforce the forum selection clauses and dismiss this case for improper venue.  Alternatively, this Court should transfer this case to the United States District Court for the Western District of Virginia.[6]

### III.  ARGUMENT

**A.  Pursuant to Rule 12(b)(3), the Court Should Enforce the Forum Selection Clauses and Dismiss the Case or, in the Alternative, Transfer the Case to the Western District of Virginia.**

In the Fourth Circuit, the proper procedural vehicle to enforce a forum selection clause is Federal Rule of Civil Procedure 12(b)(3).  *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma., Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).  When analyzing a forum selection clause, district courts apply federal law.  *Albemarle Corp. v. Astrazeneca UK Ltd*., 628 F.3d 643, 650 (4th Cir. 2010).  Under the federal standard, a forum selection clause is presumptively valid and, absent a showing of unreasonableness under the circumstances, should be enforced.  *Sauvageot v. State Farm Mut. Auto Ins.*, 2011 U.S. Dist. LEXIS 73446, *5 (N.D. W. Va. 2011).  Forum selection clauses are

---

[6] Simultaneously with the filing of this motion, the Director Defendants are filing their Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction.  As advanced therein, the Court cannot exercise personal jurisdiction over the Director Defendants.  They should be dismissed from this case.

unreasonable if: "(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Id.* at *5-6. The party opposing the application of a forum selection clause "bears a heavy burden of proving unreasonableness." *Id.* at *6.[7]

The forum selection clauses here unquestionably are reasonable.[8] Plaintiffs have no colorable argument that enforcement of the forum selection clauses will deprive them of their day in court because of grave inconvenience or unfairness. "It is the foreseeability of litigation in the selected forum — and not its explicit connection to the transaction — that is the relevant consideration." *Wilson Works, Inc. v. Matheson Tri-Gas, Inc.*, 2012 U.S. Dist. LEXIS 198004, *7-8 (N.D. W.Va. Oct. 10, 2012) (holding that Texas was not inconvenient when that forum was clearly foreseeable based on the plaintiff's agreement to litigate there). Not only was litigation in the Western District of Virginia foreseeable, based on the multitude of documents Plaintiffs signed but it is also not physically inconvenient. Five of the Justice Entities are headquartered in the

---

[7] Virtually all of the forum selection clauses included in the Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements are mandatory. They provide variously that venue "will" or "shall" be in the Circuit Court of the City of Martinsville or the United States District Court for the Western District of Virginia and that litigation may be instituted "exclusively" in those forums. *See Manchin v. QS-1 Data Sys.*, 2013 U.S. Dist. LEXIS 114155, at *5-6 (N.D. W. Va. Aug. 12, 2013) (finding that the language "sole" and "shall" makes the forum selection clauses mandatory).

[8] As a threshold matter, application of Virginia law is not fundamentally unfair. Indeed, Plaintiffs repeatedly agreed that Virginia law governs the parties' relationship. Plaintiffs themselves bring three of their five state law claims under Virginia law. The forum selection clauses do not contravene West Virginia public policy. *See Petroleum Prods. v. Commerce & Indus. Ins. Co.*, 2009 U.S. Dist. LEXIS 112896, at *12 (S.D. W.Va. Dec. 4, 2009) (citing *Gen. Elec. Co. v. Keyser*, 166 W. Va. 456, 275 S.E.2d 289, 292 (W. Va. 1981)).

Western District of Virginia.  Plaintiff Jay Justice, who is the primary factual witness who dealt with Carter Bank throughout the years of negotiations, resides in the Western District of Virginia, as does Ball, another key witness and in-house counsel for the Justice Entities.  Van Dyke Decl. ¶32, 34.  The Western District of Virginia also is not "gravely" inconvenient to those Plaintiffs located in West Virginia.  White Sulphur Springs (headquarters to most of the other Justice Entities) sits in close proximity to the Western District of Virginia.[9]

