## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### Beckley Division

| | |
|---|---|
| BELLWOOD CORP.,<br>GREENBRIER HOTEL CORP.,<br>GREENBRIER GOLF AND TENNIS CLUB CORP.,<br>GREENBRIER MEDICAL INSTITUTE, LLC,<br>THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC.,<br>THE GREENBRIER SPORTING CLUB, INC.,<br>JUSTICE FAMILY GROUP, LLC,<br>JAMES C. JUSTICE COMPANIES, INC.<br>JUSTICE FARMS OF NORTH CAROLINA, LLC,<br>JUSTICE LOW SEAM MINING, INC.,<br>OAKHURST CLUB, LLC,<br>TAMS MANAGEMENT, INC.<br>TRIPLE J PROPERTIES LLC,<br>JAMES C. JUSTICE II,<br>CATHY L. JUSTICE, AND<br>JAMES C. JUSTICE III<br><br>                        Plaintiffs,<br><br>      v.<br><br>CARTER BANK & TRUST, et al.<br><br><br><br>                        Defendants. | Civil Action No. 5:21-cv-00320 |

### MEMORANDUM IN SUPPORT OF DIRECTOR DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(2) <u>FOR LACK OF PERSONAL JURISDICTION</u>

Defendants Michael R. Bird, Kevin S. Bloomfield, Robert M. Bolton, Robert W. Conner,

Gregory W. Feldmann, Chester A. Gallimore, Charles E. Hall,[1] James W. Haskins, Phyllis Q.

Karavatakis ("Karavatakis"), Lanny A. Kyle, E. Warren Matthews, Catharine L. Midkiff, Joseph

---

[1] Defendant Charles E. Hall passed away after the Complaint was filed and served on him.  His position on the Carter Bank Board of Directors has not been filled.

E. Pigg, Litz H. Van Dyke ("Van Dyke"), and Elizabeth Lester Walsh (the "Director Defendants"), by counsel and pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(2), submit this Memorandum in support of their Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction.

## I.   INTRODUCTION

Plaintiffs filed this case purely as a delay tactic against the repayment of loans they owe to Defendant Carter Bank.  Collectively, Plaintiffs owe Carter Bank hundreds of millions of dollars. Although Carter Bank has worked repeatedly and cooperatively with the Plaintiffs over the years in restructuring and/or extending various of the loans, early in 2021 Carter Bank advised the Plaintiffs that it would not renew or extend two loans due to mature by their own terms on June 1, 2021.  Despite having agreed in multiple documents not to sue Carter Bank, on the afternoon of Memorial Day, May 31, 2021, the day before those two loans matured, Plaintiffs filed this civil action.  The gravamen of Plaintiffs' claims is that, four (4) years ago, Carter Bank somehow induced them into "technical" defaults and then sought to exercise its rights under the pertinent loan documents, forcing Plaintiffs to sign various loan documents with purportedly unfair provisions.

What is more, the Plaintiffs sue not only Carter Bank, but each and every member of its board of directors, with whom they have no privity.  Plaintiffs make absolutely no factual allegations against any of the Director Defendants, yet they irresponsibly accuse them of "aiding and abetting" a breach of fiduciary duty and/or breach of the duty of care – as well as baselessly lumping them into Plaintiffs' meritless claims under the Bank Holding Company Act.  What the Complaint also does not allege is any fact tying any of the Director Defendants to West Virginia. Indeed, the Complaint is devoid of allegations that twelve of the fourteen remaining Director

Defendants took *any action at all* – let alone action in West Virginia that would support the exercise of personal jurisdiction over them. As to the remaining two Director Defendants, Plaintiffs claim only that they attended a meeting and then refused to respond to phone calls and emails. What the Complaint conveniently omits, however, is that the meeting took place in Martinsville, Virginia – *not in West Virginia* – among residents of Virginia and the Justice Entities' Kentucky outside counsel. In fact, none of the Director Defendants has had any contact with or taken any action in West Virginia in connection with the allegations Plaintiffs make in the Complaint as supporting their claims against Carter Bank.

