IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

BELLWOOD CORPORATION, *et al.*,

        **Plaintiffs,**

v.

CARTER BANK & TRUST, *et al.*,

        **Defendants.**

Civil Action No.  5:21cv320

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR LEAVE
TO CONDUCT LIMITED JURISDICTIONAL AND VENUE DISCOVERY AND
ENTRY OF A SCHEDULING ORDER**

## I.      INTRODUCTION

Plaintiffs (the "Justice Entities") filed their Complaint (the "Complaint") against Carter Bank & Trust ("Carter Bank") and its fifteen then-living directors ("the Director Defendants") on Memorial Day, May 31, 2021.[1]  (Dkt. No. 1.)  The Justice Entities then deliberately stopped making payments due on over $300,000,000 in loans to Carter Bank.[2]  Plaintiffs are now delinquent on their payments that were due on June 1, July 1, and August 1, 2021 on those loans. Carter Bank has accelerated Plaintiffs' delinquent loans and made demand upon Plaintiffs for payment in full.  Additionally, Carter Bank has commenced creditor process in Virginia state court against James C. Justice, II and Cathy L. Justice on the two loans that matured on June 1, 2021. The primary purpose of Plaintiffs' Expedited Motion for Leave to Conduct Limited Jurisdictional and Venue Discovery and Entry of a Scheduling Order (the "Discovery Motion") is to delay this

---

[1] Director Charles E. Hall passed away after the Complaint was filed and served on him.  His director position remains unfilled.

[2]  Two loans totaling approximately $58,000,000 matured the next day, June 1, 2021.  The timing of the filing of this civil action in relation to those maturity dates was not a coincidence.

case, and thereby help delay the state court creditor suits and put off the day that Plaintiffs must answer for their deliberate defaults.  Plaintiffs' desire for delay is not a proper ground for authorizing jurisdictional and venue discovery, especially here, where it is nothing more than a fishing expedition.  The Court should deny Plaintiffs' Discovery Motion for at least the following independent legal reasons.

First, the Discovery Motion does not provide a single justification for why discovery is necessary to reach a decision on Carter Bank's Motion to Dismiss Plaintiffs' Complaint for Improper Venue or, in the Alternative, to Transfer this Case to the United States District Court for the Western District of Virginia (the "Venue Motion"). (Dkt. No. 49.)  In fact, the Venue Motion is virtually unmentioned in the Discovery Motion.  The reason for this is clear-cut – no discovery is necessary.  The documents upon which the Venue Motion is based are standard, straightforward and unambiguous.  The residences of the parties and witnesses are certain.  The place where the relevant documents are housed is known.  Simply put, there are no relevant facts to be discovered.  Should this Court grant the Venue Motion and dismiss or transfer this case, the Director Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (the "Personal Jurisdiction Motion") will become moot, thereby having the salutary benefit of saving the Court and parties from the significant time and expense of having to resolve the Personal Jurisdiction Motion.

Second, Plaintiffs' Discovery Motion is nothing more than an ill-disguised attempt to find a fact - any fact - that arguably might support the claims made against the Director Defendants.  A careful review of the Complaint reveals that Plaintiffs failed to make a single factual allegation against the Director Defendants.  Instead, the Complaint includes only conclusory boilerplate recitations of the elements of the torts Plaintiffs allege.  Thus, the Discovery Motion plainly is

2

designed, impermissibly, to allow Plaintiffs to fish for some factual basis on which to rest their claims against the Director Defendants.  Plaintiffs may not, as they have done here, file a baseless lawsuit bereft of any factual underpinnings as to the Director Defendants and then ask the Court - under the guise of jurisdictional discovery – for permission to look for facts to support it.