Based on the allegations of the Complaint, Defendants anticipate that Plaintiffs will argue that the forum selection clauses were the result of "overreaching" in their formation.  *See* Compl. ¶ 56 (vaguely asserting Plaintiffs were under "severe duress"); ¶¶ 115-116 (contending that the Forbearance and Release and Reaffirmation Agreements are void for the amorphous "want of consideration", and that "[a]dditional agreements" are unenforceable because obtained under "deceptive terms and unfair practices," whatever that means).  For a forum selection clause to be invalid for fraud or overreaching, however, "*the clause itself*, not the agreement" must be the product of overreaching.  *Manchin*, 2013 U.S. Dist. LEXIS 114155, at *7 (internal quotations removed) (emphasis in original).  This ensures that more general claims of fraud or unconscionability are litigated in the chosen forum, in accordance with the contractual expectations of the parties.  *Id.*

Plaintiffs here cannot claim the forum selection clauses themselves were obtained as the result of fraud, overreaching, or duress, separate and apart from the agreements in which they

---

[9] Roanoke, Virginia is an hour and thirty-two-minute drive from White Sulphur Springs, West Virginia.  Directions for driving from White Sulphur Springs, WV to Roanoke VA, *Google Maps*.  (Retrieved June 23, 2021 from https://tinyurl.com/cs74jkfe.)  Beckley is a fifty-eight-minute drive from White Sulphur Springs, West Virginia.  Directions for driving from White Sulphur Springs, WV to Beckley, WV.  *Id.* (Retrieved June 23, 2021 from https://tinyurl.com/57vkjfmu.)

appear.  Plaintiffs are highly sophisticated parties[10] who had full access to, and an opportunity to confer with, both in-house and prominent outside counsel before entering into any agreement with Carter Bank.  The Complaint acknowledges this, admitting that attorneys for the Justice Entities were in communication with Carter Bank's attorneys as early as 2017.  Compl. ¶ 52.  Plaintiffs' attorneys were involved in negotiating all of the documents.  With no claim of fraud, the Plaintiffs willingly signed—both before and after the events complained of—more than ninety (90) Loan Documents, Forbearance Agreements, and Release and Reaffirmation Agreements, all of which include forum selection clauses identifying Virginia as the proper venue. *See P.M. Enterprises v. Color Works*, 946 F. supp. 435, 441 (S.D. W.Va. 1996) (forum selection clauses are prima facie valid and should be enforced when made in arms-length transactions by sophisticated businessmen).

In short, Plaintiffs cannot demonstrate that the governing forum selection clauses are unreasonable.  Accordingly, venue is proper only in the Circuit Court of the City of Martinsville or the United States District Court for the Western District of Virginia.  The forum selection clauses are mandatory, applicable, and enforceable.  The Complaint therefore is subject to dismissal pursuant to Rule 12(b)(3). *Manchin*, 2013 U.S. Dist. LEXIS 114155, at *13.  However, "transfer is the preferred remedy to dismissal when a forum selection clause dictates that another federal forum is the proper venue for litigation." *Id.* (quoting *Petroleum Prods.*, 2009 U.S. Dist. LEXIS 112896, at *12)).  Accordingly, this case should be dismissed or transferred to the United States District Court for the Western District of Virginia.

---

[10] Jim Justice is the Governor of West Virginia.  By their own admission, the Justices have been operating a vast network of businesses for 50 years.  Compl. ¶ 1.

**B.** **In the Alternative, Pursuant to 28 U.S.C. §1404(a) the Court Should Transfer this Case to the Western District of Virginia.**

In the alternative, this Court should transfer this case to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1404(a). As contended above, venue is not proper in this Court. Under § 1404(a), this Court also has the power to rectify the situation. That statute provides that even when venue is proper in a particular federal district court (which it is not here), in the interest of justice or for the convenience of the parties and witnesses, the court has the discretion to transfer a civil action to any other district or division where it originally could have been brought. *Sauvageot*, 2011 U.S. Dist. LEXIS 73446 at *1. In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Specifically, the district court considers the following factors:

> (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*P.M. Enterprises v. Color Works*, 946 F. Supp. 435, 440 (S.D. W.Va. 1996).