Based on the sparse allegations in the Complaint, coupled with the facts set forth in declarations provided by the Director Defendants, Plaintiffs cannot demonstrate that personal jurisdiction exists over the Director Defendants. As a threshold matter, none of the Director Defendants are domiciled in West Virginia and the Court therefore cannot exercise general personal jurisdiction over them. In addition, however, because the Complaint fails to allege any action taken by any Director Defendant *in West Virginia* that gave rise to Plaintiffs' claims (and because no Defendant Director actually took any such action), binding Fourth Circuit case law precludes the exercise of personal jurisdiction over them. In short, the Director Defendants do not have sufficient "minimum contacts" with West Virginia such that the exercise of personal jurisdiction would comport with Constitutional due process. Accordingly, the Complaint should be dismissed as to the Director Defendants.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties

Defendant Carter Bank is a banking institution incorporated in the Commonwealth of Virginia, with its principal place of business in Martinsville, Virginia. Compl. ¶32; Declaration

of Litz Van Dyke ("Van Dyke Decl.") ¶3, **Exhibit 1**.[2]  The Director Defendants allegedly serve as directors of Carter Bank. Their places of residence are not alleged in the Complaint. Compl. ¶33. However, of the fourteen (14) directors, ten (10) of them reside in the Western District of Virginia. *See* Van Dyke Decl., ¶1, Declaration of Phyllis Q. Karavatakis ("Karavatakis Decl.") ¶1, **Exhibit 2**, Declarations of Defendants Kevin S. Bloomfield, Robert W. Conner, Gregory W. Feldmann, Chester A. Gallimore, James W. Haskins, E. Warren Matthews, Joseph E. Pigg, and Elizabeth Lester Walsh, **Exhibits 3-10**.  The remaining Director Defendants reside in North Carolina, South Carolina, and New York.  Declaration of Michael R. Bird, **Exhibit 11**, ¶ 1; Declaration of Robert M. Bolton, **Exhibit 12**, ¶1; Declaration of Catherine L. Midkiff, **Exhibit 13**, ¶ 1; Declaration of Lanny A. Kyle, Jr., **Exhibit 14**, ¶1 (collectively, Exhibits 3-14 are referred to as the "Director Decls.").  None of the Director Defendants are domiciled in West Virginia.  Defendants John and Jane Does are alleged to be "institution-affiliated parties" of Carter Bank, as defined in 12 U.S.C. § 1813(u).  The Complaint does not identify their names or places of residence; they are not alleged to be residents of West Virginia.  Compl. ¶34.[3]

Plaintiffs James C. Justice II ("Jim Justice") and Cathy L. Justice are residents of West Virginia.  Compl. ¶31.  Plaintiff James C. Justice III ("Jay Justice") is a resident of the Commonwealth of Virginia.[4]  *Id.*  Plaintiffs Greenbrier Hotel Corp., Greenbrier Golf and Tennis Club Corp., Greenbrier Medical Institute, LLC, The Greenbrier Sporting Club Development

---

[2] All exhibits referenced herein have been attached to the corresponding Motion to Dismiss for Lack of Personal Jurisdiction.

[3] Because the John and Jane Doe defendants are unknown and not included in any specific allegations, they are not addressed herein. To the extent the Court deems it necessary to address them, the arguments related to the Director Defendants apply equally to the John and Jane Does.

[4] Plaintiffs Jim Justice, Cathy L. Justice and James C. Justice are referred to herein as the "Individual Plaintiffs."  The entity Plaintiffs are referred to collectively as the "Justice Entities."

Company Inc., The Greenbrier Sporting Club, Inc., Justice Family Group, LLC, and Oakhurst Club, LLC are headquartered in and have their principal places of business in White Sulphur Springs, West Virginia.  Compl. ¶¶19-24, 28.  Plaintiff Bellwood Corp. is a West Virginia corporation with its principal place of business in Beckley, West Virginia.  Compl. ¶18.  Plaintiffs James C. Justice Companies, Inc., Justice Low Seam Mining, Inc., and TAMS Management, Inc., all have their headquarters in Roanoke, Virginia.  Compl. ¶¶25, 27, 29. Plaintiffs Justice Farms of North Carolina, LLC and Triple J Properties LLC are Virginia limited liability companies with their principal places of business in Roanoke, Virginia.  Compl. ¶¶26, 30.

**B.**     **The Only Factual Allegations Against the Individual Defendants Involve Actions that Took Place in Virginia.[5]**

The Complaint makes no affirmative factual allegations against twelve (12) of the fourteen (14) Director Defendants beyond naming them as parties.  Nor does it make any factual claim that implicates the John and Jane Doe Defendants.  None of these individual parties are alleged to be residents of or domiciled in West Virginia.  In fact, as set forth above, none of them are.