Finally, it should go without saying that the Plaintiffs' Complaint also does not allege any facts supporting the exercise of personal jurisdiction over the Director Defendants.  As the Director Defendants set forth in the Personal Jurisdiction Motion, the contacts of a company are not attributed to a corporate agent for jurisdictional purposes.  *See Calder v. Jones,* 465 U.S. 783, 790 (1984) (employees' contacts are not to be judged according to employer's activities in the forum).  Instead "[e]ach defendant's contacts with the forum State must be assessed individually." *Blankenship v. Napolitano,* 451 F. Supp. 3d 596, 613 (S.D. W. Va. 2020)(quoting *Calder,* 465 U.S. at 790). *see also* Dkt. No. 52 at 10.  Having failed to allege any jurisdictional facts as to the Director Defendants, Plaintiffs apparently now seek to fish for such facts.  But all the facts that Plaintiffs say they want to "discover" are already known to Plaintiffs.  The Director Defendants' declarations (Dkt. Nos. 51-1 through 51-14) establish unequivocally that none of them participated in any meetings in West Virginia relating to the debt obligations and agreements about which Plaintiffs complain.  More importantly the Plaintiffs have not alleged otherwise.  Moreover, some of the facts that the Plaintiffs want to "discover" cannot possibly support personal jurisdiction in West Virginia.  For example, Plaintiffs assert that they want to discover facts surrounding the Director Defendants' "refusal to communicate with Plaintiffs regarding Plaintiffs' attempts to pay off, among others, loans made to Plaintiffs headquartered in West Virginia."  In other words, they seek to base their claim of jurisdiction on the Director Defendants' doing nothing (while residing and working in Virginia, South Carolina, North Carolina, and New York) in response to outreach

from Plaintiffs.  Even if true, doing nothing outside West Virginia cannot support the exercise of personal jurisdiction over the Director Defendants in West Virginia.  The Discovery Motion seeks permission for the Plaintiffs to embark on a fishing expedition and delay further payment of contractually due and owing sums to Carter Bank.  Carter Bank urges the Court to deny Plaintiffs' Motion.

## II.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[3]

The factual allegations and procedural history were discussed at length in Carter Bank's Motions to Dismiss and so will not be restated here.

In response to the Plaintiffs' Complaint and in accordance with the briefing schedule set by this Court, Carter Bank and the Director Defendants timely filed their first round of Rule 12(b) motions to dismiss.[4]  *See* Dkt. Nos. 49, 51.  In response, Plaintiffs have filed the Discovery Motion.

## III.    GOVERNING LAW

Although no uncertainty should exist as to the absence of personal jurisdiction over the Director Defendants in this case or that venue is improper in the Southern District of West Virginia, "[a] federal district court uncertain about its personal jurisdiction over a defendant may, in its discretion, grant discovery for the limited purpose of determining whether exercising personal jurisdiction is proper."  *Estate of Alford v. Fuji Heavy Indus.*, No. 3:15-16449, 2016 U.S. Dist. LEXIS 22876, at *2–3 (S.D.W. Va. Feb. 25, 2016) (citing *Carefirst of Maryland, Inc. v. Carefirst*

---

[3] Defendants' Venue Motion and Personal Jurisdiction Motion outline the pertinent factual and procedural history.  For the purposes of Plaintiffs' Discovery Motion and given the procedural posture of this case, the allegations in the Complaint are accepted as true.  However, Carter Bank denies the allegations in the Complaint and will substantively address all allegations in the Complaint at the appropriate time.

[4] The Court has bifurcated briefing on the Venue Motion and Personal Jurisdiction Motion from Defendants' forthcoming motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6).  *See* Dkt. No. 44.

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).  However, when "'the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction,' the district court is well within its discretion to deny jurisdictional discovery.'"  *Gilley v. C.H. Robinson Worldwide, Inc.*, No. 1:18-00536, 2020 U.S. Dist. LEXIS 45108, at *20-21 (S.D. W. Va. Mar. 16, 2020) (alteration in original) (quoting *Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002)).  "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."  *Carefirst*, 334 F.3d at 402.  Here, Plaintiffs fail to identify discoverable facts that could support jurisdiction over the Director Defendants.

No discovery is warranted here.  Even if the Court were to authorize limited jurisdictional and venue discovery, Plaintiffs must still satisfy Rule 26(b) in order to take the more than ten depositions they seek to take.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i).  Pursuant to Rule 26(b)(2)(C), before authorizing the additional depositions, the Court should consider whether: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or, (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).[5]  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

---

[5] Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

IV.     **ARGUMENT**

A.      **Plaintiffs' Request for Jurisdictional and Venue Discovery is an Impermissible Delay Tactic and Fishing Expedition That Should be Denied**

Plaintiffs offer nothing more than conclusory and speculative assertions regarding the Director Defendants' connections to West Virginia as the basis for conducting additional discovery.  But speculation and conclusory assertions do not justify authorizing jurisdictional or venue discovery.   If the Plaintiffs had any relevant interactions with any of the Director Defendants, Plaintiffs would know about them.  But Director Defendants did not.  Indeed, for that very reason, Plaintiffs did not plead the existence of any such interactions.  Plaintiffs' Discovery Motion should be denied.