1. <u>This action initially could have been filed in the United States District Court for the Western District of Virginia.</u>

The threshold inquiry under § 1404(a) asks whether the case "might have been brought" in the transferee district. This analysis requires the transferor court to "determine[] that, at the time the action was originally filed, (1) venue would have been proper in the proposed transferee district; (2) the transferee court would have had subject-matter jurisdiction; and (3) the transferee court could have exercised personal jurisdiction over the defendants." 17 Moore's Fed. Practice – Civil 111.13[1][a] (2007). In this case, the action "might have been brought" initially in the Western District of Virginia because, for multiple reasons, both venue and personal jurisdiction

15

exist there.  First, venue is proper in the United States District Court for the Western District of Virginia because, under 28 U.S.C. § 1391(b), venue is proper in a district where any defendant resides.  For venue purposes, a corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).  Because Carter Bank has its principal place of business in Martinsville, Virginia, venue is proper in the United States District Court for the Western District of Virginia.  Defendants Van Dyke and Karavatakis also reside in the Western District of Virginia, as do all but four of the remaining eleven Director Defendants.  Second, the Complaint raises a federal question because it asserts a claim under 12 U.S.C. § 1972.  As a result, the United States District Court for the Western District of Virginia has subject matter jurisdiction over that claim.  Third, unlike this Court, the United States District Court for the Western District of Virginia can exercise personal jurisdiction over all the Defendants, given their residence in Virginia and/or positions as directors of a Virginia-chartered bank.

    2.     <u>The Plaintiffs' choice of forum is not entitled to weight because the Plaintiffs agreed that the Western District of Virginia is the proper forum.</u>

The valid forum selection clauses to which Plaintiffs agreed to dictate their choice of the United States District Court for the Western District of Virginia as the proper forum.  Although a plaintiff's choice of forum generally is given great weight, a defendant seeking transfer under a forum selection clause "is not attempting to circumvent the plaintiff's forum choice.  Rather, the defendant is enforcing the plaintiff's *ex ante* choice of forum under the contract."  *Petroleum Prods.*, 2009 U.S. Dist. LEXIS 112896, at *16 (citing *Stewart*, 487 U.S. at 33 ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (Kennedy, J. concurring)).  Where there is a valid forum selection clause, as in this case, Plaintiffs bear the burden of showing that the forum

identified in the forum selection clause is inconvenient and not in the interests of justice. Plaintiffs cannot begin to carry this burden.

      3.    <u>The United States District Court for the Western District of Virginia is convenient for all parties and witnesses and provides ease of access to sources of proof and compulsory process.</u>

Resolution of the claims in this case will involve numerous documents. Defendants have no documents in West Virginia. Instead, all of the Loan Documents, Forbearance Agreements, Release and Reaffirmation Agreements, correspondence, and any other document—all of which were drafted in Virginia—are located in Martinsville, Virginia. Van Dyke Decl., ¶36. Likewise, Defendants have no witnesses in West Virginia. Van Dyke Decl., ¶35. Instead, all of Defendants' potential witnesses are located either in Martinsville, Virginia or elsewhere in Virginia. *Id.* The Director Defendants are not located in West Virginia. Carter Bank has no offices in West Virginia. Obtaining the required documents and developing a factual record therefore is more efficiently accomplished in the Western District of Virginia.

Any decisions relevant to this case were made by Carter Bank in Martinsville, Virginia, where the Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements are held and where the meeting central to Plaintiffs' claims took place. Van Dyke Decl., ¶4, 13. Indeed, the entire purpose of the September 2017 meeting—as alleged in the Complaint—was for the Plaintiffs to obtain a new loan and the extension of existing loan obligations for certain coal and farming entities, all but one of which are headquartered in Virginia. Compl. ¶ 51. The Western District of Virginia is more closely related to the vast majority of the allegations in the lawsuit, which center on the Plaintiffs' relationship with a Martinsville, Virginia based bank. Moreover, as set forth in the Rule 12(b)(2) motion filed by the Director Defendants, this Court does not even have personal jurisdiction over the Director Defendants, making litigation in this Court not only

inconvenient, but not maintainable against the Director Defendants.  Instead, the only federal venue where Plaintiffs can pursue their claims against all Defendants is in the United States District Court for the Western District of Virginia.

Finally, as set forth above, the United States District Court for the Western District of Virginia is not inconvenient for the named Plaintiffs. Almost half of the Justice Entities are actually headquartered in Roanoke, Virginia.  Jay Justice, who had the primary communications with Carter Bank, lives in Roanoke, Virginia.  Moreover, Ball, Plaintiffs' in-house counsel and material witness, lives in Roanoke, Virginia.  Even the West Virginia based Plaintiff entities are not located at any great distance from the Western District of Virginia.  Thus, the factors involving relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses, relative advantage and obstacles to a fair trial and other practical problems that make a trial easy, expeditious, and inexpensive all weigh in favor of transferring this case to the Western District of Virginia.