Moreover, the only specific factual allegations involving Karavatakis and Van Dyke are that they 1) attended the September 7, 2017 meeting, and 2) confirmed to Jay Justice and counsel for the Justice Entities the agreement purportedly reached at the meeting.  Compl. ¶¶51-52. Although the location of this meeting—requested by the Plaintiffs—is not identified, in fact it took place in Martinsville, Virginia, where Carter Bank has its headquarters.  Van Dyke Decl. ¶¶3, 6; Karavatakis Decl. ¶¶3, 6.  As described in the Complaint, the meeting involved Jay Justice (a resident of Roanoke, Virginia), Van Dyke (a resident of Martinsville, Virginia), Karavatakis (a

---

[5] For purposes of this motion, Defendants assume the truth of any well-pled factual allegations contained in the Complaint.  *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (personal jurisdiction challenge).  Defendants deny Plaintiffs' factual allegations and deny any liability for the claims set forth in the Complaint.

resident of Union Hall, Virginia), Carter Bank's attorney (located in Virginia), and attorneys for the Justice Entities (Steven Ball, who lives in Roanoke, and Paul Sullivan, a partner at a prominent Kentucky firm).  Van Dyke Decl. ¶6-9; Karavatakis Decl. ¶6-9.

The Complaint alleges that the purpose of the meeting was to discuss a request made by Jay Justice for a $10 million loan from Carter Bank to bring "certain coal mining operations" back into production, and seeking an extension of time to make a $1.9 million payment due on "coal loans associated with these entities."  Compl. ¶51.  Any alleged subsequent assurances from Van Dyke or Karavatakis would have been made from Martinsville, Virginia to Steven Ball, attorney for the Justice Entities, or Jay Justice, both of whom are located in Roanoke, Virginia. Van Dyke Decl. ¶¶7-8.  Jay Justice was the primary point of contact for the Plaintiffs throughout the period of time from 2017 through 2021 that Carter Bank engaged in negotiations with the Plaintiffs.  Van Dyke Decl. ¶8.

The remaining specific factual allegations against Van Dyke and Karavatakis detail only the Plaintiffs' attempts to contact them by placing phone calls to them in Martinsville, Virginia. Compl. ¶53.  The Complaint asserts that neither Van Dyke nor Karavatakis returned the phone calls.  Compl.  ¶¶53, 62.  Most of the remaining allegations in the Complaint are made against "Defendants" generally without specifying which Defendant took the purported action.  As just one example, the Complaint claims that "Defendants demanded and obtained three separate Forbearance Agreements" from the Justice Entities. Compl. ¶57.   Admittedly, however, only Defendant Carter Bank is a party to any of these agreements.  *Id.* There is no allegation that either Van Dyke, Karavatakis, or any other Director Defendant took any action against the Plaintiffs in his or her *individual* capacity.

**C.**     **None of the Director Defendants Have Had Contacts with the State of West Virginia.**

None of the Director Defendants reached out to or contacted the Plaintiffs in West Virginia to solicit a loan or any other financial transaction or business from any of the Plaintiffs.  Van Dyke Decl. ¶12; Karavatakis Decl. ¶12;  Director Decls. ¶ 7.  Nor has any Director Defendant, whether as a representative of Carter Bank or otherwise, met with any of the Plaintiffs or their representatives in West Virginia to discuss any of the matters referenced in the Complaint. Van Dyke Decl. ¶13; Karavatakis Decl. ¶13 ; Director Decls. ¶8.  None of the Director Defendants own real property in West Virginia.  Van Dyke Decl. ¶16; Karavatakis Decl. ¶16; Director Decls. ¶ 9.

Aside from a couple of meetings with Jay Justice at the Roanoke corporate headquarters of the Virginia-based Justice Entities, all communications between either Van Dyke or Karavatakis and the Plaintiffs concerning the matters described in the Complaint were over the phone, email or text and were initiated by the Plaintiffs.  Van Dyke Decl. ¶14; Karavatakis Decl. ¶14.  As noted above, neither Van Dyke nor Karavatakis ever reached out to the Plaintiffs in West Virginia, either individually or on behalf of Carter Bank.

### III.     LEGAL STANDARD

When a district court considers a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction based on the allegations in the complaint and supporting affidavits, without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing—by a preponderance of the evidence—a prima facie case of jurisdiction.  *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).  The Court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction.  *Universal Leather*, 773

F.3d at 560.  The Court then must determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction.  *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196-97 (4th Cir. 2018).