1.      **Plaintiffs Have Offered No Basis for Venue Discovery**

Although Plaintiffs' Discovery Motion formulaically seeks both jurisdictional *and* venue discovery, (Pls.' Mot. at 1), Plaintiffs' briefing focuses almost exclusively on their request for jurisdictional discovery.  As explained in Carter Bank's Venue Motion (Dkt. No. 49), the relevant loan documents, release and reaffirmation agreements[6] and forbearance agreements contain forum selection clauses pursuant to which Plaintiffs agreed to an exclusive forum in Virginia, not West Virginia.  *See generally* Dkt. No. 50. Plaintiffs' Discovery Motion fails to address the arguments that the forum selection clauses govern, proffer any basis as to why those forum selection clauses should be disregarded, or explain why venue discovery may be needed, notwithstanding the existence of valid forum selection clauses.  The multiple documents upon which the Venue Motion is based are straightforward and unambiguous.  The residences of the parties and witnesses are

---

[6] Each of the release and reaffirmation agreements also contains (a) a broad release provision releasing virtually all of the claims made by Plaintiffs and (b) a covenant not to sue Carter Bank for any of the claims made by Plaintiffs.  However, plenary consideration of the effect of these documents will have to await further motion practice.

certain.  The place where the documents are housed is known.  There is nothing left to discover relating to venue and Plaintiffs do not contend otherwise.  Having failed to offer any justification for the need for venue discovery, Plaintiffs' request must again be seen as nothing more than an impermissible delay tactic.  It should be denied.

> **2.    The Allegations in the Complaint Do Not Suggest Personal Contacts By Director Defendants in West Virginia Sufficient to Constitute Purposeful Availment**

Contrary to Plaintiffs' claims, the Complaint lacks factual allegations suggesting any personal contacts by the Director Defendants with West Virginia.  Plaintiffs point to the allegations in the Complaint that the Justice family and their myriad companies have been Carter Bank's largest banking relationship.  Such allegations have nothing to do with any individual director or establishing personal jurisdiction over the Director Defendants.  Likewise, paying Carter Bank at least $238.5 million in interest and fees does not implicate any individual director.  *See Blankenship v. Napolitano*, 451 F. Supp. 3d at 613 (contacts of the company cannot be attributed to individual employees).  Plaintiffs admit that the allegations regarding alleged "misconduct" were committed by the Bank, with no mention of any personal, individual conduct by any Director Defendant.  (Pls.' Br. at 6 ("The Complaint further alleges that Carter Bank intentionally engaged in misconduct . . .").)  Although Plaintiffs argue that "[t]he Complaint adequately alleges . . .  that the Director Defendants were personally involved" in the purportedly wrongful conduct (Pls.' Br. at 7), that is simply false.  Such allegations are entirely absent from the Complaint. [7]

---

[7] Moreover, Plaintiffs' assertion that "discovery is likely to reveal" that the Director Defendants were personally involved is not only speculation but appears aimed at fishing for facts to support the merits of Plaintiffs' claims – not their jurisdictional argument.  In any event, mere speculation is insufficient to support a request for jurisdictional discovery.  *Carefirst*, 334 F.3d at 402.

Finally, Plaintiffs contend that the single allegation in Paragraph 70 of the Complaint – that the Board did not respond to a letter from Plaintiffs is enough to constitute (1) the Director Defendants' requisite contacts with West Virginia, and (2) sufficient individual, personal conduct by the Director Defendants to subject them to personal jurisdiction in West Virginia.

Plaintiffs assert that they want to discover the facts surrounding the Director Defendants' "refusal to communicate with Plaintiffs regarding Plaintiffs' attempts to pay off, among others, loans made to Plaintiffs headquartered in West Virginia." In other words, they seek to base their claim of personal jurisdiction on Director Defendants' . . . doing nothing!

The fact that the Carter Bank Board of Directors did not respond to a letter from Plaintiffs is immaterial to establishing personal jurisdiction over the individual Director Defendants as a matter of law. Plaintiffs' allegation that such non-response was "highly material" to Plaintiffs' businesses located in West Virginia does not make it material or relevant. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him [or her] to the forum in a meaningful way"); *Far W. Capital v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) (merely alleging that an out of state defendant has committed a business tort that allegedly injured a forum resident does not establish that the out of state defendant has the required minimum contacts with the forum); *Cape v. von Maur*, 932 F. Supp.124, 128 (D. Md. 1996) (mere fact that the plaintiff was a resident of Maryland, in light of the defendants' minimal contacts with the state, was insufficient to permit the exercise of personal jurisdiction).