4.   <u>The interests of justice will be served by having this matter heard in the United States District Court for the Western District of Virginia.</u>

In determining whether to transfer a case, the Court must consider certain "public interest" factors.  Those factors include "consideration of administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest of 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case'; the avoidance of unnecessary problems in conflict of laws; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Petroleum Prods.*, 2009 U.S. Dist. LEXIS 112896, at *23 (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Here, the interests of justice require a transfer of venue to the United States District Court for the Western

District of Virginia.

In this case the controversy is centered in the Western District of Virginia, where Carter Bank is located.  Plaintiffs cannot dispute that they are located *both* in the Western District of Virginia and in West Virginia, that Defendants are located almost solely in the Western District of Virginia (with none of them in West Virginia), that each promissory note provides for confession of judgment in Martinsville, that the multitude of pertinent Loan Documents specify the Circuit Court of the City of Martinsville or the United States District Court for the Western District of Virginia as the proper forum, and that the written proof regarding the case is located in the Western District of Virginia.  This case simply does not involve a controversy localized in West Virginia, despite the political notoriety of Jim Justice.  Also, Virginia is not an "unrelated forum."  As further proof of that fact, the Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements *all* specify that they and any dispute arising from them are governed by Virginia law.  Thus, the United States District Court for the District Court for the Western District of Virginia is "at home with the state law that must govern" resolution of the case.  In short, despite the political notoriety of one of the Plaintiffs, the relevant § 1404(a) factors all point to the United States District Court for the Western District of Virginia as the most convenient forum and the one that best satisfies the interests of justice.

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant their Motion and either (a) dismiss the Complaint filed by Plaintiffs for improper venue or (b) transfer this case to the United States District Court for the Western District of Virginia, the forum selected manifold times by the parties.

Dated: July 14, 2021                          Respectfully submitted,


                                        /s/ R. Booth Goodwin II
                                        R. Booth Goodwin II (WVSB #7165)
                                        Carrie Goodwin Fenwick (WVSB #7164)
                                        Goodwin & Goodwin, LLP
                                        300 Summers Street, Suite 500
                                        Charleston, West Virginia 25301
                                        Telephone: (304) 346-9700
                                        Facsimile: (304) 344-9692
                                        E-mail: rbg@goodwingoodwin.com


                                        John C. Lynch (WVSB # 6627)
                                        Megan E. Burns (WVSB #13290)
                                        Troutman Sanders Hamilton Pepper LLP
                                        222 Central Park Avenue, Suite 2000
                                        Virginia Beach, Virginia 23462
                                        Telephone: (757) 687-7564
                                        Facsimile: (757) 687-1524
                                        E-mail: john.lynch@trotuman.com
                                        Email: megan.burns@troutman.com


                                        *Counsel for Defendant Carter Bank & Trust*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

BELLWOOD CORP., et al.,

        Plaintiffs,

                                   Civil Action No. 5:21-cv-00320
v.                                 Honorable Frank W. Volk, Judge

CARTER BANK & TRUST, et al.,

        Defendants.

## CERTIFICATE OF SERVICE

I, Carrie Goodwin Fenwick, hereby certify that I served a true and correct copy of the foregoing **Memorandum in Support of Carter Bank's Motion to Dismiss For Improper Venue or, In the Alternative, To Transfer Venue to the Western District of Virginia** upon the following counsel of record on July 14, 2021, via the Court's CM/ECF system.

Steven R. Ruby
David R. Pogue
Carey, Douglas, Kessler, & Ruby, PLLC
707 Virginia Street, East
901 Chase Tower
Charleston, WV 25301
sruby@cdkrlaw.com
dpogue@cdkrlaw.com
*Counsel for Plaintiffs*

H. Rodgin Cohen
James L. Bromley
Benjamin S. Beller
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004
cohenhr@sullcrom.com
bromleyj@sullcrom.com
bellerb@sullcrom.com
*Counsel for Plaintiffs*

Christopher Schroeck
Bluestone Resources, Inc.
302 S. Jefferson Street
Roanoke, VA 24011
chris.schroek@bluestone-coal.com
*Counsel for Plaintiffs*

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick (W. Va. Bar No. 7164)

21