For the Court to assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute, and (2) the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary to go through the normal two-step process.  *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997) (West Virginia's long-arm statute, W. Va. Code § 56-3-33, extends jurisdiction to the full reach of due process). Instead, the "statutory inquiry necessarily merges with the Constitutional inquiry and the two inquiries essentially become one."  *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996).  Accordingly, this Court must determine whether exercising personal jurisdiction over the Director Defendants is consistent with due process.  *In re Celotex Corp.*, 124 F.3d at 628; *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit.  *Carefirst*, 334 F.3d at 397.  If the defendants' contacts with the state are not the basis for the suit, jurisdiction over the defendants must arise from the defendants' general, more persistent, but unrelated contacts with the state.  *Id.*  If, however, the defendants' contacts with the state form the basis for the suit, they may establish "specific jurisdiction."  *Id.*  Plaintiffs here cannot establish either form of personal jurisdiction over the Director Defendants.

## IV.   ARGUMENT

**A.     The Complaint Does Not Allege Facts Sufficient to Support General Personal Jurisdiction Over the Director Defendants.**

General personal jurisdiction is considered "all purpose" jurisdiction as it "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014). General personal jurisdiction requires "continuous and systemic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Perdue Foods LLC v. BRF S.A.,* 814 F.3d 185, 188 (4th Cir. 2016).  For a "natural person," "[t]he 'paradigm forum' for the exercise of general jurisdiction … is the person's domicile." *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 613 (S.D. W. Va. 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  A person's domicile "is the state in which that person lives 'with intent to make it a fixed and permanent home.'" *Id.* (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.")).

Here, the Plaintiffs cannot demonstrate the existence of general jurisdiction over the Director Defendants because none of them is domiciled in West Virginia.  *Id.*, at 622, 624, 625 (holding that the court lacked general jurisdiction over individual defendants because none of them was domiciled in West Virginia); *Blankenship v. Fox New Network, LLC*, No. 2:19cv00236, 2020 U.S. Dist. LEXIS 243226, *18-19 (S.D. W. Va. Dec. 29, 2020) (same).  The Complaint fails to allege that the Director Defendants are domiciled in West Virginia or that any of them have had "continuous and systematic" contacts with West Virginia.  In fact, no Director Defendant is domiciled in West Virginia.  The Court therefore cannot exercise general personal jurisdiction over

the Director Defendants.

**B.      Plaintiffs' Own Allegations Demonstrate the Lack of Specific Personal Jurisdiction Over the Director Defendants.**

Because the Court lacks general personal jurisdiction over the Director Defendants, the exercise of personal jurisdiction over them must be tied to the specific conduct alleged in the Complaint to give rise to the claims asserted against them. *Carefirst*, 334 F.3d at 397 (specific jurisdiction involves an assessment of the contacts that form the basis for the suit); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.")  In assessing the existence of personal jurisdiction, the Court applies a three-part test to determine: (1) the extent to which the Director Defendants have purposefully availed themselves of the privilege of conducting activities in West Virginia; (2) whether Plaintiffs' claims against the Director Defendants arise out of those activities; and, (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

In making this determination, the contacts of a company are not attributed to a corporate agent for jurisdictional purposes. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (employees' contacts are not to be judged according to employer's activities in the forum).  Instead, "'[e]ach defendant's contacts with the forum State must be assessed individually.'"  *Blankenship*, 453 F. Supp. 3d at 613 (quoting *Calder*, 465 U.S. at 790); *see Simkins Corp. v. Gourmet Resources Int'l, Inc.*, 601 F. Supp. 1338, 1343 (E.D. Pa. 1985) (the issue in a Rule 12(b)(2) motion is whether the director or officer himself has sufficient minimum forum contacts to independently satisfy constitutional requirements). Specific personal jurisdiction requires that the defendant have "purposefully established minimum contacts in the forum State" such "that [the defendant] should

10

reasonably anticipate being hauled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted). Jurisdiction is proper where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the state. *Id.* at 475-76; *Walden*, 571 U.S. at 284 ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State.")