As explained here and in the Memorandum in Support of the Personal Jurisdiction Motion (Dkt. No. 52), the Complaint lacks factual allegations regarding any individual, personal contacts by any of the Director Defendants "'expressly aimed at' West Virginia" or any individual, personal

8

conduct wherein the Director Defendants "'purposely availed' themselves of the privilege of conducting activities in West Virginia." Therefore, no uncertainty exists as to the absence of personal jurisdiction over the Director Defendants in this case. Plaintiffs' request for jurisdictional discovery is nothing more than a delay tactic and should be denied.

>    **3.    The Sworn Statements of Directors Karavatakis and Van Dyke Regarding the April 2017 White Sulphur Springs Meeting Do Not Contradict Other Statements Regarding the Lack of Contacts with West Virginia Related to the Allegations In the Complaint**

Plaintiffs claim that the declarations submitted by Directors Karavatakis (Carter Bank's then President) and Van Dyke (Carter Bank's CEO) support the existence of personal jurisdiction over the Director Defendants and the need for additional limited jurisdictional discovery (Pls.' Mot. at 7). But Plaintiffs grossly mischaracterize the statements made in the declarations. Karavatakis and Van Dyke both describe a single meeting that took place in West Virginia in White Sulphur Springs on April 4, 2017, which they attended in their capacities as officers of Carter Bank. *See* Dkt. No. 51-2 at ¶ 5; Dkt. No. 51-1 at ¶ 5. No other Carter Bank directors attended this meeting, which was for the purpose of touring the Greenbrier Resort facilities. In fact, the declarations of the remaining Director Defendants establish unequivocally that none of them ever met with the Plaintiffs in West Virginia. This April 2017 meeting occurred just before Worth Carter's passing, and thus, *before* any of the alleged misconduct occurred, which, as the Complaint claims, began only *after* the passing of Mr. Carter. *See, e.g.*, Compl. ¶ 8. The April 4, 2017 meeting is thus entirely unrelated to the claims made in the Complaint. A single meeting, entirely unrelated to the allegations in the Complaint, cannot and does not constitute purposeful availment for purposes of establishing personal jurisdiction. *See Fyfe Co., LLC v. Structural Grp., LLC,* No. CCB-13-176, 2013 U.S. Dist. LEXIS 75685, at *12 (D. Md. May 30, 2013) (finding that "single in-person meeting is insufficient to establish purposeful availment" for out of state

9

individual defendants).  Further, only Karavatakis and Van Dyke attended the April 2017 meeting

on behalf of Carter Bank – it cannot support personal jurisdiction for directors who did not attend.

    None of the Director Defendants live in West Virginia, maintain property there, or work

there.  *See* Dkt. Nos. 51-1 through 51-14.  The single property tour attended by Karavatakis and

Van Dyke in West Virginia is insufficient to establish personal jurisdiction.  Moreover, if there

were other meetings in West Virginia, Plaintiffs necessarily would have been involved in them

and therefore Plaintiffs already have access to any contrary evidence they might want or need to

rebut Defendants' declarations or claim personal jurisdiction.  Indeed, the fact that Plaintiffs have

not alleged (and cannot allege) such meetings or other contacts of the Director Defendants is

precisely because there were no such meetings. Furthermore, Plaintiffs have utterly failed to come

forward with any facts suggesting that jurisdictional evidence is going to materialize in discovery.

## 4.    The Caselaw Cited by Plaintiffs is Inapplicable

    Plaintiffs' reliance on *Ford Motor Co.* and *Weirton Area Water Board* to support the

exercise of personal jurisdiction over the Director Defendants and the propriety of jurisdictional

discovery is misplaced.  *Ford Motor Co.* involved two products liability suits stemming from two

car accidents.  As explained by the Supreme Court, in each case, "[t]he accident happened in the

State where suit was brought. The victim was one of the State's residents. And Ford did substantial

business in the State—among other things, advertising, selling, and servicing the model of vehicle

the suit claims is defective."  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct.