The Complaint is devoid of any allegations identifying grounds supporting the exercise of specific personal jurisdiction over the Director Defendants. The only claims that are asserted against the Director Defendants are the purported "aiding and abetting" of Carter Bank's alleged breach of fiduciary duty and/or breach of the duty of care (Counts IV & VI), and alleged violations of the Bank Holding Company Act (Count I).[6] Thus, the only possible applicable provisions of the West Virginia long-arm statute, given the assertion of tort claims against the Director Defendants and the absence of any allegation that any Director Defendant took any action *in* West Virginia, are W.Va. Code § 56-3-33 (a)(1) or (4).[7] As set forth herein, Plaintiffs cannot rely on these provisions of the long arm statute because the Complaint fails to allege that any Director Defendant had the requisite minimum contacts with West Virginia, let alone that any Director Defendant engaged in "a persistent course of conduct," "regularly does business," or has

---

[6] The Bank Holding Company Act does not apply to natural persons and therefore does not provide any basis for imposing individual liability – or asserting personal jurisdiction over – directors of a bank. *See, e.g.*, *Bieber v. State Bank of Terry*, 928 F.2d 328 (9th Cir. 1991); *Tose v. First Pa. Bank*, 648 F.2d 879, 898 n.23 (3d Cir. 1981); *Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 506 F. Supp. 254 (D.P.R. 1980).

[7] W. Va. Code § 56-3-33(a)(1) permits the exercise of jurisdiction over a person who transacts business in West Virginia when the cause of action arises out of the transaction of that business. W. Va. Code § 56-3-33(a)(4) provides that a court may exercise jurisdiction over a person or a cause of action arising from causing tortious injury in West Virginia by an act or omission outside West Virginia, "if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" West Virginia.

"transact[ed] any business" in West Virginia.

      1.     <u>The Complaint fails to allege any act *whatsoever* taken by Director Defendants other than Van Dyke and Karavatakis, let alone actions that would support the exercise of personal jurisdiction over them.</u>

The acts of a corporate officer or employee taken in his or her corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity. *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1056 (4th Cir. 1983). When a claim against a corporate agent rests on nothing more than that he or she is an officer or employee of the non-resident corporation, "under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally." *Id*. at 1064-65; *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 106 (3d Cir. 2004) ("jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction"); *Simkins*, 601 F. Supp. at 1344 (plaintiff must demonstrate other meaningful contacts with the forum apart from the contacts of the corporate entity).

The foregoing case law paradigmatically describes the allegations (or lack thereof) against the Director Defendants herein. The claims against all but two of the Director Defendants rely on nothing more than the fact they are directors of Carter Bank. Indeed, there are *no* specific factual allegations in the Complaint regarding actions the Director Defendants took in West Virginia (or anywhere else for that matter) or any other contacts with West Virginia that could permit the Court to conclude that the Director Defendants purposefully availed themselves of the privilege of conducting activities in West Virginia. Likewise, the claims against the Director Defendants— alleging violation of the Bank Holding Company Act, aiding and abetting a breach of the duty of care, and/or aiding and abetting a breach of fiduciary duty—include absolutely no specific factual

allegations and appear premised solely on the Director Defendants' alleged status as directors of Carter Bank.  That single allegation simply is insufficient to demonstrate the required minimum contacts with West Virginia that would permit this Court to exercise personal jurisdiction over them. *See Far W. Capital v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) (the mere allegation of an intentional tort does not create jurisdiction in the plaintiff's home forum); *United States Commer. Funding Corp. v. Galaxy Communs., Inc.*, No. 99 C 4794, 1999 U.S. Dist. LEXIS 18755, *9 (N.D. Ill. Nov. 24, 1999) (dismissing claims against directors when plaintiff failed to identify any pertinent contacts between them and the State of Illinois that involved the claims asserted in the case).

In fact, none of the Director Defendants have engaged in a "persistent course of conduct" in West Virginia or regularly transacted business there, let alone business related to the claims made by Plaintiffs in the Complaint.  None of them live in West Virginia, maintain property there, or work there.  None of the Director Defendants reached out to or contacted the Plaintiffs in West Virginia to solicit a loan or any other financial transaction or business from any of the Plaintiffs. The Complaint's factual allegations do not even mention any Defendant Director by name other than Van Dyke (also Carter Bank's CEO), and Karavatakis (also Carter Bank's President).  In short, Plaintiffs fail to allege *any* facts that would support the exercise of specific personal jurisdiction over 12 of the 14 Director Defendants consistent with the requirements of due process and West Virginia's long arm statute.

2.  The Complaint similarly fails to allege facts sufficient to demonstrate the existence of personal jurisdiction over Van Dyke and Karavatakis.