1017, 1022 (2021).  Ford based its jurisdictional challenge on the fact that "the particular car

involved in the crash was not first sold in the forum State, nor was it designed or manufactured

there."  *Id.*  The Supreme Court rejected this argument, finding that "[w]hen a company like Ford

serves a market for a product in a State and that product causes injury in the State to one of its

residents, the State's courts may entertain the resulting suit." *Id.* Ford conceded that it had "purposefully availe[ed] itself of the privilege of conducting activities" in the forum states. *Id.* at 1026. The Director Defendants have not conceded any such personal purposeful availment.

Likewise, *Weirton Area Water Board* is inapposite. There, plaintiffs brought an environmental toxic tort suit alleging that certain manufacturing defendants "designed, developed, manufactured, marketed, and sold [certain specific industrial contaminants] throughout the United States, including West Virginia," and certain facility defendants "used, stored, distributed and/or discharged [certain specific industrial contaminants] in their operations and caused the release of these chemicals into the surrounding soil, surface water and groundwater in and around their facilities." Seventeen motions to dismiss were filed by the various defendants. In several short, three-paragraph decisions, the Court acknowledged that "plaintiffs teeter on the verge of 'raising bare allegations' and asserting mere 'conclusory assertions' regarding the propriety of this Court's personal jurisdiction over [the numerous defendants]," but expressed its "hesitant[cy] to dismiss" and thus authorized "limited jurisdictional discovery." *See, e.g.*, *Weirton Area Water Bd. v. 3M Co.*, No. 5:20-CV-102, 2020 U.S. Dist. LEXIS 247910, at *12-13 (N.D. W.Va. Nov. 20, 2020). The Court issued the same three-paragraph decision in response to several of the motions to dismiss. Here, unlike in *Weirton*, Plaintiffs have failed to make any factual allegations connecting the Director Defendants to West Virginia, thus falling short of even the edge-teetering that the Court found barely sufficient to warrant limited jurisdictional discovery in *Weirton*.

In short, neither the Supreme Court's decision in *Ford Motor Co.* nor the Northern District of West Virginia's *Weirton Area Water Board* decision provides a precedential or persuasive basis for exercising personal jurisdiction or authorizing jurisdictional discovery.

### B.    Plaintiffs Have Provided no Basis for the Court to Grant Leave to Take Fourteen Depositions

For the reasons explained above, Plaintiffs have not given this Court any basis to authorize limited jurisdictional or venue discovery.  Thus, their request to depose the *fourteen* Director Defendants is moot and should be denied.  However, even in the event the Court grants Plaintiffs request for limited jurisdictional and/or venue discovery, Plaintiffs still have not satisfied their burden under Fed. R. Civ. P. 26(b) to justify taking the additional depositions.

The information sought to be obtained by deposing *fourteen* individuals can be obtained through less burdensome means, including interrogatories and/or requests for admission.  Plaintiffs have indicated a desire to propound both written discovery as well as take the deposition of every Director Defendant.  The written discovery alone, which will almost certainly require the establishment of protocols, concomitant electronically stored and physical information searches, and hundreds of hours of professional time, will be unilaterally expensive, time consuming, and burdensome on Defendants.  While written discovery will be burdensome, requiring the Director Defendants to also participate in depositions would be unnecessarily cumulative and burdensome.  Plaintiffs have provided no explanation for why requests for admission or other written discovery would not be sufficient.

Thus, even if the Court were to authorize some limited jurisdictional and/or venue discovery, the Court should limit Plaintiffs' efforts to written discovery.

### C.    Plaintiffs' Proposed Schedule Injects Impermissible and Unnecessary Delay

Finally, even if the Court were inclined to allow some limited discovery, it should not adopt Plaintiffs' proposed schedule.  First, as explained above, the Court should decide the Venue Motion which Defendants believe will moot the Personal Jurisdiction Motion and thus obviate the need for jurisdictional discovery

12

Second, Plaintiffs' proposed schedule would push back a determination of Defendants' preliminary procedural motions by over 77 days, at least[8] – giving them more time to withhold payments to Carter Bank and delay the day of judgment.  Plaintiffs do not need months to conduct limited jurisdictional and/or venue discovery and then start preparing briefs.  They should be able to serve limited discovery requests within a matter of days, not weeks or months.