The only factual allegations in the Complaint referring to any action taken by any of the Director Defendants describe communications that took place at a single meeting, which occurred in Martinsville, Virginia, attended by Van Dyke, Karavatakis, Jay Justice, counsel for the Justice

Entities, and counsel for Carter Bank (all residents of Virginia), as well as the Justice Entities'
Kentucky-based outside counsel, for the purposes of discussing loans made almost entirely to
Virginia-based entities.  *See* Compl. ¶¶ 50-53, 56, 62; *see also* Van Dyke Decl. at ¶6; Karavatakis
Decl. at ¶6.[8]  As set forth the above, the only other factual allegations in the Complaint concerning
Van Dyke and Karavatkis are that they 1) initially agreed over the phone or by email to requests
made by the Justice Entities, and then 2) refused to respond to phone calls and emails sent by
Plaintiffs to them in Martinsville, Virginia.  All communications, however, were initiated by the
Plaintiffs.[9]  Van Dyke Decl. ¶15, Karavatakis Decl. ¶15.

These contacts, such as they are, are simply insufficient to demonstrate that Van Dyke and
Karavatakis purposely availed themselves of the privilege of conducting business in West Virginia
or had sufficient minimum contacts with West Virginia to make the exercise of jurisdiction over
them constitutionally permissible.  As set forth herein, the only allegations in the Complaint
against Van Dyke and Karavatakis are made against them in their capacities as directors of Carter
Bank.  Likewise, the Complaint does not allege that either Van Dyke or Karavatakis took any
action in furtherance of the alleged "aiding and abetting" – either in their individual or corporate
capacities – *in West Virginia*.  The only meeting with the Plaintiffs alleged in the Complaint took
place in Martinsville, Virginia.  As the Fourth Circuit has held,

> if the claim against the corporate agent rests on nothing more than that he is an
> officer or employee of the non-resident corporation and if any connection he had
> with the commission of the tort occurred *without* the forum state, we agree that,
> under sound due process principles, the nexus between the corporate agent and the

---

[8] None of the other Director Defendants attended this meeting. Director Decls. ¶6.

[9] Given that Jay Justice was the primary point of contact with the Justice Entities, most of these
communications were initiated by him in Roanoke, Virginia and directed to Martinsville,
Virginia. On a couple of occasions, Van Dyke and Karavatakis also met with Jay Justice at the
Roanoke, Virginia corporate headquarters of the Virginia-based Plaintiffs to discuss the credit
relationship between the parties.  Van Dyke Decl. ¶11; Karavatakis Decl. ¶11.

> forum state is too tenuous to support jurisdiction over the agent personally by
> reason of service under the long-arm statute of the forum state.

*Columbia Briargate*, 713 F.2d at 1064-65 (emphasis added).  Under this binding precedent, the

Court cannot, consonant with principles of due process, exercise personal jurisdiction over Van

Dyke and Karavatakis – who did not take any action *in West Virginia* in connection with the

alleged aiding and abetting torts.[10]

The mere fact that some of *the Plaintiffs* either reside in or have their headquarters in West

Virginia – which is the *only* allegation in the Complaint that conceivably could be considered as

supporting Plaintiffs' claims of personal jurisdiction – is an insufficient ground on which to base

the exercise of personal jurisdiction over Van Dyke and Karavatakis.  *Far W. Capital*, 46 F.3d at

1079 (merely alleging that an out of state defendant has committed a business tort that allegedly

injured a forum resident does not establish that the defendant has the required minimum contacts

with the forum); *see Walden*, 571 U.S. at 290 (the question "is not where the plaintiff experienced

a particular injury or effect but whether the defendant's conduct connects him [or her] to the forum

in a meaningful way."); *Cape v. von Maur*, 932 F. Supp.124, 128 (D. Md. 1996) (mere fact that

the plaintiff was a resident of Maryland, in light of the defendants' minimal contacts with the state,

was insufficient to permit the exercise of personal jurisdiction).