## V.    CONCLUSION

Plaintiffs waited almost two weeks after receiving Carter Bank's Motions to Dismiss to seek permission to engage in "limited discovery" on the personal jurisdiction issue, with a mere nod to the venue issue in its Discovery Motion.  The Discovery Motion focuses almost exclusively on Plaintiffs' requests to conduct discovery related to the Director Defendants.  As noted above, if the Court grants the Venue Motion, any discussion of discovery related to personal jurisdiction becomes moot.  Moreover, this Court should reject Plaintiffs' attempts at this stage to discover "facts" that would be known to them if they exist and that would have been pled.  Thus, Defendants respectfully request that Plaintiffs' Expedited Motion for Leave to Conduct Limited Jurisdictional and Venue Discovery and Entry of a Scheduling Order be denied.


Dated: August 5, 2021                                    Respectfully submitted,

                                                         **CARTER BANK & TRUST, MICHAEL R. BIRD, KEVIN S. BLOOMFIELD, ROBERT M. BOLTON, ROBERT W. CONNER, GREGORY W. FELDMANN, CHESTER A. GALLIMORE, CHARLES E. HALL, JAMES W. HASKINS, PHYLLIS Q. KARAVATAKIS, LANNY A. KYLE, E. WARREN MATTHEWS,**

---

[8] As recently reaffirmed by the Court, Plaintiffs' oppositions to Defendants' Venue Motion and Personal Jurisdiction Motion are due August 13, 2021.  Dkt. No. 44.  Plaintiffs' proposal would extend their response deadline to October 29, 2021.

13

**CATHARINE L. MIDKIFF, JOSEPH E. PIGG, LITZ H. VAN DYKE, and ELIZABETH LESTER WALSH**

_/s/ Carrie Goodwin Fenwick_
R. Booth Goodwin II (WVSB #7165)
Carrie Goodwin Fenwick (WVSB #7164)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 500
Charleston, West Virginia 25301
Telephone: (304) 346-9700
Facsimile: (304) 344-9692
E-mail: rbg@goodwingoodwin.com

John C. Lynch (WVSB # 6627)
Megan E. Burns (WVSB #13290)
Troutman Pepper Hamilton Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: john.lynch@trotuman.com
Email: megan.burns@troutman.com

*Counsel for Defendants Carter Bank & Trust, Michael R. Bird, Kevin S. Bloomfield, Robert M. Bolton, Robert W. Conner, Gregory W. Feldmann, Chester A. Gallimore, Charles E. Hall, James W. Haskins, Phyllis Q. Karavatakis, Lanny A. Kyle, E. Warren Matthews, Catharine L. Midkiff, Joseph E. Pigg, Litz H. Van Dyke, and Elizabeth Lester Walsh*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

BELLWOOD CORPORATION, et al.,

        Plaintiffs,

                                        Civil Action No. 5:21-cv-00320

v.                                    Honorable Frank W. Volk, Judge

CARTER BANK & TRUST, et al.,

        Defendants.

## CERTIFICATE OF SERVICE

I, Carrie Goodwin Fenwick, hereby certify that I served a true and correct copy of the foregoing **Defendants' Opposition to Plaintiffs' Expedited Motion for Leave to Conduct Limited Jurisdictional and Venue Discovery and Entry of a Scheduling Order** upon the following counsel of record on August 5, 2021, via the Court's CM/ECF system.

| | |
|---|---|
| Steven R. Ruby | H. Rodgin Cohen |
| David R. Pogue | James L. Bromley |
| Carey, Douglas, Kessler, & Ruby, PLLC | Benjamin S. Beller |
| 707 Virginia Street, East | Sullivan & Cromwell, LLP |
| 901 Chase Tower | 125 Broad Street |
| Charleston, WV 25301 | New York, NY 10004 |
| sruby@cdkrlaw.com | cohenhr@sullcrom.com |
| dpogue@cdkrlaw.com | bromleyj@sullcrom.com |
| *Counsel for Plaintiffs* | bellerb@sullcrom.com |
| | *Counsel for Plaintiffs* |

Christopher Schroeck
Bluestone Resources, Inc.
302 S. Jefferson Street
Roanoke, VA 24011
chris.schroek@bluestone-coal.com
*Counsel for Plaintiffs*

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick (W. Va. Bar No. 7164)

*Counsel for Defendants Carter Bank & Trust, Michael R. Bird, Kevin S. Bloomfield, Robert M. Bolton, Robert W. Conner, Gregory W. Feldmann, Chester A.*

15

*Gallimore, Charles E. Hall, James W. Haskins, Phyllis Q. Karavatakis, Lanny A. Kyle, E. Warren Matthews, Catharine L. Midkiff, Joseph E. Pigg, Litz H. Van Dyke, and Elizabeth Lester Walsh*

16