Instead, as set forth above, the Court must examine the contacts created by the out of state

defendant in committing the alleged tort.  *Far W. Capital*, 46 F.3d at 1079-80.  Here, to the extent

it could be considered an action taken in furtherance of the alleged aiding and abetting torts, the

only meeting mentioned in the Complaint took place in Virginia.  The attendees were all Virginia

---

[10] To the extent Plaintiffs rely on the "transacting business" prong of the long-arm statute, there
likewise is no allegation that Van Dyke and Karavatakis transacted business in West Virginia
that gave rise the claims asserted against them.

residents (with the exception of Kentucky counsel for the Justice Entities) and the negotiations concerned loans to Plaintiff entities located almost exclusively in Virginia.  The documents all provide for the application of Virginia law and for the litigation of any disputes in the Western District of Virginia.  And any phone calls or emails were directed *by Plaintiffs* to Van Dyke and Karavatakis *in Virginia*.   *See, e.g., Rosario v. Wands*, No. 1:09cv663, 2009 U.S. Dist. LEXIS 84992, at *12 (E.D. Va. Sept. 17, 2009) (mere telephonic and email communications in furtherance of a transaction are insufficient to form the basis for jurisdiction).

In short, there simply are no facts, alleged or not, demonstrating that the actions of Van Dyke and Karavatakis were "expressly aimed at" West Virginia or that they "purposely availed" themselves of the privilege of conducting activities in West Virginia that give rise to the claims asserted against them.  On the contrary, the focal point of the relationship between Carter Bank (and its directors) and Plaintiffs was in Virginia, where Carter Bank and almost half of the Plaintiffs are located, and where the relevant loan documents were drafted and negotiated – not West Virginia.  *See Far W. Capital*, 49 F.3d at 1080 (finding no personal jurisdiction when the focal point of the relationship was Nevada, based on Nevada-centered agreements, not Utah).  Because Plaintiffs cannot demonstrate the existence of sufficient "minimum contacts" between Van Dyke and Karavatakis and West Virginia, this Court cannot exercise personal jurisdiction over them.

## V.    CONCLUSION

Because personal jurisdiction does not exist over any of the Director Defendants, the Director Defendants respectfully request that this Court grant their Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) and dismiss them from this case.

Dated: July 14, 2021                              Respectfully submitted,

                                                    /s/ R. Booth Goodwin II
                                                  R. Booth Goodwin II (WVSB #7165)
                                                  Carrie Goodwin Fenwick (WVSB #7164)
                                                  Goodwin & Goodwin, LLP
                                                  300 Summers Street, Suite 500
                                                  Charleston, West Virginia 25301
                                                  Telephone: (304) 346-9700
                                                  Facsimile: (304) 344-9692
                                                  E-mail: rbg@goodwingoodwin.com


                                                  John C. Lynch (WVSB # 6627)
                                                  Megan E. Burns (WVSB #13290)
                                                  Troutman Sanders Hamilton Pepper LLP
                                                  222 Central Park Avenue, Suite 2000
                                                  Virginia Beach, Virginia 23462
                                                  Telephone: (757) 687-7564
                                                  Facsimile: (757) 687-1524
                                                  E-mail: john.lynch@trotuman.com
                                                  Email: megan.burns@troutman.com


                                                  *Counsel for Defendant Carter Bank & Trust*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

BELLWOOD CORP., et al.,

        Plaintiffs,

                                          Civil Action No. 5:21-cv-00320
v.                                       Honorable Frank W. Volk, Judge

CARTER BANK & TRUST, et al.,

        Defendants.

## CERTIFICATE OF SERVICE

I, Carrie Goodwin Fenwick, hereby certify that I served a true and correct copy of the foregoing **Memorandum in Support of Director Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) For Lack of Personal Jurisdiction** upon the following counsel of record on July 14, 2021, via the Court's CM/ECF system.

| | |
|---|---|
| Steven R. Ruby | H. Rodgin Cohen |
| David R. Pogue | James L. Bromley |
| Carey, Douglas, Kessler, & Ruby, PLLC | Benjamin S. Beller |
| 707 Virginia Street, East | Sullivan & Cromwell, LLP |
| 901 Chase Tower | 125 Broad Street |
| Charleston, WV 25301 | New York, NY 10004 |
| sruby@cdkrlaw.com | cohenhr@sullcrom.com |
| dpogue@cdkrlaw.com | bromleyj@sullcrom.com |
| *Counsel for Plaintiffs* | bellerb@sullcrom.com |
| | *Counsel for Plaintiffs* |

Christopher Schroeck
Bluestone Resources, Inc.
302 S. Jefferson Street
Roanoke, VA 24011
chris.schroek@bluestone-coal.com
*Counsel for Plaintiffs*

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick (W. Va. Bar No. 7164)

18